1 | Andrew S. Williams (177926),
awilliams@bargerwolen.com
2 | Sandra I. Weishart (089782),
sweishart@bargerwolen.com
3 | Vivian I. Orlando (213833),
vorlando@bargerwolen.com
4 | BARGER & WOLEN LLP
633 West Fifth Street, 47th Floor
5 | Los Angeles, California 90071
Telephone: (213) 680-2800
6 | Facsimile: (213) 614-7399

7 | Attorneys for Respondent
Transamerica Life Insurance Company

8

FILED
CLERK, U.S. DISTRICT COURT

NOV 2 7 2013

CENTRAL DISTRICT OF CALIFORNIA
BY
DEPUTY

9 | **UNITED STATES DISTRICT COURT**

10 | **CENTRAL DISTRICT OF CALIFORNIA**

11 | SACV13-1863 DOC (RNB?x)

12 | MONICA STEINBERG, an individual;
and MS WEALTH MANAGEMENT &
13 | INSURANCE SERVICES, INC., a
California corporation,
14 |
Petitioner,
15 |
vs.
16 |
TRANSAMERICA LIFE INSURANCE
17 | COMPANY, an Iowa corporation;
18 |
19 |
20 | Respondents.
21 |

CASE NO.:

**RESPONDENT TRANSAMERICA
LIFE INSURANCE COMPANY'S
NOTICE OF REMOVAL
PURSUANT TO 28 U.S.C. §§ 1441
AND 1446 ON THE BASIS OF
DIVERSITY JURISDICTION [28
U.S.C. § 1332]; DECLARATIONS
OF JAMES B. WATSON AND
VIVIAN ORLANDO IN SUPPORT
THEREOF**

Petition to Stay filed November 7, 2013

22
23
24
25
26
27
28

## TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA:

PLEASE TAKE NOTICE that Respondent Transamerica Life Insurance Company ("Transamerica") hereby removes case number 30-2013-00686091-CU-PT-CJC from Orange County Superior Court to this Court pursuant to 28 U.S.C. §§ 1332, 1441 and 1446. This Notice of Removal is being filed without prejudice to the objections and defenses of Transamerica. Removal of this action on the basis of diversity jurisdiction is proper for the following reasons:

### TIMELINESS AND JOINDER

1.      Transamerica was purportedly served with process in this action for the first time on November 13, 2013, when Petitioners Monica Steinberg ("Steinberg") and MS Wealth Management & Insurance Services, Inc.'s ("MS Wealth") (collectively, "Petitioners") allegedly served by mail a Petition to Stay Arbitration ("Petition") and Notice of Hearing on Petition to Stay Arbitration ("Notice of Hearing") on Transamerica's counsel.[1]

2.      Removal is timely under 28 U.S.C. § 1446(b) in that removal is sought within thirty (30) days after purported service of the Petition and Notice of Hearing.

3.      The American Arbitration Association, Inc. ("AAA"), the other named Respondent in this action, was also purportedly served by mail with the Petition and Notice of Hearing by Petitioners on November 13, 2013. Petitioners subsequently filed a request for dismissal of Respondent AAA on or about November 20, 2013, which was entered on November 20, 2013. *See* Declaration of Vivian I. Orlando attached hereto ("Orlando Decl."), ¶ 2, Exh. A. Thus, as discussed further below, because the AAA was dismissed from this action by Petitioners, the AAA need not be considered for purposes of removal. *See Gould v. Mut. Life Ins. Co. of N.Y.*, 790 F.2d

---

[1] Service was defective as it was not served on Transamerica in compliance with the requirements of Code of Civil Procedure § 1290.4(b). Furthermore, service copies were not received by Transamerica's counsel. Nonetheless, removal has been sought within 30 days of the November 13, 2013 date.

769, 773 (9th Cir. 1986) (voluntary dismissal of nondiverse defendant by plaintiff creates removal jurisdiction).

## SUBJECT MATTER JURISDICTION ON THE BASIS OF DIVERSITY OF CITIZENSHIP EXISTS

4.    The Petition is a civil action over which this Court has jurisdiction under the provisions of 28 U.S.C. § 1332, and which may be removed to this Court by Transamerica pursuant to the provisions of 28 U.S.C. § 1441(b), on the basis of diversity of citizenship. *See, e.g.*, *Oppenheimer & Co. v. Neidhardt*, 56 F.3d 352, 354-56 (2nd Cir. 1995) (holding state court petition to stay properly removed on basis of diversity jurisdiction by party demanding arbitration); *E.Spire Communs., Inc. v. CNS Communs.*, 39 Fed. Appx. 905, 907 (4th Cir. 2002) (noting jurisdiction over a petition to stay arbitration, which was removed to federal court); *Pac. West Sec., Inc. v. Ill. Union Ins. Co.*, 2012 U.S. Dist. LEXIS 123300, 3-4 (W.D. Wash. 2012) (same).

There is Complete Diversity of Citizenship

5.    Transamerica is, and at all relevant times was, a corporation organized and existing under the laws of the State of State of Iowa with its principal place of business in Cedar Rapids, Iowa. *See* Orlando Decl., ¶ 2, Exh. B (Petition, attaching as Exh. A Transamerica's Demand for Arbitration, ¶ 17); *see also* Declaration of James B. Watson attached hereto, ¶ 2. Accordingly, as of the time of this filing, Transamerica is a citizen of the State of Iowa.

6.    Petitioner Steinberg resides in Orange County, California and at all relevant times was a citizen of the State of California.[2] *See* Orlando Decl., Orlando Decl., ¶¶ 3, 5, Exh. F and H (Transamerica's Demand for Arbitration, Exh. A, which further shows Steinberg is a California citizen and resident).

---

[2] *See Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) (For purposes of determining citizenship in a diversity action, an individual is a "citizen" of the state in which he or she is domiciled).

7.    Petitioner MS Wealth is, and at all relevant times was, a corporation organized and existing under the laws of the State of California with its principal place of business in Orange County, California. *See* Orlando Decl., ¶ 2, Exh. B (Petition, attaching as Exh. A Transamerica's Demand for Arbitration, ¶ 19); Orlando Decl., ¶¶ 4-5, Exh. G and H (Transamerica's Demand for Arbitration, Exh. B, which further shows MS Wealth was a California citizen). Accordingly, as of the time of this filing, MS Wealth is a citizen of the State of California.

8.    Although the Petition to Stay Arbitration names the AAA as a respondent, Petitioners have filed a Request for Dismissal of the AAA from this proceeding, and the AAA was dismissed by the state court on November 20, 2013. *See* Orlando Decl., ¶ 2, Exh. A. Thus, the AAA need not be considered for purposes of removal. *See Gould v. Mut. Life Ins. Co. of N.Y.*, *supra*, 790 F.2d at 773. Consequently, complete diversity exists between Petitioners and the only remaining respondent, Transamerica. Transamerica is thus the only Respondent the Court need consider in determining whether diversity jurisdiction exists.

### The Amount in Controversy

9.    The amount in controversy is at least $630,000 and thus exceeds the jurisdictional minimum of this Court as set forth below.

10.    Federal courts determine the amount in controversy for purposes of diversity jurisdiction in the context of a petition to compel (or stay) arbitration by looking to the amount in controversy with respect to the underlying claims to be arbitrated. *Davenport v. Procter & Gamble Mfg. Co.*, 241 F.2d 511, 514 (2d Cir. 1957); *see also Doctor's Associates, Inc. v. Hamilton*, 150 F.3d 157, 160 (2d Cir. 1998) (same); *Hambell v. Alphagraphics Franchising, Inc.,* 779 F. Supp. 910, 912 (E.D. Mich. 1991) (court looked to amount at issue in arbitration to determine amount in controversy where party removed action brought "to prevent the enforcement of certain provisions of the parties' arbitration" agreement)*; Manze v. State Farm Ins. Co.,* 817 F.2d 1062, 1067-68 (3rd Cir. 1987) (in deciding whether diversity

jurisdiction existed in context of removal of petition to appoint a neutral arbitrator, court found requisite amount in controversy existed because arbitration might result in award exceeding jurisdictional amount); *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877 (3d Cir. 1995) (amount in controversy in petition to compel arbitration is determined by underlying claim to be arbitrated); *Webb v. Investacorp*, 89 F.3d 252, 257 n.1 (5th Cir. 1996) *(per curiam)* (amount in controversy with respect to petition to compel arbitration measured as difference "between winning and losing the underlying arbitration"); *Circuit City Stores v. McLemore,* 2001 U.S. Dist. LEXIS 22786, 13-15 (N.D. Cal. 2001) (amount of the potential award in underlying arbitration determinative of amount in controversy) (subsequently overruled on other grounds). Thus, the amount in controversy for purposes of diversity jurisdiction is determined from looking at the amount at issue as alleged in Transamerica's Demand for Arbitration.

11. In its Demand for Arbitration, Transamerica seeks recovery from Petitioners on legal theories of breach of contract, breach of the implied covenant of good faith and fair dealing, violation of California Business and Professions Code §17200 et seq., breach of fiduciary duty, negligence, fraud, and unjust enrichment. Orlando Decl., ¶ 2, Exh. B (Petition, attaching as Exh. A Transamerica's Demand for Arbitration[3]). Transamerica specifically alleges that Steinberg and MS Wealth's dishonest and illegitimate insurance scheme, discussed below, caused financial loss to Transamerica, the amount of which is at least $630,000. *Id.* (Petition, p. 4:23-25, citing Transamerica's Demand for Arbitration ¶ 16).

12. As the Petition alleges, Transamerica's Demand for Arbitration arises out of Petitioners negligent, fraudulent, and dishonest business practices in

---

[3] Transamerica's Demand for Arbitration attached to the Petition is not a true and correct copy of Transamerica's Demand for Arbitration because it omits the Independent Producer Agreement between Steinberg and Transamerica, which was attached as Exhibit A to Transamerica's Demand. A complete copy of Transamerica's Demand for Arbitration is attached to the Declaration of Vivian I. Orlando as Exhibit H.

connection with the marketing, application for, and sale of at least 17 of Transamerica's Indexed Universal Life ("IUL") insurance policies, and may have been involved and have profited from the sale of additional policies by others. *See* Orlando Decl., ¶ 2, Exh. B (Petition, p. 4:3-7, citing Transamerica's Demand for Arbitration ¶ 10, 16, 17). Transamerica alleges that certain of its distributors, including Steinberg, engaged in a scheme to defraud Transamerica of commission payments for the sale of IUL policies, and Steinberg secretly arranged for payment of the first year premium on the IUL policies for applicants who could not afford coverage, did not want to pay for it, did not understand the coverage and did not intend to pay future premiums. *Id.* (Petition, p. 4:12-16, citing Transamerica's Demand for Arbitration ¶ 11). The Petition alleges that Steinberg and MS Wealth obtained substantial financial benefit as a result of this scheme to the detriment of Transamerica. *Id.* (Petition, p. 4:17-19, citing Transamerica's Demand for Arbitration ¶ 12). As noted above, the amount Transamerica seeks in its Demand for Arbitration is at least $630,000 from Petitioners in connection with their participation in this scheme. Thus, the amount in controversy exceeds the $75,000 threshold for diversity jurisdiction.[4]

### PROCESS

13. True and correct copies of the following documents are attached to Declaration of Vivian I. Orlando, attached to this Notice of Removal:

> (1) Exhibit A: Request for Dismissal of Respondent AAA;

> (2) Exhibit B: Petition to Stay Arbitration;

---

[4] Further, courts have held that special and general damages and attorneys' fees are to be considered in calculating the amount in controversy. *See Richmond v. Allstate Ins. Co.*, 897 F. Supp. 447 (S.D. Cal. 1995); *Conrad v. Hartford Accident & Indem. Co.*, 994 F. Supp. 1196, 1198 (N.D. Cal. 1998) (finding that special and general damages, attorneys' fees, and punitive damages are included in the calculation of the amount in controversy). In addition to compensatory damages, among other damages, Transamerica seeks attorneys' fees. *See* Orlando Decl., ¶ 2, Exh. B (Petition, attaching as Exh. A Transamerica's Demand for Arbitration, see ¶¶ 34, 39, 48, 54, 60, 71, 74, Prayer (Second through Seventh Causes of Action and as to all claims for relief)).

(3) Exhibit C: Request for Judicial Notice in Support of Petition to Stay Arbitration;

(4) Exhibit D: Notice of Hearing on Petition to Stay Arbitration; and

(5) Exhibit E: Proof of Service.

These documents (Exhibits A through E) constitute the entire process and pleadings filed in the state court action.

14.  Written notice of the filing of this Notice of Removal has been given to all adverse parties and a copy has been filed with the Clerk of the Superior Court of the State of California, City and County of Orange, in accordance with the provisions of 28 U.S.C. § 1446(d).

WHEREFORE, Transamerica prays that this action in the Superior Court of California for the County of Orange be removed to this Court.

Dated:  November 27, 2013

BARGER & WOLEN LLP

By: _____
ANDREW S. WILLIAMS
SANDRA I. WEISHART
VIVIAN I. ORLANDO
Attorneys for Respondent
Transamerica  Life Insurance
Company

# DECLARATION

## DECLARATION OF JAMES B. WATSON

I, James B. Watson, hereby declare as follows:

1.  I am a Vice President and Associate General Counsel for Transamerica Insurance Company ("Transamerica"), a named respondent in this action. Based upon my position, I have personal knowledge of the matters set forth below, and if called to testify, could and would competently testify as follows:

2.  Transamerica's place of incorporation is Iowa and its principal place of business is in Cedar Rapids, Iowa.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 25th day of November, 2013, at Los Angeles, California.

JAMES B. WATSON

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

-2-

# DECLARATION

## DECLARATION OF VIVIAN I. ORLANDO

I, Vivian I. Orlando, declare as follows:

1. I am an attorney licensed to practice in this Court and all the courts in the State of California, and am an associate with Barger & Wolen, LLP, counsel of record for Respondent Transamerica Life Insurance Company ("Transamerica"). I am one of the attorneys with responsibility for the handling of this matter. I have personal knowledge of the matters set forth below, and if necessary could competently testify as to such matters.

2. True and correct copies of the following documents from the Orange County Superior Court file in Case No. 30-2013-00686091-CU-PT-CJC are attached hereto:

    (1) Exhibit A: Request for Dismissal of Respondent AAA;

    (2) Exhibit B: Petition to Stay Arbitration;

    (3) Exhibit C: Request for Judicial Notice in Support of Petition to Stay Arbitration.

    (4) Exhibit D: Notice of Hearing on Petition to Stay Arbitration; and

    (5) Exhibit E: Proof of Service.

These documents (Exhibits A through E) constitute the entire process and pleadings filed in the state court action.

3. Attached as Exhibit "F" hereto is a true and correct of excerpts of a LexisNexis Accurint Comprehensive Report obtained on Monica Steinberg, showing that she is a resident of Orange County, California.

4. Attached as Exhibit "G" hereto is a true and correct printout of a copy of California Secretary of State's website showing that Petitioner MS Wealth Management & Insurance Services, Inc. is a California corporation, with its principle place of business located in Orange County, California.

5. Attached as Exhibit "H" hereto is a true and correct copy of Transamerica's Demand for Arbitration filed with the American Arbitration

1  Association, which includes as Exhibit A thereto Transamerica's Independent
2  Producer Agreement with Monica Steinberg, which was omitted from the copy of the
3  Demand for Arbitration attached to Petitioners' Petition to Stay Arbitration.
4       I declare under penalty of perjury under the laws of the United States that the
5  foregoing is true and correct.
6       Executed this 27th  day of November 2013, at Los Angeles, California.

7
8                                            _____
9                                            VIVIAN I. ORLANDO

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

EXHIBIT A

CIV-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Michael J. Sachs (SBN 134468)<br>James R. Rouse (SBN 145152)<br>CALLAHAN & BLAINE, APLC<br>3 Hutton Centre Drive, Ninth Floor<br>Santa Ana, CA 92707<br>TELEPHONE NO.: 714-241-4444  FAX NO. *(Optional):* 714-241-4445<br>E-MAIL ADDRESS *(Optional):* jrouse@callahan-law.com<br>ATTORNEY FOR *(Name):* Petitioners | **ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of Orange<br>**11/20/2013** at 01:43:00 PM<br>Clerk of the Superior Court<br>By Patricia C Iwaniec,Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE
STREET ADDRESS: 700 Civic Center Drive West
MAILING ADDRESS:
CITY AND ZIP CODE: Santa Ana, CA 92701
BRANCH NAME: Central Justice Center

PLAINTIFF/PETITIONER: Monica Steinberg, et al.

DEFENDANT/RESPONDENT: Transamerica Life Insurance Company, et al.

| REQUEST FOR DISMISSAL | CASE NUMBER:<br>30-2013-00686091-CU-PT-CJC |
|---|---|

A conformed copy will not be returned by the clerk unless a method of return is provided with the document.

This form may not be used for dismissal of a derivative action or a class action or of any party or cause of action in a class action. (Cal. Rules of Court, rules 3.760 and 3.770.)

1. TO THE CLERK: Please **dismiss** this action as follows:
   a. (1) ☐ With prejudice    (2) ☒ Without prejudice
   b. (1) ☐ Complaint    (2) ☒ Petition
      (3) ☐ Cross-complaint filed by *(name):*                                     on *(date):*
      (4) ☐ Cross-complaint filed by *(name):*                                     on *(date):*
      (5) ☐ Entire action of all parties and all causes of action
      (6) ☒ Other *(specify):** As to American Arbitration Association, Inc. only

2. *(Complete in all cases except family law cases.)*
   The court ☐ did ☒ did not waive court fees and costs for a party in this case. *(This information may be obtained from the clerk. If court fees and costs were waived, the declaration on the back of this form must be completed).*

Date: November 20, 2013

James R. Rouse
(TYPE OR PRINT NAME OF ☒ ATTORNEY ☐ PARTY WITHOUT ATTORNEY)                    *(SIGNATURE)*

*If dismissal requested is of specified parties only of specified causes of action only, or of specified cross-complaints only, so state and identify the parties, causes of action, or cross-complaints to be dismissed.

Attorney or party without attorney for: Monica Steinberg and MS Wealth Management & Insurance Services, Inc.
☒ Plaintiff/Petitioner    ☐ Defendant/Respondent
☐ Cross-Complainant

3. TO THE CLERK: Consent to the above dismissal is hereby given.**
   Date:

(TYPE OR PRINT NAME OF ☐ ATTORNEY ☐ PARTY WITHOUT ATTORNEY)                    *(SIGNATURE)*

Attorney or party without attorney for:

** If a cross-complaint – or Response (Family Law) seeking affirmative relief – is on file, the attorney for cross-complainant (respondent) must sign this consent if required by Code of Civil Procedure section 581 (i) or (j).

☐ Plaintiff/Petitioner    ☐ Defendant/Respondent
☐ Cross-Complainant

*(To be completed by clerk)*
4. ☒ Dismissal entered as requested on *(date):* 11/20/2013
5. ☐ Dismissal entered on *(date):*                    as to only *(name):*
6. ☐ Dismissal **not** entered as requested for the following reasons *(specify):*

7. a. ☐ Attorney or party without attorney notified on *(date):*
   b. ☐ Attorney or party without attorney not notified. Filing party failed to provide
      ☐ a copy to be conformed ☐ means to return conformed copy

Date: 11/20/2013                                          *Patricia C. Iwaniec*
                                                          Clerk, by _____, Deputy
                 Alan Carlson, Clerk of the Court

Form Adopted for Mandatory Use<br>Judicial Council of California<br>CIV-110 [Rev. Jan. 1, 2013]                    REQUEST FOR DISMISSAL                    Legal<br>Solutions<br>ⓒ Plus                    Page 1 of 2<br>Code of Civil Procedure, § 581 et seq.;<br>Gov. Code, § 68637(c); Cal. Rules of Court, rule 3.1390

**13**

CIV-110

| | |
|---|---|
| PLAINTIFF/PETITIONER: Monica Steinberg, et al.<br><br>DEFENDANT/RESPONDENT: Transamerica Life Insurance Company, et al. | CASE NUMBER:<br>30-2013-00686091-CU-PT-CJC |

---

**COURT'S RECOVERY OF WAIVED COURT FEES AND COSTS**

If a party whose court fees and costs were initially waived has recovered or will recover $10,000 or more in value by way of settlement, compromise, arbitration award, mediation settlement, or other means, the court has a statutory lien on that recovery. The court may refuse to dismiss the case until the lien is satisfied. (Gov. Code, § 68637.)

---

### Declaration Concerning Waived Court Fees

1. The court waived court fees and costs in this action for *(name):*

2. The person named in item 1 is *(check one below):*
   a. ☐ not recovering anything of value by this action.
   b. ☐ recovering less than $10,000 in value by this action.
   c. ☐ recovering $10,000 or more in value by this action. *(If item 2c is checked, item 3 must be completed.)*

3. ☐ All court fees and court costs that were waived in this action have been paid to the court *(check one):* ☐ Yes ☐ No

I declare under penalty of perjury under the laws of the State of California that the information above is true and correct.

Date: _____

_____
(TYPE OR PRINT NAME OF ☐ ATTORNEY ☐ PARTY MAKING DECLARATION)

▶ _____
(SIGNATURE)

**REQUEST FOR DISMISSAL**

**PROOF OF SERVICE**

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action; my business address is 3 Hutton Centre Drive, Ninth Floor, Santa Ana, California 92707.

On **November 20, 2013**, I served the foregoing document(s) entitled as:

**REQUEST FOR DISMISSAL**

on the interested parties in this action by placing [ ] the original [ ] a true copy thereof enclosed to all parties in a sealed envelope addressed as follows:

***PLEASE SEE ATTACHED SERVICE LIST ***

[ ]    **BY MAIL:** I deposited such envelope in the mail at Santa Ana, California. The envelope was mailed with postage thereon fully prepaid. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. It is deposited with the United States Postal Service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one (1) day after date of deposit for mailing in affidavit.

[ ]    **BY OVERNITE EXPRESS:** I deposited such envelope for collection and delivery by Overnite Express with delivery fees paid or provided for in accordance with ordinary business practices. I am "readily familiar" with the firm's practice of collection and processing packages for overnight delivery by Overnite Express. They are deposited with a facility regularly maintained by Overnite Express for receipt on the same day in the ordinary course of business.

[X]    **BY E-MAIL OR ELECTRONIC TRANSMISSION:** Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the document(s) to be sent to the person(s) at the e-mail address(es) listed on the attached service list. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

[ ]    **BY FACSIMILE:** I transmitted the foregoing document(s) by facsimile to the party(ies) identified on the attached service list by using the facsimile number(s) indicated. Said transmission(s) was(were) verified as complete and without error.

[ ]    **BY PERSONAL SERVICE:** I caused such envelope to be delivered by hand by First Legal Support Services to the offices of the addressee(s) listed on the attached service list.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on **November 20, 2013**, at Santa Ana, California.

Dawn Conrad

**15**

| | |
|---|---|
| 1 | **SERVICE LIST** |
| 2 | <u>Steinberg, et al., v. Transamerica Life Insurance Company, et al.</u><br>OCSC Case No. 30-2013-00686091-CU-PT-CJC |
| 3 | |
| 4 | Andrew S. Williams, Esq.                    *Attorneys for Transamerica Life* |
| 5 | Sandra I. Weishart, Esq.                    *Insurance Company*<br>Vivian I. Orlando, Esq. |
| 6 | **BARGER & WOLEN LLP**<br>633 West Fifth Street, 47th Floor |
| 7 | Los Angeles, CA 90071<br>Tel: (213) 680-2800 |
| 8 | Fax: (213) 614-7399<br>awilliams@bargerwolen.com |
| 9 | sweishart@bargerwolen.com<br>vorlando@bargerwolen.com |
| 10 | |
| 11 | Carmen Preda<br>International Case Manager |
| 12 | Miroslava Schierholz, LL.M.<br>ICDR Supervisor |
| 13 | **INTERNATIONAL CENTRE FOR DISPUTE<br>RESOLUTION** |
| 14 | 120 Broadway, 21st Floor<br>New York, NY 10271 |
| 15 | Tel: (212) 484-3270<br>Fax: (212) 246-7274 |
| 16 | PredaC@adr.org<br>SchierholzM@adr.org |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

# EXHIBIT B

1 | CALLAHAN & BLAINE, APLC
Daniel J. Callahan (SBN 91490)
2 | Michael J. Sachs (SBN 134468)
James R. Rouse (SBN 145152)
3 | 3 Hutton Centre Drive, Ninth Floor
Santa Ana, California 92707
4 | Telephone: (714) 241-4444
Facsimile: (714) 241-4445
5 |
Attorneys for Petitioners MONICA STEINBERG and MS WEALTH MANAGEMENT &
6 | INSURANCE SERVICES, INC.

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange
**11/07/2013** at 02:41:03 PM
Clerk of the Superior Court
By Marlene Diaz, Deputy Clerk

7

8

9 |                SUPERIOR COURT OF CALIFORNIA

10 |        COUNTY OF ORANGE, CENTRAL JUSTICE CENTER

11

12 | MONICA STEINBERG, an individual; and     ) Case No. 30-2013-00686091-CU-PT-CJC
MS WEALTH MANAGEMENT &               )
13 | INSURANCE SERVICES, INC., a          ) Assigned to the Honorable
California corporation,              ) Department
14 |                                         )
             Petitioner,                 ) **PETITION TO STAY ARBITRATION**
15 |                                         )
v.                                    ) [Memorandum of Points and Authorities
16 |                                         ) attached hereto; Judicial Notice filed
TRANSAMERICA LIFE INSURANCE           ) concurrently]
17 | COMPANY, an Iowa corporation; and    )
AMERICAN ARBITRATION                 )
18 | ASSOCIATION, INC., a New York not-for- ) Date:
profit corporation,                  ) Time:
19 |                                         ) Dept:
             Respondents.                )
20 | _____ )

21

22

23

24

25

26

27

28

PETITION TO STAY ARBITRATION

1    Petitioners MONICA STEINBERG and MS WEALTH MANAGEMENT &

2    INSURANCE SERVICES, INC. ("Petitioners") allege as follows:

3        1.    On or about September 19, 2013, Respondent Transamerica Life Insurance

4    Company ("Transamerica") filed a Demand for Arbitration with Respondent the American

5    Arbitration Association asserting claims against Petitioners (the "Arbitration").  A true and correct

6    copy of the Demand for Arbitration is attached hereto as Exhibit 1 and is incorporated herein by

7    this reference.

8        2.    On or about September 19, 2013, Transamerica also filed a Complaint in Orange

9    County Superior Court, Case No. 30-2013-00676523 (the "Complaint"), asserting claims against

10    third parties arising from the same transactions or series of related transactions as the claims

11    asserted against Respondents in the Arbitration.  A true and correct copy of Transamerica's

12    Complaint as filed is attached to the Request for Judicial Notice filed concurrently herewith as

13    Exhibit 2.

14        3.    Transamerica's Demand for Arbitration is based on an arbitration provision in a

15    written Independent Producer Contract (the "Contract") between petitioner MS Wealth

16    Management & Insurance Services, Inc. and Transamerica, who are the only parties to the

17    Contract.  None of the defendants named in Transamerica's Complaint are parties to the Contract.

18        4.    Petitioners have not yet answered the Allegations and Claims in Support of

19    Claimant Transamerica Life Insurance Company's Demand for Commercial Arbitration attached

20    as Exhibit A to the Demand for Arbitration ("Arbitration Claims").

21        5.    On or about October 24, 2013, two of the defendants named in the Complaint filed

22    a Notice of Removal of the Complaint to the U. S. District Court for the Central District of

23    California, where that case is now pending (the "Court Action").  A true and correct copy of the

24    Notice of Removal, without the attached exhibits, as filed is attached to the Request for Judicial

25    Notice filed concurrently herewith as Exhibit 3.

26        6.    Transamerica's claims against the third party defendants in the Court Action arise

27    out of the same transactions or series of related transactions as the claims asserted against

28

2

PETITION TO STAY ARBITRATION

1   Respondents by the Arbitration Claims, and there is a possibility of conflicting rulings on one or

2   more common issues of law or fact.

3       7.      Petitioners have requested that Respondent Transamerica agree to join Petitioners

4   as defendants in the Court Action and not pursue its claims in the Arbitration.  Transamerica has

5   declined to do so.  True and correct copies of Petitioners' request and Transamerica's refusal are

6   attached hereto as Exhibit 4 and Exhibit 5, respectively.

7       WHEREFORE, Petitioners pray:

8       1.      That the Court order that the Arbitration is stayed pursuant to Code of Civil

9   Procedure section 1281.2(c) pending the outcome of the Court Action;

10      2.      That Petitioners be awarded their fees and costs incurred herein and in arbitration;

11  and

12      3.      For such other and further relief as this Court may deem appropriate.

13

14  Dated: November 6, 2013                    CALLAHAN & BLAINE, APLC

15

16                          By: _____

17                              Michael J. Sachs
                                James R. Rouse
18                          Attorneys for Petitioners MONICA
                            STEINBERG and MS WEALTH
19                          MANAGEMENT & INSURANCE
                            SERVICES, INC.

20

21

22

23

24

25

26

27

28

3

PETITION TO STAY ARBITRATION

1            **MEMORANDUM OF POINTS AND AUTHORITIES**

2       Petitioners Monica Steinberg and MS Wealth Management & Insurance Services, Inc.

3 submit the following Memorandum of Points and Authorities in support of their Petition to Stay

4 Arbitration and respectfully request the Court's order to that effect.

5  **1.**     **SUMMARY OF ARGUMENT**

6       Transamerica's claims in the Arbitration and the Court Action all arise out of the same

7 operative facts and same alleged scheme involving the sale of Transamerica universal life

8 insurance policies. However, although Transamerica's Complaint alleges that the independent

9 producers who sold the policies, including Petitioners, were co-conspirators with the defendants

10 in the Court Action, those defendants are third parties to the contracts between the sales agents

11 and Transamerica and cannot be compelled to participate in an Arbitration. Yet, all of the

12 defendants in the Court Action are essential to Petitioners' defense of the Arbitration Claims.

13       Unquestionably, the issues in the Arbitration and the Court Action arise out of the same

14 transaction or series of related transactions, and there is a possibility of conflicting rulings on a

15 common issue of law or fact. Therefore, the Court should order that the Arbitration is stayed until

16 resolution of the Court Action and provide the parties the option of pursuing the Arbitration

17 Claims in the Court Action.

18  **2.**     **THE COURT CAN ISSUE A STAY ORDER FOR THE ARBITRATION**

19       Since the Contract provides for application of California law, the Court can issue a stay

20 order for the Arbitration.

21       Paragraph 7 of the Contract provides, *inter alia*: "We also agree that any disputes between

22 you and us will be settled through binding arbitration." Paragraph 7.2 of the Contract provides,

23 *inter alia*: "any dispute arising out of this agreement will be resolved by binding arbitration in

24 accordance with this section and the rules for arbitration of commercial disputes of the American

25 Arbitration Association. The arbitration will take place in Los Angeles, California, unless we

26 mutually agree to another location." Paragraph 9.7 of the Contract provides: "This agreement

27 shall be construed in accordance with the laws of the State of California, without giving effect to

28 principles of conflict of laws."

1

1       When an agreement involves interstate commerce, absent a choice of law provision

2  expressly mandating the procedural law of another jurisdiction, a state court applies its own

3  procedural law, including the procedural provisions of the California Arbitration Act. <u>Mave</u>

4  <u>Enterprises, Inc. v. The Travelers Indemnity Company of Connecticut</u> (2013) 219 Cal. App. 4th

5  1408, 1429.

6  **3.      THE COURT MAY ISSUE A STAY ORDER WHERE THERE IS A POSSIBILITY**

7          **OF CONFLICTING RULINGS ON A COMMON ISSUE OF LAW OR FACT**

8       In this case, Transamerica is a party to the Court Action with a third party. "For purposes

9  of the statute, a third party is one who is neither bound by nor entitled to enforce the arbitration

10 agreement." <u>Daniels v. Sunrise Senior Living, Inc.</u> (2013) 212 Cal. App. 4th 674, 679.

11      Any party to an arbitration agreement can invoke the protection of Code of Civil

12 Procedure section 1281.2(c) whether or not that party is also a party to the pending litigation with

13 a third party.  <u>Whaley v. Sony Computer Entertainment America, Inc.</u> (2004) 121 Cal. App. 4th

14 479, 486.

15      Code of Civil Procedure section 1281.2(c) provides, *inter alia*:

16         "A party to the arbitration agreement is also a party to a

17     pending court action or special proceeding with a third party, arising

18     out of the same transaction or series of related transactions and there is

19     a possibility of conflicting rulings on a common issue of law or fact."

20                      * * *

21         "If the court determines that a party to the arbitration is also a

22     party to litigation in a pending court action or special proceeding with

23     a third party as set forth under subdivision (c) herein, the court (1) may

24     refuse to enforce the arbitration agreement and may order intervention

25     or joinder of all parties in a single action or special proceeding; (2)

26     may order intervention or joinder as to all or only certain issues; (3)

27     may order arbitration among the parties who have agreed to arbitration

28     and stay the pending court action or special proceeding pending the

2

1    outcome of the arbitration of the arbitration proceeding; or (4) may

2    stay the arbitration pending the outcome of the court action or special

3    proceeding."

4        "[T]he statute was intended primarily to prevent conflicting rulings resulting from

5    arbitration proceedings and other related litigation arising out of the same transaction." Whaley v.

6    Sony Computer Entertainment America, Inc. (2004) 121 Cal. App. 4th 479, 488. The problem that

7    the statute was intended to address is: "In actions involving multiple parties with related claims,

8    where some claimants agree to arbitrate their differences and others remain outside the agreement,

9    *arbitration is unworkable.* Where a party to an arbitration agreement is also party to a pending

10   court action or special proceeding, with such third party, *there may be a possibility of conflicting*

11   *rulings on issues of law or fact.*" [Emphasis in original.] Whaley v. Sony Computer

12   Entertainment America, Inc., *supra*, 121 Cal. App. 4th at 488 (quoting legislative history of

13   statute).

14       The issue addressed under Code of Civil Procedure section 1281.2(c) is whether

15   inconsistent rulings are possible, not whether they are inevitable. Lindmann v. Hume (2012) 204

16   Cal. App. 4th 556, 567.

17       In determining whether there is a possibility of conflicting rulings on legal or factual

18   issues, a court can rely on the allegations contained in the operative pleadings. Abaya v. Spanish

19   Ranch I, L.P. (2010) 189 Cal. App. 4th 1490, 1499.

20       Since the Court Action is pending in Federal Court, the only one of the four statutory

21   options available to the Court is to order a stay of the Arbitration. However, during such a stay,

22   the parties could themselves join the Arbitration Claims in the Court Action.

23   4.   **THE ARBITRATION CLAIMS AND THE COMPLAINT ARISE OUT OF THE**

24       **SAME TRANSACTION OR SERIES OF RELATED TRANSACTIONS, AND**

25       **THERE IS A POSSIBILITY OF CONFLICTING RULINGS ON A COMMON**

26       **ISSUE OF LAW OR FACT**

27       The allegations in the Arbitration Claims and the Complaint conclusively show that the

28   Arbitration and the Court Action arise out of the same transaction or series of related transactions,

3

1  and there is a possibility of conflicting rulings on a common issue of law or fact.

2      A.      **The Arbitration Claim Allegations**

3      Transamerica alleges that the Arbitration arises out of petitioner Monica Steinberg's

4  ("Steinberg") alleged negligent, fraudulent, and dishonest business practices in connection with

5  the marketing, application for, and sale of at least 17 (Arbitration Claims, ¶ 17) of Transamerica's

6  Indexed Universal Life ("IUL") insurance policies, and may have been involved in and profited

7  from the sale of additional polices by others.  (Arbitration Claims, ¶¶ 10, 16.)

8      Transmerica alleges that: Steinberg is the owner of petitioner MS Wealth Management &

9  Insurance Services, Inc. ("MS"); Petitioners were both contracted with Transamerica as

10  independent producers for the sale of life insurance policies; and that Steinberg, on behalf of

11  Petitioners, sold Transamerica's IUL insurance policies.  (Arbitration Claims, ¶¶ 8, 9, 10.)

12      Transamerica alleges that: certain of its distributors, including Steinberg, engaged in a

13  scheme to defraud Transamerica of commission payments for the sale of IUL policies; Steinberg

14  secretly arranged for payment of the first year premium on the IUL policies for applicants who

15  could not afford coverage, did not want to pay for it, did not understand the coverage, did not need

16  the coverage and did not intend to pay future premiums.  (Arbitration Claims, ¶ 11.)

17      Transamerica alleges that: Steinberg obtained substantial financial benefit by paying or

18  arranging for payment of the first year premium because she got a commission and arranged with

19  general agents to be paid part of the general agents' commission.  (Arbitration Claims, ¶ 12.)

20      Transamerica alleges that: Steinberg falsified policy application information and, in

21  concert with others, arranged to conceal the source of premium payments from Transamerica.

22  (Arbitration Claims, ¶¶ 13, 14.)

23      Transamerica alleges that: Steinberg and others engaged in a dishonest and illegitimate

24  insurance scheme that caused financial loss to Transamerica, the amount of which exceeds

25  $630,000 for the 17 policies, but could be much more.  (Arbitration Claims, ¶ 16.)

26      Transamerica seeks recovery from Petitioners on legal theories of breach of contract,

27  breach of the implied covenant of good faith and fair dealing, violation of California Business &

28

4

PETITION TO STAY ARBITRATION

1  Professions Code §§ 17200 et seq., breach of fiduciary duty, negligence, fraud, and unjust

2  enrichment.  (Arbitration Claims.)

3        Transamerica alleges that: Steinberg solicited and sold the IUL policies in conjunction

4  with other individuals and entities, including Axsys Group, Inc. ("Axsys"), Manuela Kitchen and

5  others affiliated or employed by Axsys, who funded some of the premiums, and that some

6  applicants were complicit in the alleged scheme.  (Arbitration Claims, ¶¶ 25 & 26.)

7      **B.**    **The Complaint Allegations**

8        Transamerica alleges that the lawsuit arises out of the same alleged insurance scam

9  involving sale of its IUL policies as alleged in the Arbitration Claims, but expands the allegations

10  to include that sale of 172 policies.  (Complaint, ¶¶ 1, 2, 28.)  The alleged scheme is exactly the

11  scheme alleged in the Arbitration Claims.  (Complaint, ¶¶ 25 - 51.)

12        Transamerica alleges that the independent producers were co-conspirators with the

13  defendants, the independent producers were in league with the defendants, and the alleged

14  wrongful conduct of the defendants and the co-conspirators caused Transamerica financial loss in

15  excess of $5.5 million.  (Complaint, ¶¶ 2, 3, 4, 35, 36, 38, 39, 40, 45, 46, 47, 48, 51.)  Since

16  Petitioners are alleged to be independent producers in the Arbitration Claims, the allegations in

17  the Complaint necessarily include them as alleged co-conspirators in the Court Action.

18        Transamerica names Axsys and Manuela Kitchen as defendants, the same entity and owner

19  alleged in the Arbitration Claims as being involved with Steinberg, and names two Axsys

20  employees as defendants who were referred to, but not specifically identified, in the Arbitration

21  Claims allegations.  (Complaint, ¶¶ 6, 8, 13, 16.)

22        Transamerica names Steinberg Equity Partners LLC ("Steinberg Equity") and Wolfgang

23  Steinberg ("W. Steinberg") as defendants and alleges that W. Steinberg and Steinberg, the

24  respondent in the Arbitration, are husband and wife, and alleges that they arranged financing for

25  policy premiums.  (Complaint, ¶¶ 18, 20, 41, 47.)

26        Transamerica seeks recovery in the Court Action on legal theories of violation of

27  California Business & Professions Code §§ 17200 et seq., civil RICO, fraud, unjust enrichment,

28

5

1    negligence, and negligent misrepresentation.  (Complaint.)  Many of these are the same legal

2    theories of recovery asserted against Petitioners in the Arbitration Claims.

3        C.    **The issues in the Arbitration and the Court Action arise out of the same**

4            **transaction or series of related transactions, and there is a possibility of**

5            **conflicting rulings on a common issue of law or fact**

6        There is no question that the claims Transamerica asserts in the Court Action arise out of

7    the same transaction or series of related transactions as Transamerica's claims in the Arbitration.

8    The allegations in both the Arbitration Claims and the Complaint make this perfectly clear.

9        There is no question that there is a possibility of conflicting rulings of a common issue of

10    law or fact because, with respect to Petitioners, the majority of the factual issues presented by the

11    Arbitration Claims and the Complaint are the same, and there are many common legal issues.

12        Therefore, all of the statutory requirements are met to authorize this Court to issue an

13    order staying the Arbitration.

14    **5.    CONCLUSION**

15        The issues in the Arbitration and the Court Action unquestionably arise out of the same

16    transaction or series of related transactions, and there is a possibility of conflicting rulings on a

17    common issue of law or fact.  Therefore, Petitioners respectfully request the Court to order that

18    the Arbitration is stayed until resolution of the Court Action and provide the parties the option of

19    pursuing the Arbitration Claims in the Court Action.

20

21    Dated: November 6, 2013            CALLAHAN & BLAINE, APLC

22

23                           By: _____

24                              Michael J. Sachs
                               James R. Rouse

25                         Attorneys for Petitioners MONICA
                          STEINBERG and MS WEALTH

26                         MANAGEMENT & INSURANCE
                          SERVICES, INC.

27

28    G:\Clients\3418\3418-02\Pleadings\Petition to Stay.wpd

PETITION TO STAY ARBITRATION

# EXHIBIT 1

 American Arbitration Association
*Dispute Resolution Services Worldwide*

Please visit our website at www.adr.org if you
would like to file this case online. AAA Case Filing
Services can be reached at 877-495-4185.

**COMMERCIAL ARBITRATION RULES**
**DEMAND FOR ARBITRATION**

*MEDIATION: If you would like the AAA to contact the other parties and attempt to arrange a mediation, please check this box. □*
*There is no additional administrative fee for this service.*

| Name of Respondent | Name of Representative (if known) |
|---|---|
| Monica Steinberg & MS Wealth Mgmt. & Ins. Serv., Inc. | N/A |
| Address | Name of Firm (if applicable) |
| 31302 Via Las Palmas | |
| | Representative's Address |
| [See attachment for MS Wealth Mgmt. & Ins. Serv., Inc. Info] | |

| City | State | Zip Code | City | State | Zip Code |
|---|---|---|---|---|---|
| San Juan Capistrano | CA | 92675- | | | |

| Phone No. | Fax No. | Phone No. | Fax No. |
|---|---|---|---|
| (949) 630-9785 | | | |

| Email Address: | Email Address: |
|---|---|
| marci@madickins.com | |

The named claimant, a party to an arbitration agreement dated **11/8/2011; 2/29/12**_____, which provides for arbitration under the Commercial Arbitration Rules of the American Arbitration Association, hereby demands arbitration.

THE NATURE OF THE DISPUTE
This dispute involves Steinberg's and MS Wealth Management & Insurance Services, Inc.'s negligent, fraudulent, and/or dishonest business practices in connection with the marketing, application for and sale of Transamerica Indexed Universal Life policies. Transamerica asserts claims for breach of contract, violations of Bus. & Prof. Code sec. 17200 et seq., fraud, negligence, unjust enrichment, and breach of fiduciary duty. (See attached documentation for further description).

| Dollar Amount of Claim  $630,000.00 | Other Relief Sought:  ☒ Attorneys Fees    ☒ Interest |
|---|---|
| | ☒ Arbitration Costs  □ Punitive/ Exemplary  □ Other _____ |

Amount Enclosed $ 6,200.00 _____   In accordance with Fee Schedule:  □Flexible Fee Schedule  ☒Standard Fee Schedule

PLEASE DESCRIBE APPROPRIATE QUALIFICATIONS FOR ARBITRATOR(S) TO BE APPOINTED TO HEAR THIS DISPUTE:
Knowledge concerning life insurance transactions and insurance agent/producer misconduct

Hearing locale Los Angeles, CA _____   (check one) □ Requested by Claimant  ☒ Locale provision included in the contract

| Estimated time needed for hearings overall: | Type of Business:  Claimant __Insurance Company__ |
|---|---|
| ____ hours or ___10.00___ days | Respondent _Insurance Producer_ |

Is this a dispute between a business and a consumer? □Yes ☒ No  Does this dispute arise out of an employment relationship? □ Yes ☒ No

If this dispute arises out of an employment relationship, what was/is the employee's annual wage range?  Note: This question is required by California law.  □Less than $100,000  □ $100,000 - $250,000  □ Over $250,000

You are hereby notified that a copy of our arbitration agreement and this demand are being filed with the American Arbitration Association with a request that it commence administration of the arbitration. The AAA will provide notice of your opportunity to file an answering statement.

| Signature (may be signed by a representative)     Date: | Name of Representative |
|---|---|
| [signature]                                   9/19/13 | Andrew S. Williams (CA Bar # 177926) |
| Name of Claimant | Name of Firm (if applicable) |
| Transamerica Life Insurance Company | Barger & Wolen LLP |
| Address (to be used in connection with this case) | Representative's Address |
| c/o Barger & Wolen LLP, 633 West 5th St., 47th Fl. | 633 West 5th St., 47th Floor |

| City | State | Zip Code | City | State | Zip Code |
|---|---|---|---|---|---|
| Los Angeles | CA | 90071- | Los Angeles | CA | 90071- |

| Phone No. | Fax No. | Phone No. | Fax No. |
|---|---|---|---|
| (213) 680-2800 | (213) 614-7399 | (213) 680-2800 | (213) 614-7399 |

| Email Address: | Email Address: |
|---|---|
| awilliams@bargerwolen.com | awilliams@bargerwolen.com |

To begin proceedings, please send a copy of this Demand and the Arbitration Agreement, along with the filing fee as provided for in the Rules, to: American Arbitration Association, Case Filing Services, 1101 Laurel Oak Road, Suite 100 Voorhees, NJ 08043. Send the original Demand to the Respondent.

## ATTACHMENT TO COMMERCIAL ARBITRATION RULES
## DEMAND FOR ARBITRATION

### ADDITIONAL RESPONDENT CONTACT INFORMATION:

| | |
|---|---|
| Name: | MS Wealth Management & Insurance Services, Inc. |
| Address: | 27702 Crown Valley Pkwy. Building D4 #136 |
| | Ladera Ranch, CA 92694 |
| Phone No.: | (949) 630-9785 |
| E-mail Address: | msteinberg@wealth-asset-management.com |

### AGENT FOR SERVICE OF PROCESS:

| | |
|---|---|
| Entity Name: | MS WEALTH MANAGEMENT & INSURANCE SERVICES, INC. |
| Agent for Service of Process: | WOLFGANG STEINBERG |
| Agent Address: | 27702 CROWN VALLEY PKWY, D4 #136 |
| Agent City, State, Zip: | LADERA RANCH CA 92694 |

# EXHIBIT A

Andrew S. Williams (177926)
awilliams@bargerwolen.com
Sandra I. Weishart (89782)
sweishart@bargerwolen.com
Vivian I. Orlando (213833)
vorlando@bargerwolen.com
BARGER & WOLEN LLP
633 West Fifth Street, 47th Floor
Los Angeles, California 90071
Telephone: (213) 680-2800
Facsimile: (213) 614-7399

Attorneys for Claimant
Transamerica Life Insurance Company

**AMERICAN ARBITRATION ASSOCIATION**

| | |
|---|---|
| TRANSAMERICA LIFE INSURANCE COMPANY, <br><br> Claimant, <br><br> vs. <br><br> MONICA STEINBERG, an individual; and MS WEALTH MANAGEMENT & INSURANCE SERVICES, INC., a California corporation, <br><br> Respondents. | CASE NO.: <br><br> **ALLEGATIONS AND CLAIMS IN SUPPORT OF CLAIMANT TRANSAMERICA LIFE INSURANCE COMPANY'S DEMAND FOR COMMERCIAL ARBITRATION** |

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

ALLEGATIONS IN SUPPORT OF DEMAND FOR COMMERCIAL ARBITRATION

31

1    Claimant Transamerica Life Insurance Company ("Transamerica") alleges in support of its

2  Demand for Commercial Arbitration against Respondents Monica Steinberg ("Steinberg") and

3  MS Wealth Management & Insurance Services, Inc. ("MS Wealth Inc."), as follows:

4

5  **TRANSAMERICA'S INDEXED UNIVERSAL LIFE INSURANCE POLICIES**

6    1.    The main purpose of life insurance is to provide financial security to the insured's

7  family, business, or loved ones upon the insured's death.

8    2.    One category of life insurance is permanent life insurance.  Permanent life insurance

9  is not temporary and is intended to remain in force during the insured's entire lifetime, providing

10  premiums are paid as specified in the policy.  Unlike permanent life insurance, a second category of

11  insurance, known as term life insurance, typically provides coverage for only a set number of years

12  on a level premium basis (10-30 years) and then is subject to annually renewable term rates at much

13  higher rates than the initial level premiums until the date the policy expires.  When the level

14  premium period ends on the term policy, if coverage is still needed the insured would need to

15  provide new evidence of insurability in order to start a new affordable level premium period and

16  avoid the very large increases in premium.  As an insured ages, term insurance coverage can

17  become prohibitively expensive, while, in general, permanent insurance can provide the policy

18  owner a way to pre-fund for future charges to provide a more levelized premium approach.

19  Generally, permanent insurance costs more initially and in the short term, but can ultimately be

20  more affordable for long term, lifelong coverage needs.

21    3.    Universal Life insurance is a form of permanent life insurance.  Universal Life

22  insurance policies offer a valuable death benefit and, unlike term life insurance policies, provide the

23  opportunity to build cash values from which the policy owner can borrow or withdraw.  The

24  advantage of Universal Life insurance coverage over other forms of permanent insurance (and term

25  life insurance) is that Universal Life insurance gives the policy owner more flexibility over his or

26  her policy to assist in meeting financial goals.  For example, (with certain limits) a policy owner can

27  choose the amount, method and timing of his or her premium payments, which in turn determines

28

-1-

ALLEGATIONS IN SUPPORT OF DEMAND FOR COMMERCIAL ARBITRATION

how the policy value develops.  Universal Life insurance is also an "interest sensitive" product or a "market sensitive" product.  This means that the rates credited to policy values will change over time.  Flexibility of payments, ability to pre-fund for future protection costs, tax-deferred cash value accumulation, coverage options (subject to contract requirements), and the ability to continue coverage for an entire lifetime without ever having to re-qualify from a health standpoint or financially are the primary advantages of Universal Life coverage over term insurance coverage.  Because of these advantages, Universal Life insurance can be effectively used in estate planning, business planning, and retirement planning, offering the policy owner a variety of options.

4.    One type of Universal Life insurance offered by Transamerica is called "Indexed Universal Life ('IUL') insurance."  Like all Universal Life insurance, net premiums for IUL policies are applied to a fixed account that earns a fixed rate of interest subject to a guaranteed minimum.  Unlike typical Universal Life insurance, a percentage of that value, which is determined by the policy owner, can be allocated to an indexed account and earn interest based in part on changes to outside indexes.  A person might consider IUL coverage if that person is interested in (i) death benefit protection; (ii) greater cash value accumulation potential than traditional universal life insurance; and/or (iii) protection from market-based losses with an interest crediting floor.

5.    Transamerica IUL policies are generally sold by appointed independent producers who are affiliated with Transamerica's general agents (collectively referred to herein as "distributors").  Transamerica typically pays distributors of its IUL policies commissions for each sale as follows: the selling producers are paid commissions up to 90% of the first year target premium and the general agent is paid a "commission override" of 55% of the first year target premium in addition to any portion of the 90% commission not paid to the selling producer.  Smaller commissions (2% to the producer and 2% for the general agent) are paid for premium paid in excess of the first year target premium.  It is customary, and relatively common, in the life insurance industry for life insurers to pay distributors lump-sum commissions that exceed the first year target premium for the sale of life insurance.  Payment in this manner accounts for, among other things, the considerable time and expense incurred by distributors in marketing, soliciting, and

-2-
ALLEGATIONS IN SUPPORT OF DEMAND FOR COMMERCIAL ARBITRATION

1    securing applications for life insurance, and the servicing of clients over what tend to be long-term

2    insurance relationships.

3        6.    When permanent insurance, like IUL insurance, is sold for a legitimate purpose

4    (such as income protection or estate planning), policy owners tend to keep the insurance in force

5    through the payment of premium year after year for extended periods of time and often for the

6    lifetime of the insured. It is thus uncommon for permanent policies to lapse for the non-payment of

7    premium, and particularly rare after the first year. In fact, given the cost of such insurance, it would

8    make no financial sense for an individual to buy permanent life insurance coverage for only one

9    year. Based on Transamerica's experience, the expected lapse rate for its permanent insurance

10   policies is approximately 1% after one year. Permanent life insurance is thus issued by

11   Transamerica with the expectation that (i) the policy owner has a legitimate need for (and wants)

12   the coverage and (ii) the policy owner will keep the coverage in force for many years.

13       7.    The manner in which commissions are paid on Transamerica IUL policies assumes

14   that most IUL policies will be kept in force for many years and that the vast majority of IUL

15   policies will not lapse due to the policy owner's failure to pay premiums beyond the first year. In

16   fact, given the up-front commission structure, underwriting costs and administrative costs

17   associated with IUL policies, it takes several years of premium payments just for Transamerica to

18   recover the acquisition costs associated with the sale of such products.

19

20                **MONICA STEINBERG & MS WEALTH INC.**

21       8.    Steinberg was a contracted Transamerica independent producer who was appointed

22   to sell, and sold, Transamerica IUL policies in California and Nevada.

23       9.    MS Wealth Inc. was a contracted Transamerica independent producer with

24   Transamerica in California and Nevada. Transamerica is informed and believes, and on that basis

25   alleges, that Steinberg is, and at all relevant times was, an owner, shareholder, officer, employee,

26   agent and/or principal of MS Wealth Inc. and that Steinberg operated and controlled MS Wealth

27   Inc. Transamerica is informed and believes, and on that basis alleges, that Steinberg engaged in

28

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

-3-
ALLEGATIONS IN SUPPORT OF DEMAND FOR COMMERCIAL ARBITRATION

34

1   conduct alleged herein in her own name and in her capacity as an owner, shareholder, officer,

2   employee, agent and/or principal of MS Wealth Inc.  Transamerica is informed and believes, and on

3   that basis alleges, that MS Wealth Inc. is, and at all relevant times was, the alter ego of Steinberg

4   and was a mere instrumentality, agent, or conduit for Steinberg, who controls and dominates the

5   actions of MS Wealth Inc.  Transamerica is further informed and believes, and on that basis alleges,

6   that each respondent is, and at all relevant times was, the agent, employee, representative, or co-

7   conspirator of the other respondent and was at all times acting within the course and scope of such

8   agency, employment, authority, or conspiracy with the knowledge and approval of and in concert

9   with the other.

10          10.    In and after February 2013, Transamerica discovered that certain of its distributors,

11   including Steinberg, were engaging in a scheme (or schemes) to defraud Transamerica out of

12   commission payments paid in connection with the sale of its IUL policies.  This arbitration arises

13   out of Steinberg's negligent, fraudulent, and dishonest business practices in connection with the

14   marketing, application for and sale of at least seventeen (17) Transamerica IUL policies.

15          11.    Transamerica is informed and believes, and on that basis alleges, that Steinberg

16   secretly and in contravention of Transamerica's rules and regulations arranged for the payment of

17   the first year premium on Transamerica IUL policies on behalf of policy applicants who could not

18   afford the coverage, did not want to pay for the coverage, did not understand the nature of the

19   coverage, and/or did not legitimately need the coverage, and who had no intent of keeping the

20   coverage in force through the payment of future premium.

21          12.    By covertly paying for (or arranging payment for) the first year premium for

22   Transamerica IUL policies on behalf of applicants, Steinberg was able to reap a substantial financial

23   benefit because, in addition to the commissions she was entitled to as an appointed independent

24   producer, Steinberg negotiated arrangements with her affiliated general agents to be paid all, or

25   substantially all, of the commission override paid by Transamerica to such general agents.

26          13.    Transamerica has also uncovered evidence that applicants for its IUL policies may

27   have been misled as to the nature, terms and extent of the life insurance coverage offered by

28

-4-

ALLEGATIONS IN SUPPORT OF DEMAND FOR COMMERCIAL ARBITRATION

Steinberg or those working under her direction and control. In Steinberg's case, Transamerica is informed and believes, and on that basis alleges, that Steinberg's scheme was accomplished, in whole or part, through the submission of IUL policy applications to Transamerica that contained falsified information concerning the applicant-insureds, including, among other things, falsified or forged signatures of applicant-insureds, as well as other misrepresentations of material fact concerning applicant-insureds, including false statements about annual income, net worth and employment.

14.    Transamerica is further informed and believes, and on that basis alleges, that by falsifying the application information – and particularly by falsely inflating annual income and net worth figures – Steinberg was able to secure higher face value policies for the prospective insureds with whom she worked and, thus, higher commission payments for herself. In addition, in at least some cases, Steinberg (or those acting in concert with her and/or at her direction) were able to gain direct access to applicants' bank accounts to both deposit and withdraw money from the bank account so that it appeared to Transamerica that the source of the premium payments originated with the applicant as opposed to some third party payor. In this way, Steinberg could avoid inquiries from Transamerica regarding whether the premium payments were funded by someone (or some entity) other than the applicant and, if so, why.

15.    The result of the above-described dishonest and illegitimate insurance scheme is that Steinberg and other distributors have obtained a significant financial benefit at the expense of Transamerica. Because the IUL policies were not sold for a legitimate purpose, were based upon false information, and because policyholders never intended to (or could not afford to) keep the policies in effect after one year, substantially all of the IUL policies involved in the scheme have lapsed for failure to pay second year premiums and the remainder are expected to lapse shortly. Transamerica estimates that its aggregate financial loss as a result of the foregoing scheme will be multiple millions of dollars, representing commissions paid above premium received, as well as underwriting, administrative and legal expenses incurred in connection with the IUL policies.

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

-5-
ALLEGATIONS IN SUPPORT OF DEMAND FOR COMMERCIAL ARBITRATION

36

16.     With respect to Steinberg specifically, all of the Transamerica IUL policies that she sold have lapsed for failure to pay the second year required premium. The exact amount of Transamerica's financial loss as a result of Steinberg's actions in connection with the seventeen (17) policies for which she is listed as the producer is unknown but is believed to be in excess of $630,000. Transamerica is informed and believes, and on that basis alleges, that Steinberg may have been involved in, and profited from, the sale of IUL policies other than the seventeen (17) policies for which she is listed as the producer, and its investigation in this respect is on-going. Among other things, as described further below, Steinberg's conduct, which undermines the legitimate purposes of life insurance, violates the terms of her and MS Wealth Inc.'s Producer Agreements, violates California Business and Professions Code sections 17200, *et seq.*, is fraudulent, negligent, constitutes unjust enrichment, and is a breach of Steinberg's and MS Wealth Inc.'s fiduciary duties owed to Transamerica as a result of their appointment by Transamerica to solicit and sell insurance on its behalf.

**THE PARTIES**

17.     Transamerica is a corporation organized and existing under the laws of the State of Iowa. Transamerica is a resident and citizen of the State of Iowa, with its principal place of business located in Cedar Rapids, Iowa. Transamerica is, and at all relevant times was, a life insurance company authorized to do business in the State of California and the State of Nevada.

18.     Transamerica is informed and believes and on that basis alleges that Steinberg is, and at all relevant times was, a citizen and resident of Orange County, California. Transamerica is further informed and believes and on that basis alleges that Steinberg, at all relevant times, was licensed with the California Department of Insurance and the Nevada Division of Insurance to sell life insurance in the states of California and Nevada.

19.     Transamerica is informed and believes and on that basis alleges that MS Wealth Inc. is, and at all relevant times was, a California corporation with its principal place of business located in Orange County, California. Transamerica is further informed and believes and on that basis

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

-6-

ALLEGATIONS IN SUPPORT OF DEMAND FOR COMMERCIAL ARBITRATION

37

1   alleges that MS Wealth Inc., at all relevant times, was licensed with the California Department of

2   Insurance and the Nevada Division of Insurance to sell life insurance in the states of California and

3   Nevada. Steinberg operated and controlled MS Wealth Inc. and is, and at all relevant times was, an

4   owner, shareholder, officer, employee, agent and/or principal of MS Wealth Inc.

5

6                           **JURISDICTION AND VENUE**

7           20.    On November 8, 2011 and February 29, 2012, respectively, Transamerica entered

8   into Independent Producer Agreements ("Producer Agreements") with Steinberg and MS Wealth

9   Inc. True and correct copies of these Producer Agreements are attached hereto as Exhibits A and B.

10  Pursuant to Section 7.2 of the Producer Agreements, the parties agreed that: "[A]ny dispute between

11  the parties arising out of or related to this agreement will be resolved by binding arbitration in

12  accordance with this Section and the rules for arbitration of commercial disputes of the American

13  Arbitration Association." This Section further provides that the arbitration will take place in Los

14  Angeles, California.

15

16                          **FIRST CLAIM FOR RELIEF**

17                   **(Breach of Contract Against All Respondents)**

18          21.    Transamerica realleges and incorporates herein, each and every allegation contained

19  in Paragraphs 1 through 20 above.

20          22.    Steinberg and MS Wealth Inc. were appointed by, and contracted with, Transamerica

21  for the purpose of soliciting applications for life insurance. Pursuant to the Producer Agreements,

22  Steinberg and MS Wealth Inc. agreed as follows:

23

24          2. **SOLICITATION OF APPLICATIONS**

25          **2.2 SUPERVISION**

26          In connection with this agreement, you are responsible for the performance of
            your employees and solicitors as they relate to their contracts with the
27          Company or their appointments by the Company. You agree to take all
            necessary steps to communicate the Company's rules and regulations to such

28

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

                                        -7-

ALLEGATIONS IN SUPPORT OF DEMAND FOR COMMERCIAL ARBITRATION

persons, and to assure that they comply with such rules and regulations, as well as all other applicable laws and regulations.

***

## 3. RESPONSIBILITIES OF THE INDEPENDENT PRODUCER

You agree to abide by the following in the conduct of your activities under this agreement:

### 3.1 COMPANY REGULATIONS

To the extent they do not conflict with the terms of this agreement, you will conform to the rules and regulations of the Company now or hereafter in force. Such rules and regulations will constitute a part of this agreement.

### 3.12 SUITABILITY

You agree to comply with all applicable laws, governmental regulations, and Company policies pertaining to requirements that products be suitable for the purchaser.

***

### 8.2 EARLY TERMINATION BY THE COMPANY

We may terminate this agreement immediately, or at any time thereafter, at our option, upon written notice to you if:

(i)    you fail to comply with our rules and regulations or the laws of any applicable state or jurisdiction or regulations of the Department of Insurance thereof; or

(ii)   you fail to conform to the terms and conditions of this agreement or any other existing or future agreement with us; or

(iii)  you at any time commit any illegal, dishonest or fraudulent acts in connection with any business of the Company; or . . .

(viii) in our opinion, you so conduct yourself as to injure the Company's standing or good name in the community or elsewhere.

***

23.    Between the date of her Producer Agreement and present, Steinberg was the agent of record on seventeen (17) Transamerica IUL policies. Of those seventeen (17) policies, all have lapsed for failure to pay the second year premium. The IUL policies sold by Steinberg are thus at a

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

-8-

ALLEGATIONS IN SUPPORT OF DEMAND FOR COMMERCIAL ARBITRATION

39

1  100% lapse rate after one year. This lapse rate on the IUL policies sold by Steinberg eclipses

2  Transamerica's expected lapse rate for such policies after one year and, in and of itself, is

3  substantial proof that the policies were not sold for a legitimate purpose but were sold solely to

4  allow Steinberg (and others who participated in her scheme) to profit at the expense of

5  Transamerica.

6       24.    As set forth above, Transamerica is informed and believes, and on that basis alleges,

7  as follows:

8      (a) Steinberg paid for, or arranged for the payment of, the first year premium on the

9         IUL policies she sold on behalf of Transamerica applicant-insureds who did not

10        understand the coverage applied for, did not want the coverage, did not need the

11        coverage, could not afford the coverage, and/or had no intent of keeping the

12        coverage in force by paying premiums after the first policy year.

13      (b) Steinberg submitted applications for IUL policies to Transamerica containing

14        falsified material information including, but not limited to, false information

15        concerning the applicants' occupation, net worth and/or annual income in order

16        to justify larger face value policies and thus larger commission payments.

17      (c) Steinberg submitted applications for IUL policies with falsified or forged

18        signatures on various required policy documents. Among other things, by

19        forging the applicants' signatures on required policy documentation, Steinberg

20        would have been able to keep IUL policy applicants who were not complicit in

21        her scheme unaware of the nature and extent of their IUL policy coverage, the

22        required annual policy premium, and the application misrepresentations

23        concerning the applicants' occupations, annual income and net worth.

24       25.    Transamerica is further informed and believes, and on that basis alleges, that in

25  furtherance of her scheme, Steinberg solicited and sold IUL policies in conjunction with other

26  individuals and entities, including but not limited to other independent producers, MS Wealth Inc., a

27  credit repair company named Axsys Group, Inc., the owner/operator of Axsys Group, Inc., Manuela

28

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

-9-

ALLEGATIONS IN SUPPORT OF DEMAND FOR COMMERCIAL ARBITRATION

40

1   "Ela" Kitchen, and others affiliated with or employed by Axsys Group, Inc. Among other things,

2   Steinberg utilized Axsys Group, Inc. (and its owners and employees) to solicit and "sign up" its

3   credit repair customers for Transamerica IUL policies, which they represented, in most

4   circumstances, as "free" insurance for which the applicant would have no financial obligation.

5   Axsys Group, Inc. was also used as an instrumentality to obtain the private financial information of

6   applicants, including bank account information, that could be utilized in carrying out the above-

7   described insurance scheme.

8        26.    Transamerica is further informed and believes, and on that basis alleges, that certain

9   applicant-insureds were complicit in the insurance scheme perpetrated by Steinberg and, as a result,

10  likely reaped some financial benefit beyond receiving free insurance coverage under IUL policies.

11  For example, Manuela Kitchen (the owner of Axsys Group, Inc.) and her husband, Lewis Kitchen,

12  applied for and received IUL policies which were purportedly "sold" by Steinberg. Premium

13  checks for the Kitchens' policies were from Axsys Group, Inc. Axsys Group, Inc. also funded the

14  premium for at least two other IUL policies for which Steinberg was the producer, with the

15  representation made during underwriting that the applicants were the owners of Axsys Group, Inc.

16  when, in fact, that representation was false.

17       27.    Based on its investigation, on April 24, 2013 and May 17, 2013, respectively,

18  Transamerica terminated Steinberg's and MS Wealth Inc.'s appointments on the grounds that,

19  among other things, it determined that Steinberg committed fraudulent, negligent and/or dishonest

20  practices while engaging in the business of insurance, injured Transamerica's standing or good

21  name in the community, and violated the rules and regulations of Transamerica as well as the laws

22  of California, all in direct violation of the Producer Agreement.

23       28.    At all relevant times, Transamerica's rules and regulations prohibited distributors,

24  like Steinberg, from providing up-front cash or inducements to enter into the purchase of IUL

25  policies or insurance transactions in which the applicant-insured assumes little or no financial risk

26  for repayment of any type of loan for borrowed premium. Transamerica's rules and regulations

27  further prohibited distributors, like Steinberg, from rebating their commissions to applicant-

28

BARGER & WOLEN LLP
650 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

-10-
ALLEGATIONS IN SUPPORT OF DEMAND FOR COMMERCIAL ARBITRATION

41

1    insureds.

2        29.    At all relevant times, Transamerica required and expected its distributors to act

3    ethically and in good faith with respect to the solicitation and sale of its life insurance products.

4    Transamerica further required and expected its distributors to sell life insurance policies for

5    legitimate purposes and only when suitable for, and desired by, the applicant.  Transamerica does

6    not allow its distributors to pay the premium for life insurance they sell to third parties and, to the

7    extent premium is financed or paid by a person or entity other than the applicant or policy holder,

8    that arrangement must be disclosed to and approved by Transamerica.

9        30.    Steinberg and MS Wealth Inc. breached their Producer Agreements with

10    Transamerica by participating in the wrongful scheme as alleged herein.  More specifically,

11    Steinberg and MS Wealth Inc. breached at least the following provisions of their Producer

12    Agreements:  (1) Section 3.1 by failing to conform to the rules and regulations of Transamerica;

13    (2) Section 3.12 by selling IUL policies that were not suitable for the applicant-insureds; (3) Section

14    8.2(i) by violating Transamerica's rules/regulations; (4) Section 8.2(ii) by violating the

15    terms/conditions of Producer Agreement; (5) Section 8.3, by engaging in illegal, dishonest or

16    fraudulent acts in selling the IUL policies at issue; and (6) Section 8.2(viii) by conduct injuring

17    Transamerica's reputation in the marketplace.

18        31.    Further, MS Wealth Inc. further breached Section 2.2 of its Producer Agreement

19    with Transamerica by failing to supervise Steinberg and assure Steinberg (and any other

20    producers/solicitors involved in the scheme) complied with Transamerica's rules and regulations

21    and other applicable laws and regulations.

22        32.    If Steinberg and MS Wealth Inc. had complied with their Producer Agreements,

23    Transamerica would not have issued the IUL policies in question and would not have paid

24    commissions or incurred the significant costs associated with the underwriting, issuance and

25    administration of the IUL policies.

26        33.    Transamerica has performed all conditions, covenants, and promises required on its

27    part to be performed in accordance with the terms and conditions of the Producer Agreements.

28

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

-11-

ALLEGATIONS IN SUPPORT OF DEMAND FOR COMMERCIAL ARBITRATION

34.    As a direct and proximate result of the breaches of the Producer Agreements by Steinberg and MS Wealth Inc., Transamerica has incurred substantial financial harm, including the payment of unearned and ill-gotten commissions and bonuses and significant costs, its damages in a total amount to be proven at the arbitration, but believed to be in excess of $630,000.

## SECOND CLAIM FOR RELIEF

**(Breach of the Implied Covenant of Good Faith and Fair Dealing Against All Respondents)**

35.    Transamerica realleges and incorporates herein, each and every allegation contained in Paragraphs 1 through 34 above.

36.    Implied in the Producer Agreements was a covenant that Steinberg and MS Wealth Inc. would each act in good faith and deal fairly with Transamerica in connection with the solicitation and sale of life insurance, act for benefit of Transamerica in insurance matters covered by the Producer Agreements, and advise Transamerica on all matters which may come to its attention pertaining to the subject matter of the Producer Agreements.

37.    Steinberg and MS Wealth Inc. breached that covenant by failing to deal in good faith and honestly with Transamerica through Steinberg initiating, participating in and perpetuating the wrongful insurance scheme described herein.

38.    If Steinberg and MS Wealth Inc. had adhered to their duty of good faith and fair dealing by not participating in the wrongful scheme alleged herein and by complying with their obligations under the Producer Agreements, Transamerica would not have issued the IUL policies in question, would not have paid hundreds of thousands of dollars in commissions and bonuses in connection with the sale of these IUL policies and would not have incurred significant costs associated with the underwriting and issuance of these IUL policies.

39.    As a direct result of the breach of the implied covenant of good faith and fair dealing by Steinberg and MS Wealth Inc., Transamerica has suffered over $630,000 in damage, with the specific amount to be proven at the time of arbitration.

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

-12-

ALLEGATIONS IN SUPPORT OF DEMAND FOR COMMERCIAL ARBITRATION

43

### THIRD CLAIM FOR RELIEF

### (Violations of Bus. & Prof Code §§ 17200, *et seq*. Against All Respondents)

40.   Transamerica realleges and incorporates herein, each and every allegation contained in Paragraphs 1 through 39 above.

41.   California Business and Professions Code Section 17200 prohibits unfair competition in the form of any unlawful, unfair or fraudulent business act or practice.  Business and Professions Code section 17203 allows for awards or judgments "as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition."

42.   Business and Professions Code section 17204 allows "any person who has suffered injury in fact and has lost money or property as a result of such unfair competition" to bring suit for unfair competition.

43.   Transamerica is informed and believes and on these bases alleges, that Steinberg and MS Wealth Inc. perpetrated the wrongful scheme described herein, which involved the provision of secret premium payments, unearned discounts, and/or the advancement of premium payments and/or other financial incentives to applicants in exchange for their life insurance applications to be submitted to Transamerica, for the sole purpose of wrongfully obtaining commissions and/or bonuses from Transamerica.

44.   In furtherance of the scheme, Steinberg submitted applications that misrepresented material information and/or included forged signatures, the practice of which constitutes unlawful, unfair and/or fraudulent business acts and practices in violation of Business and Professions Code section 17200.

45.   Steinberg and MS Wealth Inc. profited substantially from Steinberg's undisclosed wrongful scheme alleged herein, and received ill-gotten commissions paid by Transamerica in connection with the sale of the IUL policies submitted pursuant to the wrongful scheme, in addition to other financial benefits.

-13-

ALLEGATIONS IN SUPPORT OF DEMAND FOR COMMERCIAL ARBITRATION

46.    To date, as a direct and proximate result of this wrongful scheme, Steinberg has collected (at a minimum) hundreds of thousands of dollars in ill-gotten commissions from Transamerica on the IUL policies at issue.  As a further result of the wrongful scheme, Transamerica incurred significant underwriting and administrative costs related to the IUL policies at issue.

47.    Transamerica is entitled to recover all amounts by which Steinberg and MS Wealth Inc. have been unjustly enriched from Steinberg's unlawful, unfair, and fraudulent business acts and practices of unfair competition at Transamerica's expense in the form of restitution, in an amount to be proven at the arbitration.

48.    An order requiring Steinberg and MS Wealth Inc. to disgorge all of their ill-gotten commissions, and all of the profits and gains they reaped and restore such amounts to Transamerica which were unlawfully taken by Steinberg and MS Wealth Inc. though the wrongful scheme, should be granted.

## FOURTH CLAIM FOR RELIEF

### (Breach of Fiduciary Duty Against All Respondents)

49.    Transamerica realleges and incorporates herein, each and every allegation contained in Paragraphs 1 through 48 above.

50.    The manner in which Transamerica sells its insurance products to the consumer is through a network of distributors. Transamerica is dependent on, and places its trust and confidence in, these distributors as the primary means by which it sells its products.

51.    Steinberg and MS Wealth Inc. were trusted independent producers for Transamerica, pursuant to the Producer Agreements between them and Transamerica.  As a result of the Producer Agreements, and their appointment to solicit and sell life insurance on behalf of Transamerica, they were placed in fiduciary position of trust and confidence with respect to the solicitation and sale of Transamerica insurance policies.  As Transamerica's fiduciary, they owed Transamerica the highest duties of care in carrying out the tasks they were authorized to perform under the Producer

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 660-2800

-14-

ALLEGATIONS IN SUPPORT OF DEMAND FOR COMMERCIAL ARBITRATION

45

1    Agreements and by virtue of their appointment.

2        52.    As Transamerica's fiduciary, Steinberg and MS Wealth Inc. were duty-bound,

3    among other things, to act in good faith and in the best interest of Transamerica with respect to the

4    sale of life insurance, and to refrain from acting in a manner designed to enrich themselves at the

5    expense of, and to the detriment of, Transamerica.

6        53.    Steinberg and MS Wealth Inc. acted knowingly and with the specific intent to

7    financially harm Transamerica as alleged herein.  By placing their own financial interests above

8    their fiduciary duties owed to Transamerica, they failed to act in good faith and in the best interests

9    of Transamerica.  They thus breached their fiduciary duties owed to Transamerica.

10       54.    As a direct and proximate result of the breach of fiduciary duties owed to

11   Transamerica, it has suffered injury, harm, damages and losses of over $630,000.

12

13                        **FIFTH CLAIM FOR RELIEF**

14                   **(Negligence Against All Respondents)**

15       55.    Transamerica realleges and incorporates herein, each and every allegation contained

16   in Paragraphs 1 through 54 above.

17       56.    Steinberg and MS Wealth Inc. owed a duty of care to Transamerica to act as

18   reasonable producers in the life insurance industry and to not act in a manner contrary to

19   Transamerica's business interests.

20       57.    Steinberg and MS Wealth Inc. negligently breached this duty of care by participating

21   in the wrongful scheme alleged herein, so as to directly and legally cause the damages described

22   below.

23       58.    MS Wealth Inc. further negligently breached its duty of care owed to Transamerica

24   by failing to properly supervise Steinberg.

25       59.    Steinberg and MS Wealth Inc. engaged in negligent or wrongful conduct and

26   encouraged others to participate, despite the harm or risk of harm for Transamerica thereby created

27   by the wrongful scheme.

28

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

-15-

ALLEGATIONS IN SUPPORT OF DEMAND FOR COMMERCIAL ARBITRATION

60.    As a direct, proximate and legal result of the negligence of Steinberg and MS Wealth Inc., Transamerica has been damaged in the amount of $630,000, which includes the commissions wrongfully obtained by Steinberg and MS Wealth Inc. as well as significant underwriting and other costs related to the issuance of the IUL policies in question.   Transamerica is entitled to recover these losses from Steinberg and MS Wealth Inc.

## SIXTH CLAIM FOR RELIEF

### (Fraud-Deceit Against All Respondents)

61.    Transamerica realleges and incorporates herein, each and every allegation contained in Paragraphs 1 through 60 above.

62.    At the time that Steinberg sold the seventeen (17) Transamerica IUL policies currently known to be at issue, Steinberg and MS Wealth Inc. knew and failed to reveal and, in fact, concealed and suppressed the material facts of the wrongful scheme as alleged herein.   Steinberg specifically signed and submitted, otherwise delivered, supervised the delivery and/or facilitated the delivery of all of the IUL policy applications presented to Transamerica in connection with the wrongful schemes and the issuance of the IUL policies in question.   Transamerica is informed and believes and upon that basis alleges that Steinberg submitted fraudulent applications to Transamerica, knowing that such applications contained fraudulent information as more specifically set forth above.

63.    By signing and submitting or otherwise delivering the fraudulent applications to Transamerica, Steinberg certified to Transamerica, the completeness of the applications, including all of the material circumstances surrounding the submission of such applications.   Accordingly, Steinberg had a duty to disclose and was otherwise bound to not suppress or conceal facts within her knowledge, which materially qualify this certification and other facts she had represented to Transamerica.

64.    Transamerica is further informed and believes and on that basis alleges that the commissions Steinberg earned on the IUL policies issued were used to fund the first year premiums

-16-

ALLEGATIONS IN SUPPORT OF DEMAND FOR COMMERCIAL ARBITRATION

due by applicants-insureds and/or to repay loans or financing obtained to pay the initial premium, which was expressly prohibited by her Producer Agreement with Transamerica. Steinberg concealed this wrongful scheme from Transamerica to induce it to issue IUL policies.

65.    Transamerica is further informed and believes, and on that basis alleges, that Steinberg concealed from Transamerica that applicants for the IUL policies she sold were not paying premium out of their own funds but, rather, she had paid or arranged for the payment of premium on behalf of the applicants.

66.    Transamerica is further informed and believes, and on that basis alleges, that Steinberg concealed from Transamerica that the IUL polices she sold were not sold for a legitimate purpose, but were sold solely so she could benefit financially at the expense of Transamerica.

67.    Transamerica is further informed and believes, and on that basis alleges, that Steinberg concealed from Transamerica that the IUL policies she sold were, in all likelihood, going to lapse for the non-payment of premium after one year because the policies had not been sold for a legitimate purpose, the policy owner had not paid the premium from his or her own funds, and the policy owner either did not intend to or did not have the ability to make future premium payments.

68.    Transamerica is further informed and believes, and on that basis alleges, that MS Wealth Inc. was at all relevant times the alter ego of Steinberg and was a mere instrumentality, agent, or conduit for Steinberg, who controls and dominates the actions of MS Wealth Inc. Transamerica is informed and believes, and on that basis alleges, that Steinberg engaged in the conduct herein through and with the assistance of and/or as an agent, employee, representative, or co-conspirator of MS Wealth Inc.

69.    Steinberg's and MS Wealth Inc.'s fraudulent conduct, their failure to disclose and their suppression of the wrongful scheme was likely to mislead Transamerica and did in fact mislead Transamerica, with the sole purpose being to wrongfully induce Transamerica into issuing the IUL policies in question, to pay the undeserved, ill-gotten commissions and to cause Transamerica to incur underwriting and other costs in reliance thereon.

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

-17-
ALLEGATIONS IN SUPPORT OF DEMAND FOR COMMERCIAL ARBITRATION

48

70.    If Transamerica had been aware of the existence of the wrongful scheme, it would not have issued the IUL policies in question, paid commissions on such policies and incurred significant underwriting and other costs associated with the issuance of such policies.

71.    As a proximate result of the fraudulent conduct of Steinberg and MS Wealth Inc. as alleged herein, Transamerica was fraudulently induced into issuing the IUL policies in question, paying the commissions, and incurring significant underwriting and other costs.  The damage to Transamerica will be proven at the arbitration, but it presently is anticipated to exceed $630,000.

## SEVENTH CLAIM FOR RELIEF

### (Unjust Enrichment Against All Respondents)

72.    Transamerica realleges and incorporates herein, each and every allegation contained in Paragraphs 1 through 71 above.

73.    Steinberg was paid commissions by Transamerica for the IUL policies at issue as a result of the wrongful scheme she perpetrated.

74.    The payment of such commissions by Transamerica as a result of the wrongful conduct of Steinberg led to her and MS Wealth Inc.'s unjust enrichment. Transamerica is informed, believes and on that basis alleges that Steinberg and MS Wealth Inc. may have profited in other yet to be fully discovered manners as a result of Steinberg's wrongful conduct in connection with the sale of Transamerica IUL policies.

75.    Transamerica is informed, believes and on that basis alleges that as a result of Steinberg's and MS Wealth Inc.'s wrongful and unlawful conduct and their unjust enrichment thereby at Transamerica's expense, Steinberg and MS Wealth Inc. owes restitution and the disgorgement of her ill-gotten gains, in a total amount to be proven at arbitration.

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

-18-

ALLEGATIONS IN SUPPORT OF DEMAND FOR COMMERCIAL ARBITRATION

49

WHEREFORE, Transamerica prays as follows:

As to the First Claim for Relief

1. For contract damages according to proof, including general, special, and/or consequential damages according to proof.

2. For interest on all damages at the legal rate.

As to the Second Claim for Relief

1. For contract damages according to proof, including general, special, and/or consequential damages according to proof.

2. For interest on all damages at the legal rate.

As to the Third Claim for Relief

1. For an award against Steinberg and MS Wealth, Inc. directing each to disgorge any and all of the ill-gotten commissions, profits and gains they reaped by way of their unlawful, unfair, and fraudulent business acts as described herein and restore such amounts to Transamerica.

As to the Fourth Claim for Relief

1. For general, special, and/or consequential damages according to proof.

2. For interest on all damages at the legal rate.

As to the Fifth Claim for Relief

1. For general, special, and/or consequential damages according to proof.

2. For interest on all damages at the legal rate.

ALLEGATIONS IN SUPPORT OF DEMAND FOR COMMERCIAL ARBITRATION

As to the Sixth Claim for Relief

    1.    For general, special, and/or consequential damages according to proof.

    2.    For interest on all damages at the legal rate.

As to the Seventh Claim for Relief

    1.    For general, special, and/or consequential damages according to proof.

    2.    For interest on all damages at the legal rate.

As to All Claims for Relief

    1.    For costs according to proof.

    2.    For attorneys' fees as permitted by law or contract.

    3.    For such other relief as the Arbitrator deems just and proper.

Dated:  September 19, 2013

                          BARGER & WOLEN LLP

                          By:

                          ANDREW S. WILLIAMS
                          SANDRA I. WEISHART
                          VIVIAN I. ORLANDO
                          Attorneys for Claimant
                          Transamerica Life Insurance Company

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

-20-

ALLEGATIONS IN SUPPORT OF DEMAND FOR COMMERCIAL ARBITRATION

51

# EXHIBIT B


TRANSAMERICA
INSURANCE & INVESTMENT GROUP

Transamerica Life Insurance Company
Home Office:
Cedar Rapids IA 52499

Administrative Office:
4333 Edgewood Rd NE
Cedar Rapids, IA 52499

February 29, 2012

MS WEALTH MANAGEMENT AND INS SERVICES INC
27702 CROWN VALLEY PKWY
BUILDING D 136
LADERA RANCH CA 92694

I am taking this opportunity to thank you for your recent application to represent the Transamerica Life Insurance Company.  I am pleased to inform you that your application has been approved.

We have enclosed the following:

| CONTRACT TYPE | COMPANY NAME | CONTRACT FORM NUMBER |
|---|---|---|
| INDEPENDENT PRODUCER | TLIC | CNT 550 ED 2-10 |

As noted in the contract appointment application form, detailed information concerning commissions is set forth in the Company's General Commissions, Modifications and Provisions which are on file with your supervising agency office.  The enclosed contract indicates its' effective date. Please make sure your state licenses and appointments are in good order before you begin soliciting business for the Company.  Should you require additional information, please contact the agency manager of your supervising office.

We appreciate this opportunity to earn your business.

Sincerely,

James M. Flewellen
Senior Vice President

| Supervising Office Code | 13134 |
|---|---|
| Supervising Office Name | NIB INSURANCE BROKERAGE LLC |
| Producer ID | 1179063 |
| Profile ID | 001 |

TOLWELTR

53

### INDEPENDENT PRODUCER CONTRACT

This is an agreement, effective on the Date of Contract set forth below, between Transamerica Life Insurance Company (referred to as "we", "us" or "the Company") and the Independent Producer named below (referred to as "you"). This agreement pertains to those appointed as Independent Producer through the Company's distribution unit currently known as Transamerica Insurance and Investment Group, sometimes referred to as "TIIG". The terms of this agreement are as follows:

**1.    APPOINTMENT**

You are appointed for the purpose of soliciting applications for insurance and otherwise transacting the business of this agreement.

Your activities under this agreement will be subject to the supervision of the office or agency through which you represent us from time to time. This office or agency will be referred to in this agreement as your Supervising Office.

You agree to comply with all applicable laws and regulations, and to diligently devote yourself to the business of this appointment.

**1.1    TERRITORY; NON-EXCLUSIVITY**

Subject to the approval of your Supervising Office, unless otherwise specified by us, you are authorized to solicit applications in any jurisdiction in which we are licensed to transact insurance and in which you are licensed and authorized to represent us. We reserve the right to limit your territory at any time.

You are not obligated to represent us exclusively, and you do not have an exclusive right to solicit or negotiate policies for us in any area.

We are not licensed to transact insurance in the State of New York. You agree that you will not solicit or accept applications within the State of New York. In states other than New York, you agree that you will not solicit or accept any application for a policy to insure the life of a person who is a resident of the State of New York or which is to be owned by a resident of the State of New York or an entity located in the State of New York unless all solicitation and sales activities take place outside of the State of New York and comply with our rules and procedures regarding New York residents.

**1.2    INDEPENDENT CONTRACTOR**

You are an independent contractor. Nothing contained in this agreement is to be construed to create the relation of employer and employee between the Company and you. You may exercise your own judgment as to the time and manner in which you may perform the services required to be performed by you under this agreement. We may, from time to time, prescribe rules and regulations concerning the conduct of the business covered by this agreement which do not interfere with such freedom of action.

**2.    SOLICITATION OF APPLICATIONS**

We will inform you, from time to time, of the products for which you are authorized to solicit applications. Solicitation of applications for insurance authorized under this agreement will be performed by you or by your solicitors in accordance with the terms set forth below.

A solicitor is a properly licensed individual or firm authorized by us to solicit applications for insurance in your name.

CNT 550 ED 2-10
TOLCONTI

-1-

You agree not to allow any solicitor to engage in the services authorized under this agreement, except in accordance with this Section.

At our option, we may refuse to authorize any proposed solicitor and may terminate any authorization of a solicitor. You will be solely responsible for the payment of any compensation to solicitors, and you agree to hold us harmless from all claims for commissions or other compensation by any solicitor.

## 2.1 LICENSING

Neither you nor any solicitor may engage in any activities under this agreement unless and until you or they are properly licensed to perform such services in the particular State or jurisdiction involved in accordance with all applicable laws and regulations, including, but not limited to, any certification or continuing education requirements.

You agree to undertake and pay for all actions necessary to acquire and maintain any necessary licenses for yourself and/or the solicitors. We will take the necessary actions, including the payment of applicable fees, to appoint you and the solicitors to represent us in the states in which you and they reside. We will appoint you and the solicitors to represent us in additional states at your expense.

## 2.2 SUPERVISION

In connection with this agreement, you are responsible for the performance of your employees and solicitors as they relate to their contracts with the Company or their appointments by the Company. You agree to take all necessary steps to communicate the Company's rules and regulations to such persons, and to assure that they comply with such rules and regulations, as well as all other applicable laws and regulations.

## 3. RESPONSIBILITIES OF THE INDEPENDENT PRODUCER

You agree to abide by the following in the conduct of your activities under this agreement:

## 3.1 COMPANY REGULATIONS

To the extent they do not conflict with the terms of this agreement, you will conform to the rules and regulations of the Company now or hereafter in force. Such rules and regulations will constitute a part of this agreement. This provision shall not be construed to alter the relationship of the parties as provided in Section 1.2 above.

## 3.2 LIMITATION OF AUTHORITY

You have no authority to alter, modify, waive or change any of the terms, rates or conditions of our contracts or policies whether or not covered by this agreement. You have no authority to obligate us in any manner whatsoever nor to receive monies due to us, except as otherwise provided in this agreement or as may be authorized in writing by us.

## 3.3 COMPANY RECORDS

All documents, records, software and other data and information, in whatever form they may be, which pertain to the Company's policyholders or any other business of the Company, are and will remain the property of the Company. Any such property in your possession shall be at any time and all times open to audit and inspection by the Company or its authorized representative, and upon termination of this agreement you will promptly turn all such property over to the Company or its authorized representatives.

CNT 550 ED 2-10
TOLCONTI

-2-

You acknowledge that all documents, records, software and other data, information and supplies referred to in this Section 3.3 are confidential and proprietary to the Company, and you agree to preserve the confidentiality and privacy of the Company in all of the same; and you further agree that you will not, without the Company's prior written consent, release or disclose any of the same or their contents to any person, or otherwise use any of the same or their contents in any manner, except in furtherance of the business of this agreement or as required by legal process.

Nothing contained in this Section 3.3 is intended to restrict your right to retain possession of your records and other materials relating solely to your solicitors.

## 3.4  ACCOUNTS AND RECORDS

You agree that you will keep customary and accurate accounts of receipts and disbursements and will, at our request and in accordance with our instructions, account for all policies, receipts, premiums and other monies or securities received and all property and supplies received from the Company. We may, at any time, audit and make copies of the records of such accounts, records and documents, and all such records, documents, supplies and other property relating to the business transacted under this agreement will be the property of the Company, open to inspection at all times by our authorized representatives, and at the termination of this agreement will be delivered to us upon demand. We will furnish you a current statement of your commission account within a reasonable time after receipt of a written request from you.

## 3.5  COLLECTION AND REMITTANCE OF COMPANY MONEY

Where authorized by us, you may accept premiums in accordance with our rules and regulations in force at the time of payment. We have the right at any time to revoke such authority in whole or in part and to limit it in any way.

ALL MONIES OR SECURITIES RECEIVED BY YOU AS FULL OR PARTIAL PAYMENT OF PREMIUMS OR FOR ANY OTHER ITEM, WITHOUT EXCEPTION, SHALL BE HELD BY YOU IN TRUST SEPARATE FROM YOUR OWN OR OTHER FUNDS AND WILL BE IMMEDIATELY DELIVERED AND PAID TO THE COMPANY. Such remittances must be applied to the relevant item. You are not authorized to deposit any such monies or checks in your own account or any trust account, nor to accept any check made payable to you for any premium or other item.

## 3.6  ADVERTISING

You agree that you will not place into use, or distribute to any person, any advertising, sales material or other document (including, without limitation, illustrations, telephone scripts and training materials) referring directly or indirectly to the Company or to any Company policy, or cause, authorize or permit other person to do so, without our prior written consent. You agree that you will not use the name of the Company on any business card, letterhead or marquee or in any directory listing, or in any other manner, or cause, authorize or permit any other person to do so, without our prior written consent.

## 3.7  INDEMNIFICATION

You agree to indemnify us and hold us harmless from any liability, loss, cost, claim or damage, including legal and other expenses and attorneys' fees reasonably incurred, caused by your breach of any provision of this agreement or by your negligence or misconduct or the negligence or misconduct of your employees, officers, or other persons who act on your behalf.

## 3.8  ERRORS AND OMISSIONS

You are encouraged to maintain errors and omissions insurance covering your activities under this agreement. If we should require you to carry such insurance at any time, the following will apply:

CNT 550 ED 2-10
TOLCONTI

-3-

(i)   You agree to maintain in force, at your own expense, while this agreement is in effect, errors and omissions insurance covering your business in an amount specified by us from time to time, and on which the Company shall be named as an additional insured.

(ii)  You agree to provide us with copies of the current binders evidencing the issuance of the errors and omissions insurance required under Section (i) at the time of execution of this agreement, and within ten business days of each date such insurance is discontinued, suspended, reduced or terminated for any reason.

## 3.9   PRIVACY

You agree to comply with all applicable laws and governmental regulations requiring that you protect the privacy of nonpublic information (including, but not limited to "nonpublic personal information" as defined in the Gramm-Leach-Bliley Act, 15 USC Sections 6801-6909) that you have about an applicant, owner, insured, annuitant, beneficiary or other person who seeks to obtain, obtains or has obtained a product or service from the Company.   If you receive any such nonpublic information from the Company, you shall maintain the confidentiality of such information and you are prohibited from using such information other than to carry out the purpose for which such information was disclosed to you.   You agree to take reasonable measures to secure and safeguard such nonpublic information in your possession (including appropriate destruction and disposal methods).

## 3.10  ANTI-MONEY LAUNDERING

The Company has implemented an anti-money laundering program which includes providing anti-money laundering training to the Company's employees, insurance agents, and insurance brokers.   You agree to observe and comply with the Company's requirements regarding the anti-money laundering training of you and your solicitors including training regarding requirements for reporting suspicious activities that may involve money-laundering.   Failure to comply with the Company's AML training and suspicious activity reporting requirements may result in termination of your appointment.

## 3.11  ELECTRONIC IMAGING AND TRANSMISSION OF DOCUMENTS AND INFORMATION

The Company will inform you of its rules for imaging and transmission of documents and you agree to comply with such rules.   The Company shall have the right to modify such rules from time to time by informing you of such modified rules.

## 3.12  SUITABILITY

You agree to comply with all applicable laws, governmental regulations, and Company policies pertaining to requirements that products be suitable for the purchaser.

## 3.13  DISCLOSURE OF COMPENSATION

You agree to comply with laws and governmental regulations pertaining to requirements that persons soliciting applications for the sale of life insurance policies or annuity contracts disclose compensation arrangements if applicable to your activities under this agreement.

You agree to provide to customers any disclosures regarding compensation arrangements that you may be required to provide under state or federal law or any applicable governmental regulation.   To the extent required by law or governmental regulation, you agree to provide such disclosures in writing to each potential policyholder or contract holder, employer, union, or professional association and their employees and/or members in advance of the purchase of a policy or contract.   The disclosure of compensation arrangements shall include such details regarding the nature and amount of compensation and regarding your relationship

CNT 550 ED 2-10
TOLCONTI

-4-

with us as may be required by law or governmental regulations.  You agree to maintain copies of all disclosures for the duration of this agreement and to produce such records upon the request of any regulator.

4.    **COMPANY RIGHT OF ACTION**

We are not obligated to accept any business produced by you or by a solicitor. We may reject applications for insurance without specifying the reason therefore, as well as settlements tendered or made thereunder, or take up and cancel any policy for any reason and return the premium thereon or any part thereof.

We in our sole discretion may at any time and from time to time do the following:

(i)     modify or amend any policy form;

(ii)    fix or change maximum and minimum limits on the amount for which any policy form may be issued;

(iii)   modify or alter the conditions or terms under which any policy form may be sold or regulate its sale in any way;

(iv)    discontinue or withdraw any policy form from any geographic area or market segment, without prejudice to continuation of such form in any other area or market segment;

(v)     cease doing business in any area.

5.    **COMPENSATION**

For each policy sold under this agreement, we will pay you commissions as set forth in the applicable Commission Rate Schedule.  You may also be eligible for compensation under other programs established by us from time to time.  Payment of commissions and any other compensation will be subject to the terms and conditions of this agreement and to our rules and regulations in effect from time to time.  Such rules and regulations may be changed by us at any time without notice.

The commissions and any other compensation payable by us to you will be payment in full for all services performed by you.  Except as we may otherwise agree, you are not entitled to reimbursement for any expenses incurred by you.

5.1  **COMMISSIONS**

General - The "applicable Commission Rate Schedule" means the Commission Rate Schedule in effect from time to time for business produced by you. Commission rates are established by your Supervising Office. Commission rates and Commission Rate Schedules are subject to change without notice.  Information regarding commission rates in effect may be obtained from your Supervising Office.  We may provide you with a new Commission Rate Schedule from time to time, but your failure to receive a new Commission Rate Schedule will not prevent new commission rates from becoming effective.

Repayment of Commissions - If any commission or other compensation to which you are not entitled under the terms of this agreement is paid to or retained by you, you will pay the same to the Company upon demand. You will pay to us upon demand all commissions received by or credited to you, or premiums collected, or evidence of indebtedness representing the same, taken on applications on which policies are not issued by us, or on policies declined by the applicant, or on policies canceled by us, and all commissions received or credited on premiums or any part thereof which for any reason we may return. In case of any provision requiring a refund of commissions or other compensation, we may, at our election, debit your

CNT 550 ED 2-10
TOLCONTI

-5-

account for the amount of the refund without demand or notice, or may demand the refund, or both, but debiting your account in such manner will not relieve you of your obligation to make the refund.

**Changes in Compensation** - We reserve the right to change the rate of commissions and/or any other compensation payable under this agreement. Any such change will apply only to policies issued or other triggering events occurring after the effective date of the change.

**When Due** - Commissions will be paid in accordance with our normal commission processing schedule. Commissions will be payable only on premiums paid in cash to and accepted by us on policies which were produced hereunder by you or by solicitors. No premium will be considered paid in cash to the Company until it has been actually collected and transmitted to us and recorded on our records. Commissions and other compensation will accrue only as such premiums otherwise would become due.

**Commissions Paid in Advance** - If we pay you a commission or other compensation on a premium which is or becomes due but which has not yet actually been paid to the Company, and if such premium is not paid in cash to the Company, you will refund any commission or other compensation which you have received on such premium.

**Conditions** - Commissions and any other compensation under this agreement will be payable to you only if and so long as you are continuously and properly licensed to transact insurance business for us and we may legally pay such commissions and other compensation.

**Accounting Year** - We reserve the right at any time and from time to time, without notice to you, to change the period comprising our accounting year or subdivisions thereof.

## 5.2   COMMISSIONS AFTER TERMINATION

Unless this agreement is terminated under Section 8.2, commissions will continue to be payable for the vesting period applicable to this agreement at the time the policy was written.

Any commissions payable after your death or dissolution will be paid to your executors, administrators, successors or assigns.

## 6.   LIEN AND OFFSETS

You grant us a first lien on all commissions and any other compensation payable by us to you under this agreement or under any other existing or future agreement with us, as security for the payment of any existing or future debit balance or other indebtedness of yours to us. We may at any time and from time to time, with or without notice or judicial action, exercise our lien by offsetting such indebtedness against any commissions and other compensation otherwise due to you. These liens shall not be extinguished by the termination of this agreement or any other agreement.

All debit balances and other indebtedness of yours to us will be debited to your account, but debiting your account will not relieve you of your obligation to repay the indebtedness. You may not offset against any such indebtedness any compensation accrued or to accrue under this agreement or under any other agreement with us.

We will be under no obligation to pay any commissions or other compensation to you, your executors, administrators or assigns, under this agreement or under any other existing or future agreement with us now or hereafter existing as long as your account has a debit balance. Any debit balance of your account shall be payable to us upon demand and shall bear interest, payable monthly, at the rate declared by us from time to time. Any future change in interest rate may, at our option, be applied to the then remaining balance of any debit balance theretofore created as well as to debit balances thereafter created.

CNT 550 ED 2-10
TOLCONTI

**7.**    **DISPUTES AND LITIGATION**

Both parties agree to cooperate fully with each other in the resolution of all matters arising out of the business of this agreement. We also agree that any disputes between you and us will be settled through binding arbitration.

**7.1    COMPLAINTS AND CLAIMS**

You agree to notify us promptly of any complaint, claim or dispute involving an applicant, policy, policyholder or producer.

You will not litigate any dispute with an applicant or policyholder, on any matter relating to the business of this agreement, without our prior written consent.

We may settle any claim against us or you arising out of the business of this agreement. If you disagree with our settlement, you may seek arbitration pursuant to Section 7.2.

**7.2    DISPUTE RESOLUTION**

The parties agree that this agreement involves "commerce" within the meaning of the Federal Arbitration Act, and that any dispute between the parties arising out of or related to this agreement will be resolved by binding arbitration in accordance with this Section and the rules for arbitration of commercial disputes of the American Arbitration Association. The arbitration will take place in Los Angeles, California, unless we mutually agree to another location. The arbitration will be determined by one neutral arbitrator as agreed upon by the Company and you. If the parties fail to appoint an arbitrator on a timely basis or are unable to agree on the choice of an arbitrator on a timely basis, the arbitrator will be appointed by the office of the American Arbitration Association in the city where the arbitration takes place, or by another mutually agreeable arbitration service. The arbitrator's decision will be binding on the parties and the decision will be final with no right of appeal. The award of the arbitrator may be entered as a final judgment in any court which has jurisdiction thereof. The cost of arbitration, including the fees of the arbitrator, will be borne by the party or parties as the arbitrator decides.

EACH PARTY HERETO HEREBY WAIVES THE RIGHT TO A TRIAL BY EITHER A JURY OR A COURT, INCLUDING BUT NOT LIMITED TO A TRIAL OF ANY ISSUE CONCERNING THE VALIDITY OF THIS SECTION 7.2 OR ANY PORTION THEREOF, AND THE RIGHT OF APPEAL FROM THE ARBITRATOR'S AWARD. EACH PARTY HERETO WAIVES ANY CLAIM TO RECOVER PUNITIVE DAMAGES AND NON-COMPENSATORY DAMAGES AGAINST THE OTHER PARTY.

**8.**    **TERMINATION AND SUSPENSION**

Either party may terminate this agreement on five days' written notice. In addition, we may terminate this agreement without prior notice for specified reasons.

**8.1    TERMINATION UPON NOTICE**

This agreement may be terminated with or without cause by either you or us upon five days' written notice to the other party. We may also terminate this agreement if you fail to meet production standards established by us from time to time. The day the notice is deposited in the mail addressed to our last known address or to your last known address according to our records, as the case may be, or, if the mail is not used, the day it is delivered to you or to an officer of the Company, as the case may be, will be the first day of the five day period.

CNT 550 ED 2-10
TOLCONTI

-7-

## 8.2  EARLY TERMINATION BY THE COMPANY

We may terminate this agreement immediately, or at any time thereafter, at our option, upon written notice to you if:

(i)  you fail to comply with our rules and regulations or the laws of any applicable state or jurisdiction or regulations of the Department of Insurance thereof; or

(ii)  you fail to conform to the terms and conditions of this agreement or any other existing or future agreement with us; or

(iii)  you at any time commit any illegal, dishonest or fraudulent acts in connection with any business of the Company; or

(iv)  your persuade or attempt to persuade any producer of ours to leave our service; or

(v)  you induce or attempt to induce any policyholder to discontinue the payment of premiums on or to release or surrender any policy of the Company whether or not covered by this agreement; or

(vi)  you violate the provisions of Section 3.5 hereof relating to immediate remittance of monies to us; or

(vii)  in our opinion, you become physically or mentally disqualified from performing the terms of this agreement; or

(viii)  in our opinion, you so conduct yourself as to injure the Company's standing or good name in the community or elsewhere.

If this agreement is terminated pursuant to the foregoing paragraph, except on account of mental or physical disability, we may, at our option and without further notice to you, declare all claims by you to commissions or other compensation to be forfeited and void.

Notice of immediate termination of this agreement will become effective upon delivery of the notice to you by whatever means of transmission may be used by us for the purpose. If the mail is used and delivery is not made to you prior to the close of the day after the notice was deposited in the mail addressed to your last known address according to our records, the notice will in any event become effective at the close of the day after it was deposited in the mail.

## 8.3  AUTOMATIC TERMINATION

Your death, dissolution or bankruptcy, or the revocation, suspension or non-renewal of your license, will automatically terminate this agreement.

## 8.4  SUSPENSION

Upon notice to you, we may suspend your authority to act under this agreement while we investigate any matter which may give rise to a right to terminate this agreement under Section 8.2.

## 9.  MISCELLANEOUS PROVISIONS

Certain provisions of this agreement are emphasized for the convenience of the reader. Nevertheless, all provisions apply equally.

CNT 550 ED 2-10
TOLCONTI

-8-

**9.1    PREVIOUS AGREEMENTS**

Any and all prior agreements between the parties hereto authorizing the solicitation of insurance under the Company's TIIG distribution unit are hereby terminated and are superseded by this agreement.

**9.2    AMENDMENTS**

We will not be bound by any promise, agreement, understanding or representation heretofore or hereafter made unless the same is made by an instrument in writing, signed by one of our officers, which expresses by its terms an intention to modify this agreement.

**9.3    FORBEARANCE**

Forbearance or neglect on the part of the Company to insist upon compliance with the terms of this agreement or the rules and regulations of the Company shall not be construed as or constitute a waiver thereof.

**9.4    AGREEMENT NON-ASSIGNABLE**

You may not assign this agreement or any of the rights, authorities and benefits provided hereunder without our prior written consent. We agree not to withhold our consent unreasonably. Any attempted assignment as collateral security or assignment for the benefit of creditors will be subject to our rules and policies then in effect.

**9.5    SEVERABILITY**

This is a severable agreement. If any provision of this agreement would require a party to take action prohibited by applicable federal or state law or prohibit a party from taking action required by applicable federal or state law, then it is the intention of the parties hereto that such provision shall be enforced to the extent permitted under the law, and, in any event, that all other provisions of this agreement shall remain valid and duly enforceable as if the provision at issue had never been a part of this agreement.

**9.6    INDEPENDENT AGREEMENT**

The compensation provided by this agreement is separate from any compensation or consideration provided under any other agreement you may have with us or with one of our affiliates. Except as set forth in our applicable rules and regulations, your activities under this agreement will not be taken into account for purposes of any compensation or benefits under any such agreement.

**9.7    APPLICABLE LAW**

This agreement shall be construed in accordance with the laws of the State of California, without giving effect to principles of conflict of laws.

**9.8    SURVIVAL**

The following sections (and all sub-sections under such sections) will survive the termination of this agreement: Sections 3, 5, 6, 7 and 9.

**10.    CORPORATIONS; PARTNERSHIPS; LIMITED LIABILITY COMPANIES**

The additional provisions set forth below will apply if you are a corporation, partnership, limited liability company or any entity other than an individual.

CNT 550 ED 2-10
TOLCONTI

-9-

**10.1 OFFICIAL ACTIONS**

You may designate one or more individuals to transact business with us on your behalf. Such designation must be made by your board of directors if you are a corporation or by any general partner if you are a partnership or by your board of managers or other governing body if you are a limited liability company. In the absence of a designation, we may (but are not obligated to) transact business with your president or any vice president (if you are a corporation) or any general partner (if you are a partnership) or, if you are a limited liability company, the person or persons with apparent authority to act on your behalf.

**10.2 CHANGES**

You agree to inform us of any changes in your legal structure, and of any changes in your officers or partners. You also agree to inform us of any transfer of your stock or partnership interests. Upon receipt of such information, we may elect to terminate this agreement upon five days' written notice to you.

**10.3 STATUS**

We may, from time to time, require you to provide us with evidence of your continued existence and good standing.

**10.4 SPECIAL PROVISIONS REGARDING TERMINATION**

We may terminate this agreement upon five days' written notice to you if any of your officers or partners, or anyone else deemed by us to be a key member of your organization: (i) dies; (ii) resigns; (iii) ceases, in our judgment, to be actively involved in your organization; or (iv) has a license suspended, revoked, cancelled or otherwise not renewed. The provision of Section 8.2 shall apply not only to your actions, but also to actions of any of your officers, partners, or anyone else deemed by us to be a key member of your organization.

CNT 550 ED 2-10
TOLCONTI

-10-

Executed at Los Angeles, California

February 29, 2012

Date of Contract

INDEPENDENT PRODUCER

TRANSAMERICA LIFE INSURANCE COMPANY
1150 South Olive
Los Angeles, California  90015-2211

MS WEALTH MANAGEMENT AND INS SERVICES INC

Printed Name

27702 CROWN VALLEY PKWY
BUILDING D 136
LADERA RANCH CA 92694

Address, Street, City, State, Zip

Signature is not required.  It is agreed that this
Contract will be binding with a signature on the
Application for Appointment or Notice of Contract
Replacement Acknowledgement Form.

James M. Flewellen
Senior Vice President

CNT 550 ED 2-10
TOLSGPGI

-11-



Transamerica Life Insurance Company
Home Office: 4333 Edgewood Road NE
Cedar Rapids, IA 52499

CONTRACT APPLICATION FOR:
Independent Producer Contract (Broker)
Sales Director (Application required for
individuals not currently contracted with
Transamerica)

Requesting GA Name: National Insurance Brokerage, LLC    Office ID: 13134    Date: 02/01/2012

| PART I | To be completed by applicant. Please read carefully and answer all questions |
| --- | --- |

Applicant is:  ☐ An Individual  ☑ A Corporation  ☐ A Partnership  ☐ Limited Liability Company

I am requesting an appointment and agreement with Transamerica Life Insurance Company (TLIC), hereinafter referred to by company name or as "The Company".

(Please see Part VI for additional provisions regarding applicant's agreement to be bound by the IPC contract or contracts).

| PART II | Applicant Name and Address Information |
| --- | --- |

Section A: (If applicant is an individual, complete section A only.)

Last Name: Steinberg    First Name: Monica    Middle Name:

Social Security Number REDACTED 1372 . Do you plan to market using a DBA? ☐ Yes ☑ No   If so, please provide the supporting documentation, i.e., approval of required jurisdiction(s), DBA Name:
(See page seven for general instructions concerning Taxpayer Identification Number (TIN) Information.)

Home Phone #: 9496309785    Cell Phone #:    Pager #:
Business Phone #: (949) 630-9785    Fax #: (949) 682-4863    Email Address: msteinberg@wealth-asset-management.com

☑ Mr. ☐ Mrs. ☐ Ms. D.O.B. REDACTED 949    Driver's License # REDACTED    State: CA

Business/Alternate Address:

| 27702 Crown Valley Pkwy D-$ #136 | Ladera Ranch | CA | 92694 |
| --- | --- | --- | --- |
| Mailing/Primary Address: Street | City | State | Zip Code |
| 27702 Crown Valley Pkwy D-$ #136 | Ladera Ranch | CA | |
| Residence Address: Street | City | State | Zip Code |
| 31302 Via Las Palmas | San Juan Capistrano | CA | 92692 |
| Street | City | State | Zip Code |

How long at this residence address? 13 Years 0 Months  If less than five years, please provide past five years below:

| Residence Address: Street | City | State | Zip Code |
| --- | --- | --- | --- |
| | | | |
| | | | |

Section B: (If applicant is a corporation, partnership, or LLC, please complete section B.) Please complete Part II, Sec. A for the signing officer, principal, partner, or member of the firm.

Firm Name: MS WEALTH MANAGEMENT & INSURANCE SERVICES    EIN: 27-1241245
(SEE PAGE 7 FOR INSTRUCTIONS)

Do you plan to do business as a DBA? ☐ Yes ☑ No    If so, please provide the supporting documentation, i.e., approval of required jurisdiction(s), DBA Name: _____ , and EIN for DBA if acquired _____
(See page seven for general instructions concerning Taxpayer Identification Number (TIN) Information)

TOA5560211T    Page 1 of 7

**65**

Business Phone #: 949-630-9785          Fax #: 949-682-4863          Email Address: _____

Business/Alternate Address: Street                    City                 State        Zip Code
27702 Crown Valley Pkwy D-$ #136 _____          Ladera Ranch _____      CA ____     92694 _____

Mailing/Primary Address: *(if different from Business Address)*

Name of person who will sign as principal, officer, partner, or member of this firm:

Monica Steinberg _____          Title Agent _____

(A Solicitor Application form TOA 560, must be completed for additional principals, officers, partners, or members of the firm.)
For firms, give names of all officers, principals, partners or members, and their titles. If necessary, please continue on a separate sheet of paper.
(Please complete a Solicitor Application form for each person who will solicit Transamerica business on behalf of the firm.)

| NAME | TITLE | NAME | TITLE |
|---|---|---|---|
| Monica Steinberg | Agent | | |
| | | | |
| | | | |
| | | | |

| PART II. | Employment/Appointment History |
|---|---|

1) How long have you been an insurance agent or broker? __20__
   Below, please list the companies that you currently represent:

   Company Name: _____          Effective Date: _____ / _____
   _____                                          _____ / _____
   _____                                          _____ / _____

2) If this information covers less than five years, please provide details of employment history to complete the five-year period in the following section.

| Employer | Address | Position | From | To |
|---|---|---|---|---|
| MS Wealth Asset Management and Insurance Services | 27702 Crown Valley Parkway D-4, Ladera Ranch, CA. 92694 | Pres | 02 / 2000 | / |
| | | | / | / |
| | | | / | / |

3) Are you now or have you ever been contracted with any Transamerica company?  ☐ Yes  ☑ No
   If yes, with which agency? _____

4) Please provide a copy of your individual and/or corporate resident license (and/or a copy of your Letter of Certification, if your resident state requires such).

5) Do you plan to solicit Transamerica business in other states?  ☐ Yes  ☑ No   If so, are you currently licensed in those states?  ☐ Yes  ☐ No   If yes, please provide details including copy(ies) of license(s) for those states.
   *(Please provide copy(ies) of non-resident license(s) and send non-resident fees.)* If not, please be aware that no solicitation of business may occur until you are properly licensed and appointed as required in those states.

6) Do you plan to have any of your employees solicit Transamerica business on your behalf?  ☐ Yes  ☑ No. If so, please have every employee soliciting Transamerica business complete a Solicitor Application form.

TOA5560211T                    Page 2 of 7

| PART IV | Background Information (Confidential Data) |
|---|---|

The following questions must be answered by the applicant. If the applicant is a Corporation, Partnership or LLC, the questions apply to the firm and to each of its principals, partners, officers, and members of the firm. If you answer "YES" to any questions, please provide complete details and explanations on a separate sheet of paper and provide supporting documentation (i.e. court documents).

1) Have you ever been arrested for or convicted of, pled guilty, or no contest, or received deferred adjudication for any felony or misdemeanor?  Note: You may omit misdemeanor convictions for possession of marijuana that occurred more than two years ago.  ☐ Yes  ☒ No

2) Is there any criminal indictment or criminal proceeding pending against you?  ☐ Yes  ☒ No

3) Have you ever been a plaintiff or defendant in any court proceeding within the last seven years? Note: You may omit actions involving matters of family law.  ☐ Yes  ☒ No

4) Have you, or any business of which you were or presently are a principal, been involved in a bankruptcy action within the last five years?  ☒ Yes  ☐ No

5) Have you ever been discharged or requested to resign from any employment, or have you ever been barred or suspended from any employment by any legal authority, insurance regulator, the NASD or SEC?  ☐ Yes  ☒ No

6) Have you had your appointment terminated by any insurance company for cause, wrongful act or any other reason?  ☐ Yes  ☒ No

7) Are there any outstanding judgments, collections, liens or garnishments against you?  ☐ Yes  ☒ No

8) Do you have any unresolved matters pending with the Internal Revenue Service or other taxing authority?  ☐ Yes  ☒ No

9) Does any insurer, general agent, broker dealer, agent, or broker claim you are indebted to it for unpaid premiums, mishandling collateral, losses sustained or any other reason?  ☐ Yes  ☒ No

**PART V.          Multi-Company Assignment of All Commissions as Collateral Security**

The Applicant, hereinafter called the Assignor, for value received, hereby assigns to Transamerica Financial Life Insurance Company, Transamerica Life Insurance Company and Transamerica Life (Bermuda) LTD., individually and collectively referred to herein as Assignee or Assignees, their successors and assigns, all of the Assignor's rights, title and interest in and to any and all commissions and other compensation of any nature whatsoever now due and payable or hereafter to become due and payable under the terms of any and all agency contracts and commission agreements, now or hereafter existing, between the Assignor and each Assignee.

This Assignment is given to secure the payment of any present or future debit balance in the Assignor's account with each Assignee and any other present or future indebtedness of the Assignor to each Assignee. Notwithstanding anything to the contrary in any other agreement heretofore or hereafter executed between the Assignor and any Assignee, it is expressly agreed, but not by way of limitation, that the foregoing includes repayment of advances against commissions heretofore or hereafter given to the Assignor by any Assignee toward repayment of such advances and interest.

This Assignment shall be subject without exception to the terms, limitations and conditions of said agency contracts and commission agreements and to all rights thereunder of the Assignees, their successors and assigns. Notwithstanding this Assignment there is reserved to each Assignee, its successors and assigns, the right to offset against said commissions and other compensation any and all advances from the Assignees to the Assignor and any indebtedness without exception of the Assignor to any Assignee now existing and such other and future indebtedness which any Assignee, its successors and assigns, would have been authorized to deduct from or offset against said commissions or other compensation payable to the Assignor if this Assignment had not been made. If the Assignor is or hereafter becomes insured under or covered by any group insurance, pension, retirement, deferred compensation or other benefits plan, or any policy plan providing errors and omissions protection or similar insurance, provided by any Assignee for its agents or utilizing any Assignee's accounting facilities, the Assignor reserves the right to authorize any Assignee, or to continue any existing authorization, to deduct from said commissions and other compensation the Assignor's premium or other contributions to or for such plans and policies and to authorize increases in the amount of such deductions.

It is the intent of this Assignment that any Assignee receive and retain the commissions and other compensation which are the subject of this Assignment only to the extent necessary to secure repayment of any present or future debit balance in the Assignor's account with such Assignee and any other present or future indebtedness of the Assignor to such Assignee. Therefore, notwithstanding anything to the contrary herein, each Assignee is hereby authorized and directed to pay all commissions and other compensation in the Assignor's account with such Assignee to the Assignor for his/her own use and purpose unless and until an Assignee determines that it is necessary to enforce the terms of this Assignment to protect its interest in such debit balances and other indebtedness within the intent of this Assignment.

Each Assignee is hereby authorized and directed to pay all commissions and other compensation hereby assigned directly to any other Assignee, unless and until it receives a written release of this Assignment.

All Assignees are hereby authorized to receive any moneys now due and payable and which may become due and payable under the above indicated agency contracts and commission agreements. The Assignor hereby ratifies any acts that any Assignee may make in connection with this Assignment.

It is intended that the provisions of this Agreement be construed in the same manner as if the Assignor had executed separate assignments in favor of each of the companies that constitute an Assignee hereunder.

TOA5560211T                        Page 4 of 7

| PART VI | General Instructions Concerning Taxpayer Identification Number (TIN) |
| --- | --- |

Under current tax laws, you are required to give us your correct TIN (either a Social Security Number (SSN) or Employer Identification Number (EIN).

The Internal Revenue Services (IRS) uses the TIN for identification purposes and to help verify the accuracy of your tax return. You must provide your TIN whether or not you are required to file a tax return.

Transamerica must generally withhold 31% of your commission payments if you do not give us a correct TIN. Certain penalties may also apply. Following are some general guidelines:

- Individuals: If you are an individual, you must provide the name shown on your social security card. However, if you have changed your last name (e.g. due to marriage) without informing the Social Security Administration, please enter your first name, the last name shown on your social security card and your new last name.

- Sole Proprietors: You (the owner) must provide your individual name as it appears on your social security card. You may also provide your "doing business as" name. You may use either your SSN or EIN. Show the name that appears on your social security card and the business name as it was used to apply for your EIN or Form SS-4. Please note that use of an EIN may result in unnecessary IRS notices being sent to Transamerica by the IRS.

- Corporations, Partnerships, and LLCs: Provide us the name and EIN of the firm.

If you do not have a TIN, you must request one from the Social Security Administration by using Form SS-4 (for EINs) or SS-5 (for SSNs).

| Attachments/Enclosures |
| --- |

♦ Additional information to any "Yes" answers
♦ Copy of current resident license
♦ Copy of non-resident license(s)
♦ Supporting documentation, i.e., court records
♦ Checking or money market account voided check or savings account deposit slip for Auto-Pay

| PART VII | Notice and Release |
|---|---|

Notice to Persons Applying for Sales Representative Positions with
Transamerica Life Insurance Company

Federal law requires you be advised that in connection with your application to represent Transamerica Life Insurance Company (referred to as "Transamerica") for the purpose of selling its products, a consumer report and/or investigative consumer report may be prepared whereby information is obtained through credit reporting agencies and/or personal interviews with your neighbors, friends, or others with whom you are acquainted. Such reports are usually part of the process of evaluating suitability for a sales representative position. Inquiry may be made into your character, general reputation, personal characteristics, and mode of living and credit information. It is possible that a representative of a firm employed to make such reports may call upon you in person.

You have a right to request disclosure of the nature and scope of the investigation upon written request to our Home Office made within a reasonable time after the receipt of this notice. A summary of your rights under the Fair Credit Reporting Act is attached hereto.

Authority for Release of Information

To Whom It May Concern:

I hereby authorize Transamerica or its legal representative to obtain any information from former or current employers, criminal justice agencies, consumer reporting agencies, or individuals, relating to my activities. This information may include, but is not limited to achievement, performance, attendance, personal history, credit and conviction records. I hereby direct you to release such information upon request to Transamerica or its legal representative. I understand that Transamerica or its legal representative may be required by law to release information obtained to government agencies.

I hereby release all persons and entities, including record custodians, from any and all liability for damages of whatever kind or nature which may at any time result to me on account of compliance, or any attempts to comply, with this authorization. A photocopy of this release shall be as valid as the original.

| PART VII | Applicant Signature Section |
|---|---|

I have thoroughly reviewed this application and have answered all questions to the best of my knowledge. By signing below, I hereby agree to all matters set forth above and below, including, a multi-company assignment of commissions set forth in Part VIII and the acknowledgement authorizations and releases set forth in Part V.

I hereby agree that if and when any or all of the companies issue to me any Contract(s) for which I hereby apply, I will be bound by such Contract(s) (Independent Producer Contract on form number CNT-550 for TOLIC and TLIC, that my supervising office has specimen forms of the Contract(s) on file and I have had the opportunity to review such Contract(s). My submitting to the company any application for an insurance policy or annuity contract shall constitute my agreement to such Contract(s), and all of the terms, conditions, and provisions set forth therein. I acknowledge that by signing this Contract Application and by submitting any such insurance application for an insurance policy or annuity contract, I have so agreed to the Contract(s) and no further signature by me shall be necessary.

I have been provided with a Notice and Release informational copy as set forth in this contract application, along with information concerning my rights under the Fair Credit Reporting Act.

_____                    02/01/2012
Applicant Signature                                             Date

| PART IX | General Agent Signature Section |
|---|---|

_____                    02/01/2012
GA Signature                                                      Date

TOA5560211T                          Page 6 of 7

 TRANSAMERICA
LIFE INSURANCE COMPANY

Transamerica Life Insurance Company
Home Office: 4333 Edgewood Road NE
Cedar Rapids, IA 52499

Auto-Pay
Authorization

## AUTO-PAY AUTHORIZATION
## TO BE COMPLETED BY THE PRODUCER

GA Name: National Insurance Brokerage, LLC                Office ID: 13134

This section authorizes Transamerica Life Insurance Company to deposit your bi-weekly commissions into your checking, money market or savings account. For a checking or money market account, please include a voided check. For a savings account, please include a deposit slip.

I hereby authorize Transamerica Life Insurance Company (hereafter called the Company) to initiate deposits (credits) and/or immediate/same day corrections to deposits, if processed in error, to the financial institution indicated below. The fi nancial institution is authorized to credit and/or correct the amounts to my account. This authority is to remain in full force and effect until the Company has received written notification from me of its termination in such time and such manner as to afford the Company and Financial Instittuion a reasonable opportunity to act on it.

Note: The Company will not utilize this authorization to collect outstanding balances owed to the Company. Alternative repayment methods must be established between you and the Company in accordance with the terms of our contractual agreement.

Your Name: Monica Steinberg                 Your Producer ID: ░░░░░░░░░░

Social Security Number: REDACTED 1372

Preferred Address: _____
                    Street                    City            State         Zip Code

Preferred Phone # 9496309785                 E-mail Address: msteinberg@wealth-asset-management.com

Financial Institution Name: Union Bank

Financial Institution Address: 25612 Crown Valley Pkwy., Suite L8 Ladera Ranch, CA 92694
                               Street                    City         State      Zip Code

Checking or Savings Account Number: REDACTED        EFT Transit/ABA Number: REDACTED

Account Types: ☑ Checking/Money Market    ☐ Savings

_____     02/01/2012
        Your Signature                      Date

* If the name on the bank account is different from the contracted person or entity, a signature from the accountholder or signing officer of the account (if a corporation/firm) is required.

_____        _____        ___/___/___
   Accountholder's Signature              (If signing officer of corporation/firm)        Date

TOA5580211T                    Page 7 of 7

Feb 1, 2012

Monica Steinberg SS # REDACTED 1372

Firm is MS Wealth Asset Management and Insurance Services Tax ID 27-1241245

date filed for bankruptcy- Feb 10-2010

date paid off - June 23-2010

Amount of Bankruptcy - $ 83,726.00

I opened a spa in Laguna Beach, CA and was given a five year lease at $8,500 per month. The objective was to earn a substantial income to accelerate the funding of my retirement. Through a steady cash flow generated by a thriving spa business at the time. Then the economy crash of 2008 shook the U.S. and most small business owners. I desperately held out for months trying to keep the doors of my business open, though I was losing money. The landlord refused to renegotiate the terms of the lease. Business disappeared overnight and I was left with the shell of a business that drove me deeper in debt with each passing day. My last resort, something I tried to avoid was bankruptcy. I did my best and with the landlords refusal to renegotiate the terms of the lease to reflect a more fair and balance approach in this unstable and volatile climate, left me with no other alternative but to seek relief through bankruptcy.

1

**PROOF OF SERVICE**

2

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

3

    I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is:  Barger & Wolen LLP, 633 West Fifth Street, 47th Floor, Los Angeles, California 90071-2043.

4

5

    On September 19, 2013, I served the foregoing document(s) described as follows:

6

**COMMERCIAL ARBITRATION RULES DEMAND FOR ARBITRATION, INCLUDING ALLEGATIONS AND CLAIMS IN SUPPORT OF CLAIMANT TRANSAMERICA LIFE INSURANCE COMPANY'S DEMAND FOR COMMERCIAL ARBITRATION AND ARBITRATION AGREEMENTS ATTACHED THERETO**

7

8

on the interested parties in this action by placing [ X ] the original or [ X ] a true copy thereof enclosed in sealed envelope addressed as stated in the attached mailing list.

9

**[ X ]  BY MAIL**

10

    [ X ]    I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postage cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

11

12

13

14

**[X] OVERNIGHT DELIVERY**

15

    [ X ] I am "readily familiar" with the firm's practice of collection and processing correspondence for overnight delivery.  Under that practice it would be deposited in a box or other facility regularly maintained by the express service carrier, or delivered to an authorized courier or driver authorized by the express service carrier to receive documents, in an envelope or package designated by the express service carrier with delivery fees paid or provided for, addressed to the person on whom it is to be served, at the office address as last given by that person on any document filed in the cause and served on the party making service; otherwise at that party's place of residence. [ ]

16

17

18

19

20

[ X ]    **(STATE)**    I declare under penalty of perjury under the laws of the State of California that the above is true and correct.  Executed at Los Angeles, California on September 19, 2013,

21

22

23

NAME:  VERONICA MONTERO

                (Signature)

24

25

26

27

28

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

I:\office\10427\063\13pleadings\proof.doc

PROOF OF SERVICE

1

**Proof of Service**
*Transamerica Life Insurance Company vs. Monica Steinberg, et al.*
American Arbitration Association

2

3

| | |
|---|---|
| American Arbitration Association<br>Case Filing Services<br>1101 Laurel Oak Road, Suite 100<br>Voorhees, NJ 08043 | *VIA FEDERAL EXPRESS OVERNIGHT DELIVERY*<br>*(COPY)* |
| Monica Steinberg<br>31302 Via Las Palmas<br>San Juan Capistrano, CA 92675 | *VIA FIRST CLASS U.S. MAIL*<br>*(ORIGINAL)*<br><br>*Service Re Monica Steinberg* |
| MS Wealth Management & Ins. Services, Inc.<br>c/o Wolfgang Steinberg & Monica Steinberg<br>27702 Crown Valley Pkwy. Building D4 #136<br>Ladera Ranch, CA 92694 | *VIA FIRST CLASS U.S. MAIL*<br>*(COPY)*<br><br>*Service Re MS Wealth Management & Ins. Services, Inc.* |

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-2-
PROOF OF SERVICE

# EXHIBIT 4

# CALLAHAN & BLAINE

*California's Premier Litigation Firm* ℠

DANIEL J. CALLAHAN
STEPHEN E. BLAINE
MICHAEL J. SACHS
EDWARD SUSOLIK
BRIAN J. MCCORMACK
JAVIER H. VAN OORDT
MARC P. MILES

RAPHAEL CUNG
DAVID J. DARNELL
KATHLEEN L. DUNHAM
D. BRYAN GARCIA
ANN M. GUEVARA
DAVID E. HAYEN
TAE J. IM
ROBERT LAWRENCE
MICHAEL LEBOFF
LAURA M. MORRIS
SCOTT D. NELSON
CHRISTOPHER QUEALLY
JAMES R. ROUSE
KRISTY SCHLESINGER
SARAH C. SERPA
RYAN J. WILLIAMS
MICHAEL J. WRIGHT

OF COUNSEL
SCOTT ABERNETHY
SHELLEY M. LIBERTO

OFFICE ADMINISTRATOR
LAURALI M. KOBAL

**OUR FILE NUMBER:**

3418-02

Member of the
International Law Firms



October 18, 2013

**VIA FACSIMILE AND U.S. MAIL**

Vivian I. Orlando, Esq.
Barger & Wolen LLP
633 West Fifth Street, 47th Floor
Los Angeles, CA 90071
Fax No.: (213) 614-7399

Re:    <u>Transamerica Life Insurance Company v. Monica Steinberg & MS
Wealth Management & Insurance Services, Inc.</u>

Dear Ms. Orlando:

Prior to the Administrative Conference Call, I discussed with you our concerns regarding this matter being arbitrated separately from Transamerica Life Insurance Company v. Axsys Group, Inc., et al., LASC Case No. 30-2013-00676523, which involves the same transactions that are placed in dispute by Transamerica's arbitration claim, and asked if your client would agree to joining Ms. Steinberg as a defendant in the Los Angeles Superior Court case instead of pursuing arbitration.  I have not received a response.

Since the allegations in the Los Angeles Superior Court case arise out of the same transactions or series of transactions as the arbitration claim, there is a substantial risk of conflicting rulings on common factual and legal issues.  Furthermore, since Ms. Steinberg's husband is a named defendant in the Superior Court case, there is a substantial risk that a judgment against him would affect her financial interests.  However, the named defendants in the Superior Court case are not parties to the arbitration agreement and cannot be joined in the arbitration.  Additionally, there will be substantial overlap in the discovery required in both cases.  Therefore, in order to resolve the issues in a single dispute, we request that Transamerica agree to join Ms. Steinberg as a defendant in the Los Angeles Superior Court case and not pursue its claims through arbitration.

CALLAHAN & BLAINE
*California's Premier Litigation Firm™*

www.callahan-law.com

Vivian I. Orlando, Esq.
Barger & Wolen LLP
Ocotber 18, 2013
Page 2

Please respond to this request by October 27, 2013, so that we can promptly file a petition for stay of the arbitration if necessary.

Very truly yours,

James R. Rouse

JRR:dc

cc:   Michael J. Sachs, Esq.

G:\Clients\3418\3418-02\Correspondence\Orlando 101813.wpd

3 Hutton Centre Drive · Ninth Floor · Santa Ana, CA 92707 · (714) 241-4444 · Fax (714) 241-4445 · www.callahan-law.com

77

# EXHIBIT 5

⠿ BARGER & WOLEN ʟʟᴘ

ANDREW S. WILLIAMS
(213) 614-7319
awilliams@bargerwolen.com

633 West Fifth Street
Forty-Seventh Floor
Los Angeles, California  90071-2043
Telephone:  (213) 680-2800
Facsimile:  (213) 614-7399

PLEASE REFER TO FILE NUMBER:
10427.063

October 25, 2013

**VIA ELECTRONIC MAIL**

James R. Rouse, Esq.
Callahan & Blaine
3 Hutton Centre Drive, Ninth Floor
Santa Ana, CA 92707

       Re:   *Transamerica vs. Steinberg, et al.*

Dear Mr. Rouse:

     Thank you for your October 18, 2013 letter.  Transamerica Life Insurance Company does not agree to abandon its arbitration against Ms. Steinberg and join her in the lawsuit against the AXSYS Group defendants nor, at this point, does it believe a stay of the arbitration is warranted based on the applicable law and facts.

                         Very truly yours,

                         ANDREW S. WILLIAMS
                         For the Firm

ASW:id.

cc: Vivian I. Orlando, Esq.

i:\office\10427\063\13letters\1025 ltr 2 rouse.doc

Los Angeles   San Francisco   Newport Beach   New York   Phoenix

EXHIBIT C

1 | CALLAHAN & BLAINE, APLC
Daniel J. Callahan (SBN 91490)
2 | Michael J. Sachs (SBN 134468)
James R. Rouse (SBN 145152)
3 | 3 Hutton Centre Drive, Ninth Floor
Santa Ana, California 92707
4 | Telephone: (714) 241-4444
Facsimile: (714) 241-4445
5
Attorneys for Petitioners MONICA STEINBERG and MS WEALTH MANAGEMENT &
6 | INSURANCE SERVICES, INC.

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange
**11/07/2013** at 02:41:03 PM
Clerk of the Superior Court
By Marlene Diaz, Deputy Clerk

7

8

9 | SUPERIOR COURT OF CALIFORNIA

10 | COUNTY OF ORANGE, CENTRAL JUSTICE CENTER

11

12 | MONICA STEINBERG, an individual; and
MS WEALTH MANAGEMENT &
13 | INSURANCE SERVICES, INC., a
California corporation,
14
Petitioner,
15
v.
16
TRANSAMERICA LIFE INSURANCE
17 | COMPANY, an Iowa corporation; and
AMERICAN ARBITRATION
18 | ASSOCIATION, INC., a New York not-for-
profit corporation,
19
Respondents.
20

Case No. 30-2013-00686091-CU-PT-CJC

Honorable
Department

**REQUEST FOR JUDICIAL NOTICE IN
SUPPORT OF PETITION TO STAY
ARBITRATION**

[Filed concurrently with Petition to Stay Arbitration]

Date:
Time:
Dept:

21

22

23 | TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:

24 |     Petitioners Monica Steinberg and MS Wealth Management & Insurance Services, Inc.

25 | respectfully request that in support of their Petition to Stay Arbitration, the Court take judicial

26 | notice, pursuant to Evidence Code sections 451 and 452, of the following documents, true and

27 | correct copies of which are attached hereto:

28

1

REQUEST FOR JUDICIAL NOTICE

| | | |
|---|---|---|
| 1 | Exhibit 2. | Complaint filed in Orange County Superior Court Case No. 30-2013-00676523. |
| 2 | | |
| 3 | | |
| 4 | Exhibit 3. | Notice of Removal filed in Orange County Superior Court Case No. 30-2013-00676523. |
| 5 | | |
| 6 | | |
| 7 | Dated: November 6, 2013 | CALLAHAN & BLAINE, APLC |

By: _____
Michael J. Sachs
James R. Rouse
Attorneys for Petitioners MONICA
STEINBERG and MS WEALTH
MANAGEMENT & INSURANCE
SERVICES, INC.

G:\Clients\3418\3418-02\Pleadings\RJN Petition to Stay.wpd

2

# EXHIBIT 2

1 | Andrew S. Williams (177926)
awilliams@bargerwolen.com
2 | Sandra I. Weishart (89782)
sweishart@bargerwolen.com
3 | Vivian I. Orlando (213833)
vorlando@bargerwolen.com
4 | BARGER & WOLEN LLP
633 West Fifth Street, 47th Floor
5 | Los Angeles, California 90071
Telephone: (213) 680-2800
6 | Facsimile: (213) 614-7399

7 | Attorneys for Plaintiff
Transamerica Life Insurance Company
8

ELECTRONICALLY FILED
Superior Court of California,
County of Orange

09/19/2013 at 08:38:47 AM
Clerk of the Superior Court
By Marlene Diaz, Deputy Clerk

9 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

10 | IN AND FOR THE COUNTY OF ORANGE

11

12 | TRANSAMERICA LIFE INSURANCE
COMPANY, an Iowa Corporation,

13 | Plaintiff,

14 | vs.

15 |

16 | AXSYS GROUP, INC. a California
corporation; MANUELA "ELA" KITCHEN,
17 | an individual; ACADEMIC BRAIN
INSTITUTE, INC., a Nevada corporation;
18 | DORIS E. KARRAS, an individual; GEORGE
BOSY, an individual; STEINBERG EQUITY
19 | PARTNERS LLC, a Nevada Limited Liability
Company; WOLFGANG STEINBERG, an
20 | individual; and DOES 1 through 100,
inclusive,

21 | Defendants.

22

CASE: 30-2013-00676523-CU-PO-CJC
Judge James J. Di Cesare

COMPLAINT FOR:

1. **VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE §§17200 et seq.;**

2. **VIOLATIONS OF RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (18 U.S.C.§ 1962(c));**

3. **FRAUD-DECEIT;**

4. **UNJUST ENRICHMENT;**

5. **NEGLIGENCE; AND**

6. **NEGLIGENT MISREPRESENTATION.**

23

24

25

26

27

28

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

COMPLAINT

Transamerica Life Insurance Company ("Transamerica") alleges as follows:

## INTRODUCTION

1.      This lawsuit arises out of an insurance scam by certain individuals and entities to manufacture the sale of Transamerica indexed universal life insurance policies for the sole purpose of reaping huge financial gains at Transamerica's expense.  Along with numerous independent producers appointed by Transamerica to solicit life insurance, the defendants sued herein – none of whom are licensed to sell insurance – formed and ran an enterprise by which they marketed, solicited, and caused to be issued at least 172 Transamerica indexed universal life insurance policies to individuals who did not need or want the insurance and/or could not afford the insurance, and who had no intent of ever paying premiums for the policies, including both initially and to keep the insurance in effect after one year.

2.      The defendants and their co-conspirator independent producers accomplished the foregoing scam by (i) misleading prospective policy owners as to the nature, terms and cost of the insurance; (ii) offering prospective policy owners "free" or minimal/nominal cost Transamerica IUL policies; (iii) covertly paying or arranging for the payment of insurance premiums (making it appear to Transamerica that the premium was paid by the applicant, applicant's business, insured, policy owner, or family member); and (iv) engaging in various forms of fraud, including but not limited to making material misrepresentations to Transamerica concerning applicants' annual income and net worth, the forgery, falsification and alteration of required policy documents, and the falsification, alteration and forgery of financial instruments, including checks used to pay premium.

3.      The defendants and their co-conspirators profited from this insurance scam by improperly taking advantage of a commission structure for Transamerica indexed universal life policies that, in the aggregate, paid producers and their affiliated general agents an up front, first year commission that was greater than the first year premium for the policies.  By agreement between the general agents and the co-conspirator independent producers, the general agents paid the independent producers all or substantially all of the commissions they received from Transamerica.  The effect of this agreement was that the independent producers in league with the

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

-2-
COMPLAINT

1    defendants received up front compensation for the sale of the policies that was more the first year

2    premium for the policy.  This allowed the defendants and their co-conspirator to profit from their

3    illicit insurance scam even though they paid the first year premiums for the policies.

4         4.    Due to the wrongful conduct of the defendants and their co-conspirators,

5    Transamerica has not received any second year premium payments for the policies at issue herein

6    and all of the policies have lapsed, or are expected to lapse in the near future, for failure to pay

7    second year premiums.  As a result of the insurance scam described above, Transamerica estimates

8    its aggregate financial loss to be in excess of $5.5 million, representing commissions paid by

9    Transamerica above premium received for the policies at issue, as well as underwriting,

10    administrative and legal expenses incurred in connection with the policies that were issued.

11

12                              **THE PARTIES**

13         5.    Plaintiff Transamerica is a corporation organized and existing under the laws of the

14    State of Iowa.  Transamerica is a resident and citizen of the State of Iowa, with its principal place of

15    business located in Cedar Rapids, Iowa.  Transamerica is, and at all relevant times was, a life

16    insurance company authorized to do business in the State of California.

17         6.    Defendant Axsys Group, Inc. ("AXSYS") is a company that purports to be, and

18    advertises itself as, a company offering credit restoration services, business credit, mortgage

19    services, and insurance services.  AXSYS is a corporation organized and existing under the laws of

20    the State of California.  Its principal place of business is located at 27129 Calle Arroyo, Suite 1820,

21    San Juan Capistrano, CA 92675.  It maintains a website at www.axsysfinancial.com and a Facebook

22    page at www.facebook.com/axsysfinancial

23         7.    AXSYS is not licensed in the State of California to sell life insurance.

24         8.    Transamerica is informed and believes, and on that basis alleges, that Defendant

25    Manuela "Ela" Kitchen ("KITCHEN") is an officer, director and/or shareholder of AXSYS who

26    holds herself out as the owner of AXSYS and a specialist in the services offered by AXSYS,

27    including credit restoration services.  Transamerica is informed and believes, and on that basis

28    alleges, that KITCHEN is a resident of Orange County, California.

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

-3-
COMPLAINT

86

9.     KITCHEN is not licensed in the State of California to sell life insurance.

10.    Transamerica is informed and believes, and on that basis alleges, that AXSYS is the alter ego of KITCHEN in that (i) there is such unity of interest and ownership between the two that their separate personalities no longer exist, (ii) AXSYS is and was at all relevant times a mere instrumentality, agent, or conduit of KITCHEN, (iii) KITCHEN controls and dominates the actions of AXSYS; and (iv) the failure to disregard KITCHEN's and AXSYS's separate identities would result in fraud or injustice.

11.    Transamerica is informed and believes, and on that basis alleges, that Defendant Academic Brain Institute, Inc. ("ACADEMIC") is a corporation organized and existing under the laws of the State of Nevada and doing business in the State of California, including but not limited to doing business in Orange County, California.

12.    ACADEMIC is not licensed in the State of California to sell life insurance.

13.    Transamerica is informed and believes, and on that basis alleges, that Defendant Doris E. Karras ("KARRAS") is an officer, director and/or shareholder of AXSYS who holds herself out as a specialist in the services offered by AXSYS, including credit restoration. Transamerica is further informed and believes, and on that basis alleges, that KARRAS is an officer, director and/or shareholder of ACADEMIC. Transamerica is informed and believes, and on that basis alleges, that KARRAS is a resident of Orange County, California.

14.    KARRAS is not licensed in the State of California to sell life insurance.

15.    Transamerica is informed and believes, and on that basis alleges, that ACADEMIC is the alter ego of KARRAS in that that (i) there is such unity of interest and ownership between the two that their separate personalities no longer exist, (ii) ACADEMIC is and was at all relevant times a mere instrumentality, agent, or conduit of KARRAS, (iii) KARRAS controls and dominates the actions of ACADEMIC; and (iv) the failure to disregard KARRAS's and ACADEMIC's separate identities would result in fraud or injustice

16.    Transamerica is informed and believes, and on that basis alleges, that George Bosy ("BOSY") is an employee, agent and/or representative of AXSYS that holds himself out to the

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

-4-
COMPLAINT

87

1  public and AXSYS customers as a "Director" of AXSYS.  Transamerica is informed and believes,

2  and on that basis alleges, that BOSY is a resident of Orange County, California.

3      17.    BOSY is not licensed in the State of California to sell life insurance.

4      18.    Defendant Steinberg Equity Partners LLC ("STEINBERG EQUITY") is a limited

5  liability company organized and existing under the laws of the State of Nevada and doing business

6  in the State of California, including but not limited to doing business in Orange County, California.

7      19.    STEINBERG EQUITY is not licensed in the State of California to sell life insurance.

8      20.    Transamerica is informed and believes, and on that basis alleges, that Defendant

9  Wolfgang Steinberg ("STEINBERG") is an officer, director and/or managing member of

10 STEINBERG EQUITY who resides in, and is a citizen of, Orange County, California.

11      21.    STEINBERG is not licensed in the State of California to sell life insurance.

12      22.    Transamerica is informed and believes, and on that basis alleges, that STEINBERG

13 EQUITY is the alter ego of STEINBERG in that that (i) there is such unity of interest and

14 ownership between the two that their separate personalities no longer exist, (ii) STEINBERG

15 EQUITY is and was at all relevant times a mere instrumentality, agent, or conduit of STEINBERG,

16 (iii) STEINBERG controls and dominates the actions of STEINBERG EQUITY; and (iv) the failure

17 to disregard STEINBERG's and STEINBERG EQUITY's separate identities would result in fraud

18 or injustice

19      23.    Defendants DOES 1 through 100, inclusive, are sued herein under fictitious names.

20 Their true names and capacities are unknown to Transamerica.  When their true names and

21 capacities are ascertained, Transamerica will amend this Complaint by inserting their true names

22 and capacities herein.  Transamerica is informed and believes, and thereon alleges, that each of the

23 fictitiously named Defendants is responsible in some manner for the occurrences herein alleged, and

24 that Transamerica's damages and other harm as herein alleged were proximately caused by such

25 Defendants.

26      24.    Transamerica is further informed and believes, and on that basis alleges, that each

27 Defendant herein (including DOES 1 through 100, inclusive) is, and at all relevant times was, the

28 agent, employee, representative, associate, partner, joint venturer, or co-conspirator of the other and

BARGER & WOLEN LLP
623 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

-5-
COMPLAINT

88

1  was at all times acting with in the course and scope of such agency, employment, authority,

2  association, partnership, joint venture or conspiracy with the knowledge and approval of, and in

3  concert, with the other.

4

5  <u>TRANSAMERICA'S INDEXED UNIVERSAL LIFE POLICIES</u>

6      25.    The main purpose of life insurance is to provide financial security to the insured's

7  family, business, or loved ones upon the insured's death.  Transamerica is a life insurance company

8  that offers both permanent and term life insurance to prospective customers.

9      26.    Permanent life insurance is not temporary and is intended to remain in force during

10  the insured's entire lifetime, providing premiums are paid as specified in the policy.  Unlike

11  permanent life insurance, term life insurance can provide coverage for only a set number of years.

12  When that coverage period ends on a term policy, if life insurance coverage is still needed and

13  available for purchase at the age of that insured, the insured would have to provide new evidence of

14  insurability with regard to health and financial situation.  Also, as an insured ages, term insurance

15  coverage can become prohibitively expensive, while, in general, permanent insurance can provide

16  the policy owner a way to pre-fund for future charges to provide a more levelized premium

17  approach.  Generally, permanent insurance costs more initially and in the short term, but can

18  ultimately be more affordable for long term, lifelong coverage needs.

19      27.    Universal Life insurance is a form of permanent life insurance.  Universal Life

20  insurance policies offer a valuable death benefit and, unlike term life insurance policies, provide the

21  opportunity to build cash values from which the policy owner can borrow or withdraw.  The

22  advantage of Universal Life insurance coverage over other forms of permanent insurance (and term

23  life insurance) is that Universal Life insurance gives the policy owner more flexibility over his or

24  her policy to assist in meeting financial goals.  For example, (with certain limits) a policy owner can

25  choose the amount, method and timing of his or her premium payments, which in turn determines

26  how the policy value develops.  Universal Life insurance is also an "interest sensitive" product.

27  This means that the interest rates credited to policy values will change over time.  Flexibility of

28  payments, ability to pre-fund for future protection costs, tax-deferred cash value accumulation,

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

-6-
COMPLAINT

89

1  coverage options (subject to contract requirements), and the ability to continue coverage for an
2  entire lifetime without ever having to re-qualify from a health standpoint or financially are the
3  primary advantages of Universal Life coverage over term insurance coverage.  Because of these
4  advantages, Universal Life insurance can be effectively used in estate planning, business planning,
5  and retirement planning, offering the policy owner a variety of options.
6      28.    One type of Universal Life insurance offered by Transamerica is called "Indexed
7  Universal Life ('IUL') insurance."  Like all Universal Life insurance, net premiums for IUL
8  policies are applied to a fixed account that earns a fixed rate of interest subject to a guaranteed
9  minimum.  Unlike typical Universal Life insurance, a percentage of that value, which is determined
10 by the policy owner, can be transferred to an indexed account and earn interest based in part on
11 changes to outside indexes.  A person might consider IUL coverage if that person is interested in
12 (i) death benefit protection; (ii) greater cash value accumulation potential than traditional life
13 universal insurance; and/or (iii) protection from market-based losses with an interest crediting floor.
14
15             **THE SALE OF IUL POLICIES**
16      29.    Transamerica IUL policies are generally sold by appointed independent, contracted
17 producers who are affiliated with Transamerica's general agents (collectively referred to herein as
18 "distributors").  Transamerica typically pays distributors of its IUL policies commissions for each
19 sale as follows: the selling producers are paid commissions up to 90% of the first year target
20 premium and the general agent is paid a "commission override" of 55% of the first year target
21 premium in addition to any portion of the 90% commission not paid to the selling producer.
22 Smaller commissions (2% to the producer and 2% for the general agent) are paid for premium paid
23 in excess of the first year target premium.
24      30.    It is customary and relatively common in the life insurance industry for life insurers
25 to pay distributors up-front, lump-sum commissions for the sale of life insurance that exceed the
26 first year target premium.  Payment in this manner accounts for, among other things, the
27 considerable time and expense incurred by distributors in marketing, soliciting, and securing
28

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

-7-
COMPLAINT

90

1  applications for life insurance, and the servicing of clients over what tend to be long-term insurance
2  relationships.
3      31.    When permanent insurance, like IUL insurance, is sold for a legitimate purpose
4  (such as income protection or estate planning), policy owners tend to keep the insurance in force
5  through the payment of premium year after year for extended periods of time and often for the
6  lifetime of the insured.  It is thus very uncommon for permanent policies to lapse for the non-
7  payment of premium, and particularly rare for them to lapse after only one year in force.  In fact,
8  given the cost of such insurance, it would not make financial sense for an individual to buy
9  permanent life insurance coverage for only one year.  Based on Transamerica's experience, the
10  expected lapse rate for its permanent insurance policies is approximately 1% after one year.
11  Permanent life insurance is thus issued by Transamerica with the expectation that (i) the policy
12  owner has a legitimate need for (and wants) the coverage applied for and (ii) the policy owner will
13  keep the coverage in force for many years.
14      32.    The manner in which commissions are paid on Transamerica IUL policies
15  contemplates that most IUL policies will be kept in force for many years and that the vast majority
16  of IUL policies will not lapse due to the policy owner's failure to pay premiums beyond the first
17  year.  In fact, given the up-front commission structure, underwriting costs and administrative costs
18  associated with IUL policies, it takes several years of premium payments just for Transamerica to
19  recover the acquisition costs associated with the sale of such products.
20
21  **DEFENDANTS' SCAM INVOLVING TRANSAMERICA IUL POLICIES**
22      33.    This lawsuit arises out of a life insurance scam by various unscrupulous individuals
23  and entities, including some distributors, designed to take advantage of the commission structure
24  applicable to the sale of Transamerica IUL policies to the financial detriment of Transamerica.
25      34.    Within the past year, Transamerica discovered that since at least November 2011,
26  AXSYS, KITCHEN, ACADEMIC, KARRAS, BOSY, STEINBERG EQUITY, STEINBERG and
27  DOES 1 through 100 (collectively "the AXSYS DEFENDANTS") have been engaged in a broad-
28  based, unlawful and on-going life insurance scam by which they offer "free" or minimal/nominal

BARGER & WOLEN LLP
833 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

-8-
COMPLAINT

91

1    cost Transamerica IUL policies to AXSYS customers who have sought AXSYS's assistance for

2    matters unrelated to the purchase of life insurance, predominantly credit repair services.

3        35.    Transamerica is further informed and believes, and on that basis alleges, that the

4    AXSYS DEFENDANTS' insurance scam is and was perpetrated with the assistance of, and in

5    association with, several other individuals and entities, including, but not limited to, several

6    Transamerica distributors (collectively referred to herein as "the co-conspirators").

7        36.    Working in conjunction with the co-conspirators, the AXSYS DEFENDANTS, none

8    of whom is licensed to sell life insurance, solicited, encouraged and/or pressured customers who

9    had sought the services of AXSYS to apply for and obtain what was mischaracterized by the

10    AXSYS DEFENDANTS as free or minimal/nominal cost life insurance.  Transamerica is informed

11    and believes, and on that basis alleges, that the AXSYS DEFENDANTS marketed the free or

12    minimal/nominal cost life insurance as a benefit AXSYS provided to its credit repair customers.

13        37.    Transamerica is informed and believes, and on that basis alleges, that most or all of

14    the AXSYS customers who were offered this life insurance coverage did not seek the AXSYS

15    DEFENDANTS' assistance for life insurance matters (at least initially), did not need or desire IUL

16    policies for any legitimate purpose, were unaware of or misled as to the face value and/or cost of

17    coverage, could not afford to pay the actual premium for the coverage from their own funds, and/or

18    had no intent of ever paying premiums for the policies.

19        38.    The AXSYS DEFENDANTS' association-in-fact with each other and the co-

20    conspirators provided them with an avenue and opportunity to (i) identify and solicit customers; (ii)

21    obtain confidential financial and other information concerning customers; (iii) submit IUL policy

22    applications and related application material to Transamerica for underwriting and issuance; (iv)

23    fund the payment of the premium for IUL policies; and (v) gain access to the commissions paid in

24    connection with the IUL policies issued by Transamerica to AXSYS customers and/or other

25    individuals made aware of the IUL policies by the AXSYS DEFENDANTS and their co-

26    conspirators.

27        39.    In order to conceal the fact that applicants were not the source of the premiums for

28    the IUL policies, the AXSYS DEFENDANTS and their co-conspirators paid for or arranged for the

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

-9-
COMPLAINT

92

1    payment of premium on behalf of their customers by reimbursing the applicants for payment of the

2    premium, depositing by wire the premium money directly into the customers' bank accounts so

3    each customer could pay with his or her own check, and/or by paying or arranging for payment of

4    premium without the customers' knowledge or consent by various fraudulent means, including

5    accessing customers' bank accounts without their knowledge or consent to deposit and withdraw

6    money, forging customer checks, altering and/or creating bogus checks to make it appear the

7    applicant/prospective policy owner was paying premiums when in fact the AXSYS DEFENDANTS

8    were paying, or paying the premium via cashier checks that were represented to have been provided

9    by the prospective policy/applicant owner but which were actually purchased using money provided

10   by one or more of the AXSYS DEFENDANTS, including but not necessarily limited to

11   STEINBERG EQUITY, ACADEMIC and/or AXSYS.

12        40.    By covertly paying for (or arranging the payment of) the first year premium for

13   Transamerica IUL policies on behalf of applicants, the AXSYS DEFENDANTS and their co-

14   conspirators were able to reap a substantial financial benefit because, in addition to the commissions

15   that the co-conspirator independently appointed producers were entitled to, co-conspirator

16   independently appointed producers negotiated arrangements with their affiliated general agents to

17   be paid all, or substantially all, of the commission override paid by Transamerica to such general

18   agents in connection with the sale of the IUL policies at issue herein.  The effect of this arrangement

19   with the general agents was that the AXSYS DEFENDANTS and their co-conspirators received all,

20   or substantially all, of the total commissions paid for such IUL policies and were thus able to profit

21   off the sale of the IUL policies even though they secretly paid the entire first year premium on such

22   policies on behalf of the customer-applicants.

23        41.    Transamerica is informed and believes, and on that basis alleges, that funding for the

24   payment of many of the IUL policy premiums came from, or was arranged by, STEINBERG

25   through a STEINBERG EQUITY bank account (or accounts).  Transamerica is informed and

26   believes, and on that basis alleges, that funding was accomplished in whole or part by pooling

27   commissions received by co-conspirator distributors from the "sale" of the IUL policies.  For

28   example, certain Transamerica general agents paid all or substantially all of their commission

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

-10-
COMPLAINT

93

1 | overrides relating to policies sold by different co-conspirator independent producers directly to
2 | STEINBERG EQUITY (in lieu of paying the funds directly to the independent producers).
3 | Moreover, Transamerica is informed and believes, and on that basis alleges, that STEINBERG took
4 | an active role in the solicitation and of the IUL policies by personally speaking to at least some
5 | prospective policy owners in attempts to convince them that the insurance scam described herein
6 | was a legitimate business venture and that the AXSYS DEFENDANTS maintained a "hedge fund"
7 | established to pay the premium for the IUL policies marketed by the AXSYS DEFENDANTS.

8 |     42.    TRANSAMERICA is further informed and believes, and on that basis alleges, that
9 | funding for the premium on at least some of the IUL policy premiums came from, or was arranged
10 | by, AXSYS (through KITCHEN) and/or ACADEMIC (through KARRAS).  For example,
11 | Transamerica is informed and believes, and on that basis alleges, that these Defendants purchased
12 | cashier's checks to pay premium, funded the bank accounts of applicants for IUL policies, and/or
13 | created and altered personal checks to make it appear as if the applicants for IUL policies were
14 | paying the premium when in fact they were not.

15 |     43.    The AXSYS DEFENDANTS' scam was not only achieved through the unlawful and
16 | misleading solicitation and funding of the IUL policies but through affirmative material
17 | misrepresentation to Transamerica concerning applicants' annual income and net worth, the forgery,
18 | falsification and alteration of required policy documents (including applications, policy illustrations
19 | and policy delivery receipts), and through the falsification, alteration and forgery of financial
20 | instruments, including checks used to pay premium on the IUL products.  The foregoing was
21 | achieved with the knowledge, assistance and complicity of the co-conspirator distributors.  For
22 | example, Transamerica is informed and believes, and on that basis alleges, that in many instances,
23 | policy owners who were issued Transamerica IUL policies were never provided their policies,
24 | although in all cases Transamerica requires delivery certificates (acknowledging deliver and receipt
25 | of the IUL policies) signed by IUL policy owners.

26 |     44.    By misrepresenting annual income and net worth, the AXSYS DEFENDANTS and
27 | their co-conspirators could obtain larger face value policies with larger premiums and, thus, larger
28 | commission payments.  By forging required application and policy documents, rather than having

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

-11-
COMPLAINT

94

1   the applicants/policy owners sign, the AXSYS DEFENDANTS were able to conceal the true nature

2   of the insurance transaction from the policy owners, avoid inquiries about the coverage and avoid

3   the likelihood that the policy owner would contract Transamerica about the insurance transaction or

4   otherwise complain to third parties, including law enforcement.

5       45.    Transamerica is informed and believes, and on that basis alleges, that in many

6   instances, as a result of the manner in which the insurance scam described herein was perpetrated,

7   the policy owners who were issued Transamerica IUL policies as a result of the foregoing conduct

8   of the AXSYS DEFENDANTS and their co-conspirators either did not know they had insurance

9   coverage or were unaware of the type, amount and/or cost of the IUL policies issued to them until

10  they received notice that the second year insurance premium was due and payable.

11      46.    In at least two confirmed instances, the AXSYS DEFENDANTS, and their co-

12  conspirators, obtained IUL policies on AXSYS customers who did not pay for such coverage from

13  their own funds, who advised the AXSYS DEFENDANTS, and specifically KITCHEN and

14  STEINBERG, that they did not want such coverage, and who did not believe they had such

15  coverage until receiving premium payment notices from Transamerica for the second year of

16  coverage.

17      47.    Transamerica is further informed and believes, and on that basis alleges, that certain

18  applicants and/or policy owners were complicit in the insurance scheme perpetrated by the AXSYS

19  DEFENDANTS and their co-conspirators and, as a result, likely reaped some financial benefit

20  themselves beyond receiving insurance coverage under IUL policies for approximately one year at

21  little or no cost. For example, KITCHEN and her husband, Lewis Kitchen, applied for and received

22  IUL policies which were purportedly "sold" by independent producer Monica Steinberg

23  (STEINBERG's wife). Premium checks for the Kitchens' policies were from an AXSYS account.

24  AXSYS also funded the premium for at least two other IUL policies for which Monica Steinberg

25  was the designated producer, with the representation made during underwriting that the applicants

26  for the IUL policies were the owners of AXSYS when, in fact, that representation was apparently

27  false. Transamerica is informed and believes, and on that basis alleges, that other applicants or

28  policy owners may have been complicit in and/or known about the aforementioned insurance scam.

-12-
COMPLAINT

48.    The result of the above-described dishonest and illegitimate insurance scam is that the AXSYS DEFENDANTS and their co-conspirators have obtained a significant financial benefit at the expense of Transamerica by sharing in the commissions paid for the IUL policies at issue.

49.    Because the IUL policies were not sold for a legitimate purpose but arose out of and were issued due to the insurance scam described herein, numerous policies have lapsed to date (and it appears as if all or substantially all of the IUL policies involved in the scam will lapse) for failure to pay second year premiums.

50.    Transamerica estimates that it issued approximately 172 IUL policies due to the insurance scam alleged herein which would not have been issued had Transamerica been aware of the facts described herein at the time of underwriting or issuance.

51.    The financial loss to Transamerica as a result of the insurance scam described herein has been, and will in the future be, enormous.  Transamerica estimates that its aggregate financial loss as a direct result of the foregoing life insurance scam perpetrated by the AXSYS DEFENDANTS and their co-conspirators is in excess of $5.5 million, representing commissions paid by Transamerica above premium received for the IUL policies, as well as underwriting, administrative and legal expenses incurred in connection with the IUL policies issued due to the conduct of the AXSYS DEFENDANTS and their co-conspirators.

### FIRST CAUSE OF ACTION

(Violation of California Business & Professions Code §§17200 *et seq.*

Against the AXSYS DEFENDANTS)

52.    Transamerica re-alleges and incorporates herein paragraphs 5 through 51, as set forth above.

53.    California Business and Professions Code §§ 17200 *et seq.* prohibits unfair competition in the form of any unlawful, unfair or fraudulent business act or practice.  Business and Professions Code section 17203 allows for awards or judgments "as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition."

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

-13-
COMPLAINT

96

54. California Business and Professions Code section 17204 allows "any person who has suffered injury in fact and has lost money or property as a result of such unfair competition" to bring suit for unfair competition.

55. Transamerica has suffered an injury in fact has lost money as a direct result of the unlawful, unfair and/or fraudulent business acts and practices of the AXSYS DEFENDANTS, and each of them, as described herein.

56. The AXSYS DEFENDANTS, and each of them, profited substantially from their unlawful, unfair and fraudulent business acts and practices in that they received ill-gotten commissions paid by Transamerica in connection with the sale of the IUL policies issued as a result of the insurance scam alleged herein.

57. To date, as a direct and proximate result of their unlawful, unfair and/or fraudulent acts and practices, the AXSYS DEFENDANTS have received ill-gotten commissions paid by Transamerica on the IUL policies at issue in an amount to be proven at trial but believed to be well in excess of the jurisdiction of this Court.

58. Transamerica is entitled to recover all amounts by which the AXSYS DEFENDANTS, and each of them, have been unjustly enriched by virtue of their unlawful, unfair, and/or fraudulent business acts and practices in the form of restitution, in an amount to be proven at trial.

59. Transamerica thus seeks an order requiring the AXSYS DEFENDANTS, and each of them, to disgorge all of their ill-gotten commissions, and any and all of the profits and gains they reaped by virtue of their conduct, and restore all such amounts to Transamerica which were unlawfully taken by such defendants, and each of them, through the wrongful insurance scam described herein.

60. Transamerica further seeks an order permanently restraining, enjoining and prohibiting the AXSYS DEFENDANTS, and each of them, from engaging in the unlawful and unlicensed solicitation, sale and negotiation of life insurance as described herein to ensure that the insurance scam does not continue unabated and does not continue to negatively impact Transamerica or other life insurers or consumers.

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

-14-
COMPLAINT

97

61.     In addition to the foregoing relief, pursuant to California Code of Civil Procedure § 1021.5, Transamerica is entitled to and hereby seeks an award of reasonable attorneys' fees relating to its prosecution of this cause of action.

## SECOND CAUSE OF ACTION

(For Violations of Racketeer Influenced and Corrupt Organizations Act;

Section 1962(c) of Title 18 of the United States Code

Against the AXSYS DEFENDANTS)

62.     Transamerica re-alleges and incorporates herein paragraphs 5 through 51 and 53 through 61, as set forth above.

63.     Section 1962(c) of Title 18 of the United States Code provides that "it is unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

64.     Section 1964(c) of Title 18 of the United States Code permits civil suits by any person injured in his business or property by reason of a violation of Section 1962 of Title 18 of the United States Code and further provides that the person injured "shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee."

65.     The AXSYS DEFENDANTS, and each of them, and their co-conspirators were associated-in-fact to form an enterprise, which had an on-going organization with its various associates functioning as a continuing unit for the common purpose of engaging in the conduct described herein for economic gain at the expense of Transamerica.  The above-described enterprise had, at all relevant times herein, an ascertainable structure distinct from that inherent in the conduct of the pattern of racketeering activity described herein.

66.     The AXSYS DEFENDANTS, and each of them, as well as their co-conspirators are "persons" as defined in Section 1961(3) of Title 18 of the United States Code, all of whom are and were at all relevant times separate and distinct from the aforementioned enterprise but associated

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

-15-
COMPLAINT

98

1    with that enterprise through, among other things, causing the formation of the enterprise, organizing

2    the enterprise, managing the enterprise, funding the enterprise, and/or acting in a manner that

3    sustained the existence, advancement and/or purpose of the enterprise.

4        67.    Transamerica is informed and believes, and on that basis alleges, that the AXSYS

5    DEFENDANTS, and each of them, as well as their co-conspirators have conducted or participated,

6    directly and indirectly, in the conduct of the above-described enterprise's affairs through an on-

7    going and continuous pattern of racketeering activity, as defined under Section 1961(1) of Title 18

8    of the United States Code, comprised of at least the following predicate acts, all of which occurred

9    within approximately two years of one another:

10

11        a.    Devising or intending to devise a scheme or artifice to defraud Transamerica, and

12            obtaining money from Transamerica by means of false or fraudulent pretenses and

13            representations, by means of wire (18 U.S.C. §1961(1); 18 U.S.C § 1343) by

14            submitting or causing the submission of IUL policy applications, and related

15            application and policy material, relating to approximately 172 IUL policies to

16            Transamerica which contained materially false misrepresentations regarding, among

17            other things, the annual income and net worth of the applicants (by falsely inflating

18            the figures), the purposes of and reasons for the insurance applied for (making the

19            purpose and reason appear legitimate), and the relationships with and contacts

20            between the applicant and the independent producers who purportedly sold the

21            policies (making it appear as if the agent was intimately involved in the process and

22            met with the applicant when that was false in most cases).  Among other things,

23            these misrepresentations were made for the purpose of increasing the face value of

24            the policy (and thus increasing commissions), to reduce the chances of suspicion and

25            inquiry by Transamerica during the underwriting process, and to increase the chance

26            Transamerica would issue the policies.

27        b.    Devising or intending to devise a scheme or artifice to defraud Transamerica, and

28            obtaining money from Transamerica by means of false or fraudulent pretenses and

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

-16-
COMPLAINT

99

representations, by means of wire (18 U.S.C. §1961(1); 18 U.S.C § 1343) by submitting or causing the submission of IUL policy applications, and related application and policy material, relating to approximately 172 IUL policies to Transamerica which contained forged and/or "cut and paste" signatures of the applicants. Among other things, application and policy documents, including portions of applications, policy illustrations, policy amendments, and delivery certificates, all of which Transamerica requires be executed by the applicant as a condition to the issuance of life insurance coverage, routinely contained inauthentic applicant signatures. In the absence of signatures on the aforementioned required policy documentation, or had Transamerica been aware that the signatures were inauthentic, the IUL policies would not have been issued.

c. Devising or intending to devise a scheme or artifice to defraud Transamerica, and obtaining money from Transamerica by means of false or fraudulent pretenses and representations, by means of wire (18 U.S.C. §1961(1); 18 U.S.C § 1343) by submitting or causing the submission of IUL policy applications, and related application and policy material, misrepresenting and concealing the source of the premium payments for IUL policies by conveying, or causing to be conveyed, in writing to Transamerica that the source of the premium was the applicant, the applicant's business or a person closely related to the applicant when, in fact, the source of the premium funds was one or more of the AXSYS DEFENDANTS and/or their co-conspirators. Had Transamerica been aware that the applicants or proposed policy owners (if other than the applicants) were not paying the premium for the IUL policies issued but that the source of the funds was one or more of the AXSYS DEFENDANTS or their co-conspirators, it would not have issued the IUL policies as such premium funding was and is contrary to Transamerica's rules, guidelines, and policies as well as contrary to the legitimate purposes of life insurance coverage.

d. Devising or intending to devise a scheme or artifice to defraud Transamerica, and obtaining money from Transamerica by means of false or fraudulent pretenses and

-17-
COMPLAINT

representations, by means of mail (18 U.S.C. §1961(1); 18 U.S.C § 1341) by submitting or causing the submission of premium checks to Transamerica for IUL policies which concealed the true payor(s) of the premium and which, in many cases, were altered, fabricated and/or forged to make the payment appear as if it originated with the applicant, the applicant's business and/or someone closely related to the applicant. Had Transamerica been aware of the aforementioned fraud and deception in the payment of premiums, it would not have issued the IUL policies.

e.  Devising or intending to devise a scheme or artifice to defraud Transamerica, and obtaining money from Transamerica by means of false or fraudulent pretenses and representations, by means of mail (18 U.S.C. §1961(1); 18 U.S.C § 1341) by submitting or causing the submission of premium to Transamerica for IUL policies by means of cashier checks purchased by one or more of the AXSYS DEFENDANTS, or their co-conspirators, so as to mislead and deceive Transamerica into believing that the applicant or prospective policy owner had paid the premiums for the policy. Had Transamerica been aware of the aforementioned fraud and deception in the payment of premiums, it would not have issued the IUL policies.

f.  Devising or intending to devise a scheme or artifice to defraud Transamerica, and obtaining money from Transamerica by means of false or fraudulent pretenses and representations, by means of wire or mail (18 U.S.C. §1961(1); 18 U.S.C § 1341; 18 U.S.C. § 1343) by submitting or causing the submission of written representations to Transamerica designed to (i) mislead Transamerica into issuing IUL policies it would not have issued had it known the true facts, including written representations designed to make it appear as if premiums originated with the applicant or prospective policy owner and attesting to the legitimacy and source of premium payments and (ii) cover up and mislead Transamerica concerning the facts underlying the insurance scam as described herein.

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

-18-
COMPLAINT

68.     Transamerica is informed and believes, and on that basis alleges, that the foregoing alleged predicate acts, which commenced in or about November 2011, were perpetrated for the purpose of inducing Transamerica to issue IUL policies that it would not have otherwise issued had it been aware of the true facts. By defrauding Transamerica in this manner, the AXSYS DEFENDANTS were able to reap, and did reap, a substantial economic benefit to the detriment of Transamerica due to the compensation structure applicable to Transamerica's IUL policies (as alleged in detail above). Transamerica is informed and believes, and on that basis alleges, that none of the IUL policies issued by reason of the acts described herein were procured for a legitimate purpose or procured by legitimate means. In fact, as alleged above, all or substantially all of the IUL policies that were issued as a result of the wrongful acts alleged herein have lapsed or will lapse shortly due to the failure to pay second year premium.

69.     The above-described pattern of racketeering activity involved instrumentalities of interstate commerce, specifically interstate wire (including facsimile, e-mail and/or telephone) and mail used by the AXSYS DEFEDANTS, and each of them, and their co-conspirators, to transmit, and facilitate the transmission of, documentation and information integral to their racketeering activity to Transamerica's out-of-state offices.

70.     Transamerica was injured in its business and/or property by reason of the above-alleged racketeering activity in an amount to be proven at trial but believed to be in excess of $5.5 million, representing commissions paid by Transamerica above premium received for the IUL policies, as well as underwriting, administrative and legal expenses incurred in connection with the IUL policies issued due to the conduct of the enterprise as described herein. But for the conduct of the enterprise, as described above, Transamerica would not have issued the IUL policies at issue and would not have suffered any financial injury.

71.     By virtue of the above-described conduct racketeering activity, which violates Section 1962(c) of Title 18 of the United States Code, Transamerica is further entitled to treble damages from the AXSYS DEFENDANTS, and each of them, as well as its reasonable attorneys' fees relating to the prosecution of this action.

-19-
COMPLAINT

### THIRD CAUSE OF ACTION

(For Fraud-Deceit Against the AXSYS DEFENDANTS)

72.    Transamerica re-alleges and incorporates herein paragraphs 5 through 51, 53 through 61, and 63 though 71, as set forth above.

73.    Beginning in or about November 2011, and continuing during all relevant times herein, the AXSYS DEFENDANTS, and specifically, KITCHEN, KARRAS and BOSY on behalf of AXSYS, KARRAS on behalf of ACADEMIC, and STEINBERG on behalf of STEINBERG EQUITY, with the assistance, support and knowledge of the co-conspirators, purposely and knowingly misrepresented and concealed material facts from Transamerica concerning the applications and payment of premium for approximately 172 IUL policies, as alleged specifically above (including as alleged in paragraphs 39, 42, 43, 44, 47 and 67 a-f), all of which constituted fraud and deceit in furtherance of the insurance scam alleged herein. The AXSYS DEFENDANTS' fraud and deceit was, at all relevant times, pervasive and continuous across all applications and premium payments for all IUL policies at issue herein.

74.    The fraud and deceit of the AXSYS DEFENDANTS, and each of them, as well as their co-conspirators, was directed at Transamerica and was specifically intended to defraud and induce Transamerica into issuing the IUL policies and paying commissions on the "sale" of such IUL policies.

75.    Transamerica relied to its detriment on the fraud and deceit of the of the AXSYS DEFENDANTS, and each of them, by issuing the IUL policies at issue herein, paying commissions, and incurring the costs associated with the underwriting and administration of such policies. Had Transamerica been aware of the fraud and deceit described herein, it would never have issued any of the approximately 172 IUL policies at issue in this lawsuit and would thus not have suffered the financial harm alleged herein.

76.    Transamerica was damaged as a result of the AXSYS DEFENDANTS fraudulent insurance scam in an amount to be proven at trial but believed to be in excess of $5.5 million, representing commissions paid by Transamerica above premium received for the IUL policies, as

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

-20-
COMPLAINT

103

1  well as underwriting, administrative and legal expenses incurred in connection with the IUL

2  policies issued due to the fraudulent conduct described herein.

3       77.    The AXSYS DEFENDANTS' conduct, as described herein, was perpetrated with

4  oppression, fraud and/or malice thus entitling Transamerica to recover exemplary and punitive

5  damages pursuant to California Code of Civil Procedure § 3294.

6

7  **FOURTH CAUSE OF ACTION**

8  (For Unjust Enrichment Against the AXSYS DEFENDANTS)

9       78.    Transamerica re-alleges and incorporates herein paragraphs 5 through 51, 53 through

10  61, 63 through 71, and 73 though 77, as set forth above.

11       79.    Transamerica is informed and believes, and on that basis alleges, that the AXSYS

12  DEFENDANTS, and DOES 1 through 100, received a substantial portion of the commissions paid

13  by Transamerica in connection with the IUL policies at issue as a result of the insurance scam

14  described herein.

15       80.    The receipt of such commissions paid by Transamerica as a result of the AXSYS

16  DEFENDANTS' wrongful conduct led to the unjust enrichment of the AXSYS DEFENDANTS,

17  and each of them. Transamerica is informed, believes and on that basis alleges that the AXSYS

18  DEFENDANTS may have profited in other yet to be discovered manners as a result of their

19  wrongful conduct as alleged herein.

20       81.    Transamerica is informed, believes and on that basis alleges that as a result of the

21  AXSYS DEFENDANTS wrongful and unlawful conduct and their unjust enrichment thereby at

22  Transamerica's expense, the AXSYS DEFENDANTS, and each of them, owes Transamerica

23  restitution and the disgorgement of their ill-gotten gains, in a total amount to be proven at trial.

24  ///

25  ///

26  ///

27  ///

28  ///

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

-21-
COMPLAINT

## FIFTH CAUSE OF ACTION

(For Negligence Against the AXSYS DEFENDANTS)

82. Transamerica re-alleges and incorporates herein paragraphs 5 through 51, 53 through 61, 63 through 71, 73 though 77, and 79 through 81, as set forth above.

83. The AXSYS DEFENDANTS, and each of them, engaged in the conduct alleged herein in a manner intended to affect Transamerica; namely, to induce Transamerica into issuing IUL policies to individuals who did not require, did not need and could not afford such insurance and paying commissions related to the "sale" of such policies.

84. It was reasonably foreseeable to the AXSYS DEFENDANTS, and each of them, that by engaging in the wrongful conduct alleged herein, Transamerica would suffer harm; namely, Transamerica would pay up front commissions that exceeded the target first year premium for the policies, all (or substantially all) of the IUL policies would lapse for failure to pay second year premium, and Transamerica would thus be unable to recoup its costs associated with the acquisition of such policies.

85. As a direct result of the conduct of the AXSYS DEFENDANTS, and each of them, as alleged herein, there was a high degree of certainty that Transamerica would suffer economic injury and, in fact, Transamerica has suffered, and continues to suffer, significant economic injury.

86. The AXSYS DEFENDANTS, and each of them, owed Transamerica a duty of care to refrain from engaging in the harmful conduct alleged herein.

87. By engaging the conduct alleged herein, including by orchestrating and executing on the plan to induce Transamerica into issuing IUL policies and paying commissions on such policies for no reason other than to profit at the expense of Transamerica, the AXSYS DEFENDANTS, and each of them, breached the foregoing duty of care and thus acted negligently.

88. The breach of the foregoing duty of care by the AXSYS DEFENDANTS, and each of them, was a substantial factor in causing damage to Transamerica.

/ / /
/ / /
/ / /

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

-22-
COMPLAINT

105

1    89.    Transamerica was damaged as a result of the negligence of the AXSYS

2 DEFENDANTS, and each of them, in an amount to be proven at trial but believed to be in excess of

3 $5.5 million.

4

5              **SIXTH CAUSE OF ACTION**

6         (For Negligent Misrepresentation Against the AXSYS DEFENDANTS)

7    90.    Transamerica re-alleges and incorporates herein paragraphs 5 through 51, 53 through

8 61, 63 through 71, 73 though 77, 79 through 81, and 83 through 89, as set forth above.

9    91.    Beginning in or about November 2011, and continuing during all relevant times

10 herein, the AXSYS DEFENDANTS, and specifically, KITCHEN, KARRAS and BOSY on behalf

11 of AXSYS, KARRAS on behalf of ACADEMIC, and STEINBERG on behalf of STEINBERG

12 EQUITY, with the assistance, support and knowledge of the co-conspirators, negligently

13 misrepresented and/or concealed material facts from Transamerica concerning the applications and

14 payment of premium for approximately 172 IUL policies, as alleged specifically above (including

15 as alleged in paragraphs 39, 42, 43, 44, 47 and 67 a-f), all of which constituted negligent

16 misrepresentation and concealment in furtherance of the insurance scam alleged herein.  The

17 AXSYS DEFENDANTS' negligent misrepresentation and concealment was, at all relevant times,

18 pervasive and continuous across all applications and premium payments for all IUL policies at issue

19 herein.

20    92.    The negligent misrepresentation and concealment of the AXSYS DEFENDANTS,

21 and each of them, as well as their co-conspirators, was directed at Transamerica and was

22 specifically intended to induce Transamerica into issuing the IUL policies and paying commissions

23 on the "sale" of such IUL policies.

24    93.    Transamerica relied to its detriment on the negligent misrepresentation and

25 concealment of the of the AXSYS DEFENDANTS, and each of them, by issuing the IUL policies at

26 issue herein, paying commissions, and incurring the costs associated with the underwriting and

27 administration of such policies.  Had Transamerica been aware of the negligent misrepresentation

28

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

-23-
COMPLAINT

106

1  and concealment described herein, it would never have issued any of the approximately 172 IUL

2  policies at issue in this lawsuit and would thus not have suffered the financial harm alleged herein.

3       94.     Transamerica was damaged as a result of the AXSYS DEFENDANTS negligent

4  misrepresentation and concealment in an amount to be proven at trial but believed to be in excess of

5  $5.5 million, representing commissions paid by Transamerica above premium received for the IUL

6  policies, as well as underwriting, administrative and legal expenses incurred in connection with the

7  IUL policies issued due to the conduct described herein.

8

9       WHEREFORE, Transamerica prays as follows:

10

11  As to the First Cause of Action

12  1.     For an award against the AXSYS DEFENDANTS, and each of them, directing each

13          to disgorge any and all of the ill-gotten commissions, profits and gains they reaped

14          by way of their unlawful, unfair, and fraudulent business acts as described herein and

15          restore such amounts to Transamerica.

16  2.     For an order permanently restraining and enjoining the AXSYS DEFENDANTS, and

17          each of them, from engaging in the unlawful and wrongful conduct alleged herein,

18          including restraining such defendants from the unlawful marketing, soliciting, or

19          selling life insurance.

20  3.     For such other temporary or permanent injunctive relief as the Court deems

21          appropriate to curtail the unfair business practices alleged herein and restore to

22          Transamerica all ill-gotten commissions, profits and gains reaped by way of the

23          AXSYS DEFENDANTS' unlawful, unfair, and fraudulent business acts.

24  4.     For an award of attorneys' fees pursuant to California Code of Civil Procedure

25          § 1021.5.

26

27

28

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

-24-
COMPLAINT

107

<u>As to the Second Cause of Action</u>

1.  For compensatory, special, and/or consequential damages according to proof but in an amount not less than $5.5 million.

2.  For treble damages pursuant to Section 1964(c) of Title 18 of the United States Code.

3.  For reasonable attorneys' fees pursuant to Section 1964(c) of Title 18 of the United States Code.

4.  For pre-judgment interest at the legal rate.

<u>As to the Third Cause of Action</u>

1.  For compensatory, special, and/or consequential damages according to proof but in an amount not less than $5.5 million.

2.  For exemplary and punitive damages pursuant to California Code of Civil Procedure § 3294.

3.  For pre-judgment interest at the legal rate.

<u>As to the Fourth Cause of Action</u>

1.  For restitution and disgorgement in favor of Transamerica in the amount of the ill-gotten gains to the AXSYS DEFENDANTS by reason of their wrongful conduct as alleged herein.

2.  For pre-judgment interest at the legal rate.

<u>As to the Fifth Cause of Action</u>

1.  For compensatory, special, and/or consequential damages according to proof but in an amount not less than $5.5 million.

2.  For pre-judgment interest at the legal rate.

-25-
COMPLAINT

As to the Sixth Cause of Action

1.      For compensatory, special, and/or consequential damages according to proof but in an amount not less than $5.5 million.

2.      For pre-judgment interest at the legal rate.

As to All Causes of Action

1.      For costs according to proof.

2.      For such other relief as the Court deems just and proper.

Dated:  September 19, 2013                        BARGER & WOLEN LLP


                                                 By:

                                                 ANDREW S. WILLIAMS
                                                 SANDRA I. WEISHART
                                                 VIVIAN I. ORLANDO
                                                 Attorneys for Plaintiff
                                                 Transamerica Life Insurance Company

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

-26-
COMPLAINT

109

# EXHIBIT 3

```
1   Sterling Scott Winchell, PC (147054)
    16148 Sand Canyon Ave.
2   Irvine, Ca 92618
    Phone: 949-387-9191
3   Fax  : 949-387-9192
    email: winchell@OCLawSolutions.com
4
5   Attorneys for Defendants
    STEINBERG EQUITY PARTNERS LLC, a
6   Nevada Limited Liability Company;
    and WOLFGANG STEINBERG, an individual
7
8
9              SUPERIOR COURT FOR THE STATE OF CALIFORNIA
10                 IN AND FOR THE COUNTY OF ORANGE
11
12
13  TRANSAMERICA LIFE INSURANCE    )   CASE NO:  30-2013 00676523
    COMPANY, an Iowa Corporation,  )
14                                 )   NOTICE  TO  ADVERSE  PARTY  OF
                                   )   FILING OF NOTICE OF REMOVAL OF
15               Plaintiff,        )   ACTION  PURSUANT  TO  28  USC
                                   )   SECTION   1441   (A)   [FEDERAL
16  vs.                            )   QUESTION]
                                   )
17  AXSYS GROUP, INC., a           )
    California corporation;        )
18  MANUELA "ELA" KITCHEN, an      )
    individual; ACADEMIC BRAIN     )
19  INSTITUTE, INC., a Nevada      )
    corporation; DORIS E. KARRAS,  )
20  an individual; GEORGE BOSY,    )
    an individual; STEINBERG       )
21  EQUITY PARTNERS, LLC, a        )
    Nevada Limited Liability       )
22  Company; WOLFGANG STEINBERG,   )
    an individual; and DOES 1      )
23  through 100, Inclusive,        )
                                   )
24               Defendants.       )
                                   )
25  _____
26      TO TRANSAMERICA LIFE INSURANCE COMPANY, an Iowa Corporation, and
27  its counsel of Record
28
    _____
    NOTICE TO ADVERSE PART OF REMOVAL1
```

ELECTRONICALLY FILED
Superior Court of California,
County of Orange
10/24/2013 at 11:31:00 AM
Clerk of the Superior Court
By Joseph Tran,Deputy Clerk

111

1     NOTICE IS HEREBY GIVEN   that Defendants STEINBERG EQUITY

2 PARTNERS LLC, a Nevada Limited Liability Company and WOLFGANG

3 STEINBERG, an individual, filed their Notice of Removal of Action

4 pursuant to 28 U.S.C. Section 1441 (a) with the United States

5 District Court, Central District, on October 22, 2013. A true and

6 correct copy of the Notice is attached hereto as Exhibit A.

7

8 DATED: October 22, 2013    BY:

9                  Sterling Scott Winchell

                   Attorney for Defendants

10               STEINBERG EQUITY PARTNERS LLC,

                   a Nevada Limited Liability Company

11               and WOLFGANG STEINBERG, an individual

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27
28

NOTICE TO ADVERSE PART OF REMOVAL2

**112**

am over the age of 18 and not a party to within action; my business address is 16148 Sand Canyon Ave., Irvine, Ca 92618.

On October 23, 2013 I served the following document, attached hereto as Exhibit A, described as **NOTICE TO ADVERSE PARTY OF FILING OF NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 USC SECTION 1441 (A) [FEDERAL QUESTION]** by depositing the same in a sealed envelope, and then depositing the envelope in the United States Mail with first class postage affixed, at Irvine, California, addressed to:

Andrew S. Williams, Esq.
awilliams@bargerwolen.com
Sandra I. Weishart, Esq.
sweishart@bargerwolen.com
Vivian Orlando, Esq.
vorlando@bargerwolen.com
Barger & Wolen, LLP
633 W. 5th St, 47th Floor
Los Angeles, Ca 90071
tel: 213-680-2800
fax: 213-614-7399

A true and correct copy of the Notice to Adverse Party is attached hereto as Exhibit A and incorporated herein by reference.

I declare under penalty of perjury under the laws of the state of California and the United States of America that the above is true and correct.

Executed on October 23, 2013 at Irvine, California.

_____
STERLING SCOTT WINCHELL

CERTIFICATE OF SERVICE OF
NOTICE TO ADVERSE PART OF REMOVAL2

113

# EXHIBIT A

1  Sterling Scott Winchell, PC (147054)
   16148 Sand Canyon Ave.
2  Irvine, Ca 92618
   Phone: 949-387-9191
3  Fax  : 949-387-9192
   email: winchell@OCLawSolutions.com
4

5  Attorneys for Defendants
   STEINBERG EQUITY PARTNERS LLC, a
6  Nevada Limited Liability Company;
   and WOLFGANG STEINBERG, an individual
7

8

9                  UNITED STATES DISTRICT COURT

10        IN AND FOR THE CENTRAL DISTRICT OF CALIFORNIA

11

12  TRANSAMERICA LIFE INSURANCE   )   CASE NO:    SACV13-01658 AG (RNBx)
    COMPANY, an Iowa Corporation, )
13                                )   NOTICE OF   REMOVAL OF ACTION
                                  )   PURSUANT TO 28 USC SECTION 1441
14               Plaintiff,       )   (A) [FEDERAL QUESTION]
                                  )
15                                )
                                  )
16  vs.                           )
                                  )
17  AXSYS GROUP, INC., a          )
    California corporation;       )
18  MANUELA "ELA" KITCHEN, an     )
    individual; ACADEMIC BRAIN    )
19  INSTITUTE, INC., a Nevada     )
    corporation; DORIS E. KARRAS, )
20  an individual; GEORGE BOSY,   )
    an individual; STEINBERG      )
21  EQUITY PARTNERS, LLC, a       )
    Nevada Limited Liability      )
22  Company; WOLFGANG STEINBERG,  )
    an individual; and DOES 1     )
23  through 100, Inclusive,       )
                                  )
24               Defendants.      )
    _____)

25

26     TO THE CLERK OF THE ABOVE ENTITLED COURT:

27

28     NOTICE IS HEREBY GIVEN  that Defendants STEINBERG EQUITY

_____
NOTICE OF REMOVAL                 1

PARTNERS LLC, a Nevada Limited Liability Company and WOLFGANG STEINBERG, an individual hereby remove to this court the state court action described below.

1. On September 19, 2013, an action was commenced in the Superior Court of the State of California, in and for the County of Orange entitled TRANSAMERICA LIFE INSURANCE ) COMPANY, an Iowa Corporation, Plaintiff, vs. AXSYS GROUP, INC., a California corporation; MANUELA "ELA" KITCHEN, an individual; GEORGE BOSY, an individual; STEINBERG EQUITY PARTNERS, LLC, a Nevada Limited Liability Company; WOLFGANG STEINBERG, an individual; and DOES 1 through 100, Inclusive, Defendants, as case number 30-2013 00676523. A true and correct copy of the filed complaint is attached hereto as Exhibit A.

2. The first date upon which defendants STEINBERG EQUITY PARTNERS LLC, a Nevada Limited Liability Company and WOLFGANG STEINBERG, an individual received a copy of the said complaint was September 24, 2013, when these defendants were served with a copy of the complaint and a summons from the said state court. A true and correct copy of the summons is attached hereto as Exhibit B.

3. At the current time, the Superior Court file in the said case currently contains the following documents: a Civil Case Cover Sheet filed by Plaintiff Transamerica life Insurance Company on 9/19/2013, attached hereto as Exhibit C; a Receipt for Payment Received for the Complaint in the amount of $435.00, attached hereto as Exhibit D; a

NOTICE OF REMOVAL                                    2

Case Assignment Order filed by the Court on September 19, 2013, attached hereto as Exhibit E; and a Case Management Conference Notice, filed by the court on October 15, 2013, attached hereto as Exhibit F.

4. This action is a civil action of which this court has original jurisdiction under 28 USC Section 1331, and is one which may be removed to this court by defendants pursuant to the provisions of 28 USC 1441(a) in that it arises under the Racketeer Influenced and Corrupt Organizations Act, 18 USC Section 1965.

DATED: October 22, 2013    BY:

Sterling Scott Winchell
Attorney for Defendants
STEINBERG EQUITY PARTNERS LLC,
a Nevada Limited Liability Company
and WOLFGANG STEINBERG, an individual

NOTICE OF REMOVAL                    3

**PROOF OF SERVICE**

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to within action; my business address is 16148 Sand Canyon Ave., Irvine, Ca 92618.

On October 23, 2013 I served the foregoing document described as **NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 USC SECTION 1441 (A) [FEDERAL QUESTION]** by depositing the same in an envelope, and then depositing the envelope in the United States Mail at Irvine, California, with first class postage affixed, addressed to:

Andrew S. Williams, Esq.
awilliams@bargerwolen.com
Sandra I. Weishart, Esq.
sweishart@bargerwolen.com
Vivian Orlando, Esq.
vorlando@bargerwolen.com
Barger & Wolen, LLP
633 W. 5th St, 47th Floor
Los Angeles, Ca 90071
tel: 213-680-2800
fax: 213-614-7399

I declare under penalty of perjury under the laws of the state of California and the United States of America that the above is true and correct.

Executed on October 23, 2013 at Irvine, California.

STERLING SCOTT WINCHELL

NOTICE OF REMOVAL                    4

# EXHIBIT D

ELECTRONICALLY FILED
Superior Court of California,
County of Orange

11/13/2013 at 02:25:00 PM

Clerk of the Superior Court
By Robert Renison, Deputy Clerk

1 │ CALLAHAN & BLAINE, APLC
Daniel J. Callahan (SBN 91490)
2 │ Michael J. Sachs (SBN 134468)
James R. Rouse (SBN 145152)
3 │ 3 Hutton Centre Drive, Ninth Floor
Santa Ana, California 92707
4 │ Telephone: (714) 241-4444
Facsimile: (714) 241-4445
5 │
6 │ Attorneys for Petitioners MONICA STEINBERG and MS WEALTH MANAGEMENT &
INSURANCE SERVICES, INC.
7 │
8 │             SUPERIOR COURT OF CALIFORNIA
9 │       COUNTY OF ORANGE, CENTRAL JUSTICE CENTER
10 │
11 │ MONICA STEINBERG, an individual, and   )   Case No. 30-2013-00686091-CU-PT-CJC
MS WEALTH MANAGEMENT &                )
12 │ INSURANCE SERVICES, INC., a          )   Honorable Charles Margines
California corporation,                )   Department C19
13 │                                       )
          Petitioner,                   )   NOTICE OF HEARING ON PETITION TO
14 │                                       )   STAY ARBITRATION
                                         )
15 │ v.                                    )   [Petition to Stay Arbitration and Request for
                                         )   Judicial Notice filed on November 7, 2013]
16 │ TRANSAMERICA LIFE INSURANCE           )
COMPANY, an Iowa corporation and      )
17 │ AMERICAN ARBITRATION                  )   Date:   January 15, 2014
ASSOCIATION, INC., a New York not-for- )   Time:   1:30 p.m.
18 │ profit corporation,                   )   Dept.:  C19
                                         )   Reservation No.: 71841325
19 │          Respondents.                 )
_____ )
20 │
21 │ TO RESPONDENTS AND THEIR ATTORNEYS OF RECORD HEREIN:
22 │       PLEASE TAKE NOTICE that on January 15, 2014 at 1:30 p.m., or as soon thereafter as
23 │ the matter can be heard in Department C19 of the above-entitled Court, located at 700 Civic
24 │ Center Drive West, Santa Ana, California 92701, Petitioners Monica Steinberg and MS Wealth
25 │ Management & Insurance Services, Inc. ("Petitioners") will seek an order of this Court to stay
26 │ further arbitration proceedings in American Arbitration Association Case 50 195 T 00896 13 until
27 │ resolution of U.S. District Court for the Central District of California Case No. SACV13-01658
28 │

1

NOTICE OF HEARING

1  AG (RNBx) and provide the parties the option of joining the claims made in arbitration

2  proceedings with the court proceedings.

3        Petitioners' request is based upon this Notice, the previously filed Petition to Stay

4  Arbitration with supporting Memorandum of Points and Authorities and Request for Judicial

5  Notice, upon all papers, pleadings and records on file herein, and upon such other evidence and

6  argument as may be presented at the time of the hearing.

7

8  Dated: November 12, 2013              CALLAHAN & BLAINE, APLC

9

10                                       By: _____
                                             Michael J. Sachs
11                                           James R. Rouse
                                         Attorneys for Petitioners MONICA
12                                       STEINBERG and MS WEALTH
                                         MANAGEMENT & INSURANCE
13                                       SERVICES, INC.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  G:\Clients\3418\3418-02\Pleadings\Ntc Hrg Petition Stay.wpd

                                2

                                                        _____
                                                        NOTICE OF HEARING

EXHIBIT E

122

ELECTRONICALLY FILED
Superior Court of California,
County of Orange

11/13/2013 at 02:25:00 PM
Clerk of the Superior Court
By Robert Renison, Deputy Clerk

1   **CALLAHAN & BLAINE, APLC**
    Daniel J. Callahan (SBN 91490)
2   Michael J. Sachs (SBN 134468)
    James R. Rouse (SBN 145152)
3   3 Hutton Centre Drive, Ninth Floor
    Santa Ana, California 92707
4   Telephone: (714) 241-4444
    Facsimile: (714) 241-4445
5
    Attorneys for Petitioners MONICA STEINBERG and MS WEALTH MANAGEMENT &
6   INSURANCE SERVICES, INC.

7

8                   **SUPERIOR COURT OF CALIFORNIA**

9         **COUNTY OF ORANGE, CENTRAL JUSTICE CENTER**

10

11   MONICA STEINBERG, an individual, and   )   Case No. 30-2013-00686091-CU-PT-CJC
    MS WEALTH MANAGEMENT &           )
12   INSURANCE SERVICES, INC., a         )   Honorable Charles Margines
    California corporation,                 )   Department C19
13                                     )
                Petitioner,           )   **PROOF OF SERVICE**
14                                   )
    v.                                 )   [Of Notice of Hearing on Petition to Stay
15                                   )   Arbitration, Petition to Stay Arbitration, and
    TRANSAMERICA LIFE INSURANCE     )   Request for Judicial Notice]
16   COMPANY, an Iowa corporation and     )
    AMERICAN ARBITRATION           )
17   ASSOCIATION, INC., a New York not-for-   )
    profit corporation,                 )
18                                   )
              Respondents.           )
19                                   )

20

21

22

23

24

25

26

27

28

                                          PROOF OF SERVICE

**PROOF OF SERVICE**

1

2        I am employed in the County of Orange, State of California. I am over the age of 18 and not
a party to the within action; my business address is 3 Hutton Centre Drive, Ninth Floor, Santa Ana,

3    California 92707.

4        On **November 13, 2013**, I served the foregoing document(s) entitled as:

5        **1.**     **NOTICE OF HEARING ON PETITION TO STAY ARBITRATION**

6        **2.**     **PETITION TO STAY ARBITRATION**

7        **3.**     **REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF PETITION TO
STAY ARBITRATION**

8
on the interested parties in this action by placing [ ] the original [X] a true copy thereof enclosed

9    to all parties in a sealed envelope addressed as follows:

10             ***\*\*PLEASE SEE ATTACHED SERVICE LIST \*\****

11   **[X]**    **BY MAIL:** I deposited such envelope in the mail at Santa Ana, California. The envelope
was mailed with postage thereon fully prepaid. I am "readily familiar" with the firm's

12   practice of collection and processing correspondence for mailing. It is deposited with the
United States Postal Service on that same day in the ordinary course of business. I am

13   aware that on motion of party served, service is presumed invalid if postal cancellation
date or postage meter date is more than one (1) day after date of deposit for mailing in

14   affidavit.

15   **[ ]**    **BY OVERNITE EXPRESS:** I deposited such envelope for collection and delivery by
Overnite Express with delivery fees paid or provided for in accordance with ordinary

16   business practices. I am "readily familiar" with the firm's practice of collection and
processing packages for overnight delivery by Overnite Express. They are deposited with

17   a facility regularly maintained by Overnite Express for receipt on the same day in the
ordinary course of business.

18
    **[ ]**    **BY E-MAIL OR ELECTRONIC TRANSMISSION:** Based on a court order or an

19   agreement of the parties to accept service by e-mail or electronic transmission, I caused the
document(s) to be sent to the person(s) at the e-mail address(es) listed on the attached

20   service list. I did not receive, within a reasonable time after the transmission, any
electronic message or other indication that the transmission was unsuccessful.

21
    **[ ]**    **BY PERSONAL SERVICE:** I caused such envelope to be delivered by hand by First

22   Legal Support Services to the offices of the addressee(s) listed on the attached service list.

23       I declare under penalty of perjury under the laws of the State of California that the
foregoing is true and correct.

24
    Executed on **November 13, 2013**, at Santa Ana, California.

25

26                                         Dawn Conrad

27

28

                                              1                            PROOF OF SERVICE

1

## SERVICE LIST

2

Steinberg, et al., v. Transamerica Life Insurance Company, et al.
OCSC Case No. 30-2013-00686091-CU-PT-CJC

3

4
Andrew S. Williams, Esq.                    *Attorneys for Transamerica Life*
5
Sandra I. Weishart, Esq.                    *Insurance Company*
Vivian I. Orlando, Esq.
6
BARGER & WOLEN LLP
633 West Fifth Street, 47th Floor
7
Los Angeles, CA 90071
Tel: (213) 680-2800
8
Fax: (213) 614-7399
awilliams@bargerwolen.com
9
sweishart@bargerwolen.com
vorlando@bargerwolen.com

10

11
Carmen Preda
International Case Manager
12
Miroslava Schierholz, LL.M.
ICDR Supervisor
13
INTERNATIONAL CENTRE FOR DISPUTE
RESOLUTION
14
120 Broadway, 21st Floor
New York, NY 10271
15
Tel: (212) 484-3270
Fax: (212) 246-7274
16
PredaC@adr.org
SchierholzM@adr.org

17

18

19

20

21

22

23

24

25

26

27

28
G:\Clients\3418\3418-02\Pleadings\POS - Petition to Stay.wpd

PROOF OF SERVICE

EXHIBIT F

Comprehensive Report



- Print Report

**Important:** The Public Records and commercially available data sources used on reports have errors. Data is sometimes entered poorly, processed incorrectly and is generally not free from defect. This system should not be relied upon as definitively accurate. Before relying on any data this system supplies, it should be independently verified. For Secretary of State documents, the following data is for information purposes only and is not an official record. Certified copies may be obtained from that individual state's Department of State. The criminal record data in this product or service may include records that have been expunged, sealed, or otherwise have become inaccessible to the public since the date on which the data was last updated or collected.

Accurint does not constitute a "consumer report" as that term is defined in the federal Fair Credit Reporting Act, 15 USC 1681 et seq. (FCRA). Accordingly, Accurint may not be used in whole or in part as a factor in determining eligibility for credit, insurance, employment or another permissible purpose under the FCRA.

**Your DPPA Permissible Use:** Civil, Criminal, Administrative, or Arbitral Proceedings
**Your GLBA Permissible Use:** Use by Persons Holding a Legal or Beneficial Interest Relating to the Consumer

## Comprehensive Report

**Date:** 11/21/13
**Reference Code:** 10427.062

Report processed by:

Barger & Wolen LLP
633 West 5th St
Los Angeles, CA 90071-2005
213-680-2800 Main Phone
949-752-6313 Fax

**Report Legend:**
Ⓢ - Shared Address
Ⓓ - Deceased
✔ - Probable Current Address

**Subject Information**
**(Best Information for Subject)**
Name: **MONICA NORA STEINBERG**
Date of Birth: REDACTED/1952
Age: **61**
SSN: REDACTED issued in **New York**
between **1/1/1978** and **12/31/1980**

**AKAs**
**(Names Associated with Subject)**
**MONICA N STEINBERG**
    Age: **61**  SSN: REDACTED-xxxx

REDACTED

MONICA STEINBERG

**Indicators**

Bankruptcy: **Yes**
Property: **Yes**
Corporate Affiliations: **Yes**

Comprehensive Report

Age: 61   REDACTED

**Comprehensive Report Summary:**
  Bankruptcies:
    3 Found
  Liens and Judgments:
    2 Found
  UCC Filings:
    None Found
  Phones Plus:
    4 Found
  People at Work:
    12 Found
  Driver's License:
    None Found
  Address(es) Found:
    0 Verified and 29 Non-Verified Found
  Possible Properties Owned:
    2 Found
  Motor Vehicles Registered:
    None Found
  Watercraft:
    None Found
  FAA Certifications:
    None Found
  FAA Aircrafts:
    None Found
  Possible Criminal Records:
    2 Found
  Sexual Offenses:
    None Found
  Florida Accidents:
    None Found
  Professional Licenses:
    None Found
  Voter Registration:
    None Found
  Hunting/Fishing Permit:
    None Found
  Concealed Weapons Permit:
    None Found
  Possible Associates:
    4 Found
  Possible Relatives:
    1st Degree - 8 Found
    2nd Degree - 2 Found
    3rd Degree - None Found
  Neighbors:
    1st Neighborhood - 6 Found
    2nd Neighborhood - 1 Found
    3rd Neighborhood - 5 Found
    4th Neighborhood - 1 Found
    5th Neighborhood - 5 Found
    6th Neighborhood - 1 Found

**Others Associated With Subjects SSN:**
(DOES NOT usually indicate any type of fraud or deception)

**Address Summary:**

REDACTED , SAN JUAN CAPISTRANO  CA 92675-5516, ORANGE COUNTY ( 2011 - Oct 2013)
REDACTED , LADERA RANCH  CA 92694-0608, ORANGE COUNTY (Oct 2010 - Sep 2013)
REDACTED AGUNA BEACH  CA 92651-3658, ORANGE COUNTY (Oct 2008 - Sep 2012)
REDACTED , MISSION VIEJO  CA 92692-3360, ORANGE COUNTY (Oct 1998 - Apr 2012)

Comprehensive Report                                                                                              2

Comprehensive Report

REDACTED , LADERA RANCH  CA 92694-0613, ORANGE COUNTY (Oct 2011 - Nov 2011)
REDACTED , MISSION VIEJO  CA 92692, ORANGE COUNTY (Feb 2010 - Sep 2011)
REDACTED , NEWPORT BEACH  CA 92663-2482, ORANGE COUNTY (Aug 2009 - Dec 2009)
Utility Locator - Connect Date:  8/7/2009
REDACTED , NEWPORT COAST  CA 92657-1088, ORANGE COUNTY (Aug 2009 - Dec 2009)
Utility Locator - Connect Date:  8/7/2009


REDACTED

**Bankruptcies:**
Date Filed: 02/08/2010   Chapter: 7   Disposition Date: 06/23/2010   Disposition: Discharged
Filing Status: INDIVIDUAL, Voluntary
Case Number: 1011583      Court Location: CALIFORNIA CENTRAL - SANTA ANA

Debtor: MONICA N STEINBERG

SSN:  xxx-xx-xxxx

Potential SSN        REDACTED xxxx
Debtor Address:  REDACTED , MISSION VIEJO  CA 92692-3360

Assets available for unsecured creditors: No
Debtor is self-represented: No
Liabilities:        Assets:

Attorney: STEVEN J FELDMAN ATT AT LAW
FEIN:
Attorney Address: 23151 MOULTON PKWY, LAGUNA HILLS  CA 92653-1206
Attorney Phone Number: 949-461-0028 - PST

Attorney: STEVEN J FELDMAN

REDACTED

Trustee: CHARLES W DAFF

REDACTED
Trustee Address: 2122 N BROADWAY STE 210, SANTA ANA  CA 92706-2614
Trustee Phone Number: 714-541-0301 - PST

Judge Assigned: THEODOR ALBERT
 Creditors Meeting Date: 03/24/2010
Creditors Meeting Time: 09:00
Creditors Meeting Location: RM 3 110 411 W FOURTH ST SANTA ANA CA 92701

Complaints Deadline:
Claims Deadline:

Comprehensive Report

3

EXHIBIT G

Business Search - Business Entities - Business Programs                                         Page 1 of 1



Secretary of State      Administration    Elections    **Business Programs**    Political Reform    Archives    Registries

**Business Entities (BE)**

Online Services
 - **E-File Statements of Information for Corporations**
 - **Business Search**
 - **Processing Times**
 - **Disclosure Search**

**Main Page**

**Service Options**

**Name Availability**

**Forms, Samples & Fees**

**Statements of Information** (annual/biennial reports)

**Filing Tips**

**Information Requests** (certificates, copies & status reports)

**Service of Process**

**FAQs**

**Contact Information**

Resources
 - **Business Resources**
 - **Tax Information**
 - **Starting A Business**

Customer Alerts
 - **Business Identity Theft**
 - **Misleading Business Solicitations**

### Business Entity Detail

Data is updated to the California Business Search on Wednesday and Saturday mornings. Results reflect work processed through Tuesday, November 19, 2013. Please refer to Processing Times for the received dates of filings currently being processed. The data provided is not a complete or certified record of an entity.

| | |
|---|---|
| Entity Name: | MS WEALTH MANAGEMENT & INSURANCE SERVICES, INC. |
| Entity Number: | C3253204 |
| Date Filed: | 10/23/2009 |
| Status: | ACTIVE |
| Jurisdiction: | CALIFORNIA |
| Entity Address: | 27702 CROWN VALLEY PKWY D4 #136 |
| Entity City, State, Zip: | LADERA RANCH CA 92694 |
| Agent for Service of Process: | WOLFGANG STEINBERG |
| Agent Address: | 27702 CROWN VALLEY PKWY, D4 #136 |
| Agent City, State, Zip: | LADERA RANCH CA 92694 |

* Indicates the information is not contained in the California Secretary of State's database.

 • If the status of the corporation is "Surrender," the agent for service of process is automatically revoked. Please refer to California Corporations Code section 2114 for information relating to service upon corporations that have surrendered.
 • For information on checking or reserving a name, refer to Name Availability.
 • For information on ordering certificates, copies of documents and/or status reports or to request a more extensive search, refer to Information Requests.
 • For help with searching an entity name, refer to Search Tips.
 • For descriptions of the various fields and status types, refer to Field Descriptions and Status Definitions.

Modify Search      New Search      Printer Friendly      Back to Search Results

Privacy Statement | Free Document Readers
Copyright © 2013   California Secretary of State

EXHIBIT H

**American Arbitration Association**
*Dispute Resolution Services Worldwide*

Please visit our website at www.adr.org if you would like to file this case online. AAA Case Filing Services can be reached at 877-495-4185.

**COMMERCIAL ARBITRATION RULES**
**DEMAND FOR ARBITRATION**

*MEDIATION: If you would like the AAA to contact the other parties and attempt to arrange a mediation, please check this box. ☐*
*There is no additional administrative fee for this service.*

| Name of Respondent | Name of Representative (if known) |
|---|---|
| Monica Steinberg & MS Wealth Mgmt. & Ins. Serv., Inc. | N/A |
| Address | Name of Firm (if applicable) |
| 31302 Via Las Palmas | |
| [See attachment for MS Wealth Mgmt. & Ins. Serv., Inc. Info] | Representative's Address |

| City | State | Zip Code | City | State | Zip Code |
|---|---|---|---|---|---|
| San Juan Capistrano | CA | 92675- | | | |

| Phone No. | Fax No. | Phone No. | Fax No. |
|---|---|---|---|
| (949) 630-9785 | | | |

| Email Address: | Email Address: |
|---|---|
| marci@madickins.com | |

The named claimant, a party to an arbitration agreement dated _11/8/2011; 2/29/12_ , which provides for arbitration under the Commercial Arbitration Rules of the American Arbitration Association, hereby demands arbitration.

**THE NATURE OF THE DISPUTE**
This dispute involves Steinberg's and MS Wealth Management & Insurance Services, Inc.'s negligent, fraudulent, and/or dishonest business practices in connection with the marketing, application for and sale of Transamerica Indexed Universal Life policies. Transamerica asserts claims for breach of contract, violations of Bus. & Prof. Code sec. 17200 et seq., fraud, negligence, unjust enrichment, and breach of fiduciary duty. (See attached documentation for further description).

| Dollar Amount of Claim $630,000.00 | Other Relief Sought: ☒ Attorneys Fees  ☒ Interest  ☒ Arbitration Costs ☐ Punitive/ Exemplary ☐ Other _____ |
|---|---|

Amount Enclosed $ 6,200.00    In accordance with Fee Schedule: ☐Flexible Fee Schedule   ☒Standard Fee Schedule

PLEASE DESCRIBE APPROPRIATE QUALIFICATIONS FOR ARBITRATOR(S) TO BE APPOINTED TO HEAR THIS DISPUTE:
Knowledge concerning life insurance transactions and insurance agent/producer misconduct

Hearing locale Los Angeles, CA _____ (check one) ☐ Requested by Claimant  ☒ Locale provision included in the contract

| Estimated time needed for hearings overall: | Type of Business: Claimant   Insurance Company |
|---|---|
| _____ hours or  10.00  days | Respondent Insurance Producer |

Is this a dispute between a business and a consumer? ☐Yes ☒ No  Does this dispute arise out of an employment relationship? ☐ Yes ☒ No

If this dispute arises out of an employment relationship, what was/is the employee's annual wage range? Note: This question is required by California law. ☐Less than $100,000 ☐ $100,000 - $250,000 ☐ Over $250,000

You are hereby notified that a copy of our arbitration agreement and this demand are being filed with the American Arbitration Association with a request that it commence administration of the arbitration. The AAA will provide notice of your opportunity to file an answering statement.

| Signature (may be signed by a representative)  Date: 9/19/13 | Name of Representative |
|---|---|
| | Andrew S. Williams (CA Bar # 177926) |
| Name of Claimant | Name of Firm (if applicable) |
| Transamerica Life Insurance Company | Barger & Wolen LLP |
| Address (to be used in connection with this case) | Representative's Address |
| c/o Barger & Wolen LLP, 633 West 5th St., 47th Fl. | 633 West 5th St., 47th Floor |

| City | State | Zip Code | City | State | Zip Code |
|---|---|---|---|---|---|
| Los Angeles | CA | 90071- | Los Angeles | CA | 90071- |

| Phone No. | Fax No. | Phone No. | Fax No. |
|---|---|---|---|
| (213) 680-2800 | (213) 614-7399 | (213) 680-2800 | (213) 614-7399 |

| Email Address: | Email Address: |
|---|---|
| awilliams@bargerwolen.com | awilliams@bargerwolen.com |

To begin proceedings, please send a copy of this Demand and the Arbitration Agreement, along with the filing fee as provided for in the Rules, to: American Arbitration Association, Case Filing Services, 1101 Laurel Oak Road, Suite 100 Voorhees, NJ  08043.  Send the original Demand to the Respondent.

ATTACHMENT TO COMMERCIAL ARBITRATION RULES
DEMAND FOR ARBITRATION

ADDITIONAL RESPONDENT CONTACT INFORMATION:

| | |
|---|---|
| Name: | MS Wealth Management & Insurance Services, Inc. |
| Address: | 27702 Crown Valley Pkwy. Building D4 #136 |
| | Ladera Ranch, CA 92694 |
| Phone No.: | REDACTED |
| E-mail Address: | REDACTED |

AGENT FOR SERVICE OF PROCESS:

| | |
|---|---|
| Entity Name: | MS WEALTH MANAGEMENT & INSURANCE SERVICES, INC. |
| Agent for Service of Process: | WOLFGANG STEINBERG |
| Agent Address: | 27702 CROWN VALLEY PKWY, D4 #136 |
| Agent City, State, Zip: | LADERA RANCH CA 92694 |

134

Andrew S. Williams (177926)
awilliams@bargerwolen.com
Sandra I. Weishart (89782)
sweishart@bargerwolen.com
Vivian I. Orlando (213833)
vorlando@bargerwolen.com
BARGER & WOLEN LLP
633 West Fifth Street, 47th Floor
Los Angeles, California  90071
Telephone:  (213) 680-2800
Facsimile:  (213) 614-7399

Attorneys for Claimant
Transamerica Life Insurance Company

**AMERICAN ARBITRATION ASSOCIATION**

| | |
|---|---|
| TRANSAMERICA LIFE INSURANCE COMPANY,<br><br>        Claimant,<br><br>   vs.<br><br>MONICA STEINBERG, an individual; and MS WEALTH MANAGEMENT & INSURANCE SERVICES, INC., a California corporation,<br><br>        Respondents. | CASE NO.:<br><br>**ALLEGATIONS AND CLAIMS IN SUPPORT OF CLAIMANT TRANSAMERICA LIFE INSURANCE COMPANY'S DEMAND FOR COMMERCIAL ARBITRATION** |

ALLEGATIONS IN SUPPORT OF DEMAND FOR COMMERCIAL ARBITRATION

Claimant Transamerica Life Insurance Company ("Transamerica") alleges in support of its Demand for Commercial Arbitration against Respondents Monica Steinberg ("Steinberg") and MS Wealth Management & Insurance Services, Inc. ("MS Wealth Inc."), as follows:

## TRANSAMERICA'S INDEXED UNIVERSAL LIFE INSURANCE POLICIES

1.      The main purpose of life insurance is to provide financial security to the insured's family, business, or loved ones upon the insured's death.

2.      One category of life insurance is permanent life insurance. Permanent life insurance is not temporary and is intended to remain in force during the insured's entire lifetime, providing premiums are paid as specified in the policy. Unlike permanent life insurance, a second category of insurance, known as term life insurance, typically provides coverage for only a set number of years on a level premium basis (10-30 years) and then is subject to annually renewable term rates at much higher rates than the initial level premiums until the date the policy expires. When the level premium period ends on the term policy, if coverage is still needed the insured would need to provide new evidence of insurability in order to start a new affordable level premium period and avoid the very large increases in premium. As an insured ages, term insurance coverage can become prohibitively expensive, while, in general, permanent insurance can provide the policy owner a way to pre-fund for future charges to provide a more levelized premium approach. Generally, permanent insurance costs more initially and in the short term, but can ultimately be more affordable for long term, lifelong coverage needs.

3.      Universal Life insurance is a form of permanent life insurance. Universal Life insurance policies offer a valuable death benefit and, unlike term life insurance policies, provide the opportunity to build cash values from which the policy owner can borrow or withdraw. The advantage of Universal Life insurance coverage over other forms of permanent insurance (and term life insurance) is that Universal Life insurance gives the policy owner more flexibility over his or her policy to assist in meeting financial goals. For example, (with certain limits) a policy owner can choose the amount, method and timing of his or her premium payments, which in turn determines

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

-1-

ALLEGATIONS IN SUPPORT OF DEMAND FOR COMMERCIAL ARBITRATION

136

1    how the policy value develops.  Universal Life insurance is also an "interest sensitive" product or a

2    "market sensitive" product.  This means that the rates credited to policy values will change over

3    time.  Flexibility of payments, ability to pre-fund for future protection costs, tax-deferred cash value

4    accumulation, coverage options (subject to contract requirements), and the ability to continue

5    coverage for an entire lifetime without ever having to re-qualify from a health standpoint or

6    financially are the primary advantages of Universal Life coverage over term insurance coverage.

7    Because of these advantages, Universal Life insurance can be effectively used in estate planning,

8    business planning, and retirement planning, offering the policy owner a variety of options.

9        4.    One type of Universal Life insurance offered by Transamerica is called "Indexed

10   Universal Life ('IUL') insurance."  Like all Universal Life insurance, net premiums for IUL

11   policies are applied to a fixed account that earns a fixed rate of interest subject to a guaranteed

12   minimum.  Unlike typical Universal Life insurance, a percentage of that value, which is determined

13   by the policy owner, can be allocated to an indexed account and earn interest based in part on

14   changes to outside indexes.  A person might consider IUL coverage if that person is interested in (i)

15   death benefit protection; (ii) greater cash value accumulation potential than traditional universal life

16   insurance; and/or (iii) protection from market-based losses with an interest crediting floor.

17       5.    Transamerica IUL policies are generally sold by appointed independent producers

18   who are affiliated with Transamerica's general agents (collectively referred to herein as

19   "distributors").  Transamerica typically pays distributors of its IUL policies commissions for each

20   sale as follows: the selling producers are paid commissions up to 90% of the first year target

21   premium and the general agent is paid a "commission override" of 55% of the first year target

22   premium in addition to any portion of the 90% commission not paid to the selling producer.

23   Smaller commissions (2% to the producer and 2% for the general agent) are paid for premium paid

24   in excess of the first year target premium.  It is customary, and relatively common, in the life

25   insurance industry for life insurers to pay distributors lump-sum commissions that exceed the first

26   year target premium for the sale of life insurance.  Payment in this manner accounts for, among

27   other things, the considerable time and expense incurred by distributors in marketing, soliciting, and

28

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

-2-
ALLEGATIONS IN SUPPORT OF DEMAND FOR COMMERCIAL ARBITRATION

137

securing applications for life insurance, and the servicing of clients over what tend to be long-term insurance relationships.

6.    When permanent insurance, like IUL insurance, is sold for a legitimate purpose (such as income protection or estate planning), policy owners tend to keep the insurance in force through the payment of premium year after year for extended periods of time and often for the lifetime of the insured. It is thus uncommon for permanent policies to lapse for the non-payment of premium, and particularly rare after the first year. In fact, given the cost of such insurance, it would make no financial sense for an individual to buy permanent life insurance coverage for only one year. Based on Transamerica's experience, the expected lapse rate for its permanent insurance policies is approximately 1% after one year. Permanent life insurance is thus issued by Transamerica with the expectation that (i) the policy owner has a legitimate need for (and wants) the coverage and (ii) the policy owner will keep the coverage in force for many years.

7.    The manner in which commissions are paid on Transamerica IUL policies assumes that most IUL policies will be kept in force for many years and that the vast majority of IUL policies will not lapse due to the policy owner's failure to pay premiums beyond the first year. In fact, given the up-front commission structure, underwriting costs and administrative costs associated with IUL policies, it takes several years of premium payments just for Transamerica to recover the acquisition costs associated with the sale of such products.

### MONICA STEINBERG & MS WEALTH INC.

8.    Steinberg was a contracted Transamerica independent producer who was appointed to sell, and sold, Transamerica IUL policies in California and Nevada.

9.    MS Wealth Inc. was a contracted Transamerica independent producer with Transamerica in California and Nevada. Transamerica is informed and believes, and on that basis alleges, that Steinberg is, and at all relevant times was, an owner, shareholder, officer, employee, agent and/or principal of MS Wealth Inc. and that Steinberg operated and controlled MS Wealth Inc. Transamerica is informed and believes, and on that basis alleges, that Steinberg engaged in

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

-3-

ALLEGATIONS IN SUPPORT OF DEMAND FOR COMMERCIAL ARBITRATION

138

1  conduct alleged herein in her own name and in her capacity as an owner, shareholder, officer,

2  employee, agent and/or principal of MS Wealth Inc.  Transamerica is informed and believes, and on

3  that basis alleges, that MS Wealth Inc. is, and at all relevant times was, the alter ego of Steinberg

4  and was a mere instrumentality, agent, or conduit for Steinberg, who controls and dominates the

5  actions of MS Wealth Inc.  Transamerica is further informed and believes, and on that basis alleges,

6  that each respondent is, and at all relevant times was, the agent, employee, representative, or co-

7  conspirator of the other respondent and was at all times acting within the course and scope of such

8  agency, employment, authority, or conspiracy with the knowledge and approval of and in concert

9  with the other.

10      10.    In and after February 2013, Transamerica discovered that certain of its distributors,

11  including Steinberg, were engaging in a scheme (or schemes) to defraud Transamerica out of

12  commission payments paid in connection with the sale of its IUL policies.  This arbitration arises

13  out of Steinberg's negligent, fraudulent, and dishonest business practices in connection with the

14  marketing, application for and sale of at least seventeen (17) Transamerica IUL policies.

15      11.    Transamerica is informed and believes, and on that basis alleges, that Steinberg

16  secretly and in contravention of Transamerica's rules and regulations arranged for the payment of

17  the first year premium on Transamerica IUL policies on behalf of policy applicants who could not

18  afford the coverage, did not want to pay for the coverage, did not understand the nature of the

19  coverage, and/or did not legitimately need the coverage, and who had no intent of keeping the

20  coverage in force through the payment of future premium.

21      12.    By covertly paying for (or arranging payment for) the first year premium for

22  Transamerica IUL policies on behalf of applicants, Steinberg was able to reap a substantial financial

23  benefit because, in addition to the commissions she was entitled to as an appointed independent

24  producer, Steinberg negotiated arrangements with her affiliated general agents to be paid all, or

25  substantially all, of the commission override paid by Transamerica to such general agents.

26      13.    Transamerica has also uncovered evidence that applicants for its IUL policies may

27  have been misled as to the nature, terms and extent of the life insurance coverage offered by

28

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

-4-

ALLEGATIONS IN SUPPORT OF DEMAND FOR COMMERCIAL ARBITRATION

139

Steinberg or those working under her direction and control. In Steinberg's case, Transamerica is informed and believes, and on that basis alleges, that Steinberg's scheme was accomplished, in whole or part, through the submission of IUL policy applications to Transamerica that contained falsified information concerning the applicant-insureds, including, among other things, falsified or forged signatures of applicant-insureds, as well as other misrepresentations of material fact concerning applicant-insureds, including false statements about annual income, net worth and employment.

14.    Transamerica is further informed and believes, and on that basis alleges, that by falsifying the application information – and particularly by falsely inflating annual income and net worth figures – Steinberg was able to secure higher face value policies for the prospective insureds with whom she worked and, thus, higher commission payments for herself. In addition, in at least some cases, Steinberg (or those acting in concert with her and/or at her direction) were able to gain direct access to applicants' bank accounts to both deposit and withdraw money from the bank account so that it appeared to Transamerica that the source of the premium payments originated with the applicant as opposed to some third party payor. In this way, Steinberg could avoid inquiries from Transamerica regarding whether the premium payments were funded by someone (or some entity) other than the applicant and, if so, why.

15.    The result of the above-described dishonest and illegitimate insurance scheme is that Steinberg and other distributors have obtained a significant financial benefit at the expense of Transamerica. Because the IUL policies were not sold for a legitimate purpose, were based upon false information, and because policyholders never intended to (or could not afford to) keep the policies in effect after one year, substantially all of the IUL policies involved in the scheme have lapsed for failure to pay second year premiums and the remainder are expected to lapse shortly. Transamerica estimates that its aggregate financial loss as a result of the foregoing scheme will be multiple millions of dollars, representing commissions paid above premium received, as well as underwriting, administrative and legal expenses incurred in connection with the IUL policies.

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

-5-

ALLEGATIONS IN SUPPORT OF DEMAND FOR COMMERCIAL ARBITRATION

140

16.   With respect to Steinberg specifically, all of the Transamerica IUL policies that she sold have lapsed for failure to pay the second year required premium. The exact amount of Transamerica's financial loss as a result of Steinberg's actions in connection with the seventeen (17) policies for which she is listed as the producer is unknown but is believed to be in excess of $630,000. Transamerica is informed and believes, and on that basis alleges, that Steinberg may have been involved in, and profited from, the sale of IUL policies other than the seventeen (17) policies for which she is listed as the producer, and its investigation in this respect is on-going. Among other things, as described further below, Steinberg's conduct, which undermines the legitimate purposes of life insurance, violates the terms of her and MS Wealth Inc.'s Producer Agreements, violates California Business and Professions Code sections 17200, *et seq.*, is fraudulent, negligent, constitutes unjust enrichment, and is a breach of Steinberg's and MS Wealth Inc.'s fiduciary duties owed to Transamerica as a result of their appointment by Transamerica to solicit and sell insurance on its behalf.

### THE PARTIES

17.   Transamerica is a corporation organized and existing under the laws of the State of Iowa. Transamerica is a resident and citizen of the State of Iowa, with its principal place of business located in Cedar Rapids, Iowa. Transamerica is, and at all relevant times was, a life insurance company authorized to do business in the State of California and the State of Nevada.

18.   Transamerica is informed and believes and on that basis alleges that Steinberg is, and at all relevant times was, a citizen and resident of Orange County, California. Transamerica is further informed and believes and on that basis alleges that Steinberg, at all relevant times, was licensed with the California Department of Insurance and the Nevada Division of Insurance to sell life insurance in the states of California and Nevada.

19.   Transamerica is informed and believes and on that basis alleges that MS Wealth Inc. is, and at all relevant times was, a California corporation with its principal place of business located in Orange County, California. Transamerica is further informed and believes and on that basis

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

-6-

ALLEGATIONS IN SUPPORT OF DEMAND FOR COMMERCIAL ARBITRATION

141

alleges that MS Wealth Inc., at all relevant times, was licensed with the California Department of Insurance and the Nevada Division of Insurance to sell life insurance in the states of California and Nevada. Steinberg operated and controlled MS Wealth Inc. and is, and at all relevant times was, an owner, shareholder, officer, employee, agent and/or principal of MS Wealth Inc.

## JURISDICTION AND VENUE

20.     On November 8, 2011 and February 29, 2012, respectively, Transamerica entered into Independent Producer Agreements ("Producer Agreements") with Steinberg and MS Wealth Inc. True and correct copies of these Producer Agreements are attached hereto as Exhibits A and B. Pursuant to Section 7.2 of the Producer Agreements, the parties agreed that: "[A]ny dispute between the parties arising out of or related to this agreement will be resolved by binding arbitration in accordance with this Section and the rules for arbitration of commercial disputes of the American Arbitration Association." This Section further provides that the arbitration will take place in Los Angeles, California.

## FIRST CLAIM FOR RELIEF

### (Breach of Contract Against All Respondents)

21.     Transamerica realleges and incorporates herein, each and every allegation contained in Paragraphs 1 through 20 above.

22.     Steinberg and MS Wealth Inc. were appointed by, and contracted with, Transamerica for the purpose of soliciting applications for life insurance. Pursuant to the Producer Agreements, Steinberg and MS Wealth Inc. agreed as follows:

### 2. SOLICITATION OF APPLICATIONS

### 2.2 SUPERVISION

In connection with this agreement, you are responsible for the performance of your employees and solicitors as they relate to their contracts with the Company or their appointments by the Company. You agree to take all necessary steps to communicate the Company's rules and regulations to such

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

-7-
ALLEGATIONS IN SUPPORT OF DEMAND FOR COMMERCIAL ARBITRATION

persons, and to assure that they comply with such rules and regulations, as well as all other applicable laws and regulations.

\*\*\*

### 3. RESPONSIBILITIES OF THE INDEPENDENT PRODUCER

You agree to abide by the following in the conduct of your activities under this agreement:

### 3.1 COMPANY REGULATIONS

To the extent they do not conflict with the terms of this agreement, you will conform to the rules and regulations of the Company now or hereafter in force. Such rules and regulations will constitute a part of this agreement.

### 3.12 SUITABILITY

You agree to comply with all applicable laws, governmental regulations, and Company policies pertaining to requirements that products be suitable for the purchaser.

\*\*\*

### 8.2 EARLY TERMINATION BY THE COMPANY

We may terminate this agreement immediately, or at any time thereafter, at our option, upon written notice to you if:

    (i)   you fail to comply with our rules and regulations or the laws of any applicable state or jurisdiction or regulations of the Department of Insurance thereof; or

    (ii)   you fail to conform to the terms and conditions of this agreement or any other existing or future agreement with us; or

    (iii)   you at any time commit any illegal, dishonest or fraudulent acts in connection with any business of the Company; or . . .

    (viii)   in our opinion, you so conduct yourself as to injure the Company's standing or good name in the community or elsewhere.

\*\*\*

23.    Between the date of her Producer Agreement and present, Steinberg was the agent of record on seventeen (17) Transamerica IUL policies. Of those seventeen (17) policies, all have lapsed for failure to pay the second year premium. The IUL policies sold by Steinberg are thus at a

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(713) 680-2800

-8-

ALLEGATIONS IN SUPPORT OF DEMAND FOR COMMERCIAL ARBITRATION

143

1    100% lapse rate after one year.  This lapse rate on the IUL policies sold by Steinberg eclipses

2    Transamerica's expected lapse rate for such policies after one year and, in and of itself, is

3    substantial proof that the policies were not sold for a legitimate purpose but were sold solely to

4    allow Steinberg (and others who participated in her scheme) to profit at the expense of

5    Transamerica.

6        24.    As set forth above, Transamerica is informed and believes, and on that basis alleges,

7    as follows:

8            (a) Steinberg paid for, or arranged for the payment of, the first year premium on the

9                IUL policies she sold on behalf of Transamerica applicant-insureds who did not

10               understand the coverage applied for, did not want the coverage, did not need the

11               coverage, could not afford the coverage, and/or had no intent of keeping the

12               coverage in force by paying premiums after the first policy year.

13           (b) Steinberg submitted applications for IUL policies to Transamerica containing

14               falsified material information including, but not limited to, false information

15               concerning the applicants' occupation, net worth and/or annual income in order

16               to justify larger face value policies and thus larger commission payments.

17           (c) Steinberg submitted applications for IUL policies with falsified or forged

18               signatures on various required policy documents.  Among other things, by

19               forging the applicants' signatures on required policy documentation, Steinberg

20               would have been able to keep IUL policy applicants who were not complicit in

21               her scheme unaware of the nature and extent of their IUL policy coverage, the

22               required annual policy premium, and the application misrepresentations

23               concerning the applicants' occupations, annual income and net worth.

24       25.    Transamerica is further informed and believes, and on that basis alleges, that in

25    furtherance of her scheme, Steinberg solicited and sold IUL policies in conjunction with other

26    individuals and entities, including but not limited to other independent producers, MS Wealth Inc., a

27    credit repair company named Axsys Group, Inc., the owner/operator of Axsys Group, Inc., Manuela

28

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

-9-

ALLEGATIONS IN SUPPORT OF DEMAND FOR COMMERCIAL ARBITRATION

144

"Ela" Kitchen, and others affiliated with or employed by Axsys Group, Inc.  Among other things, Steinberg utilized Axsys Group, Inc. (and its owners and employees) to solicit and "sign up" its credit repair customers for Transamerica IUL policies, which they represented, in most circumstances, as "free" insurance for which the applicant would have no financial obligation. Axsys Group, Inc. was also used as an instrumentality to obtain the private financial information of applicants, including bank account information, that could be utilized in carrying out the above-described insurance scheme.

26.     Transamerica is further informed and believes, and on that basis alleges, that certain applicant-insureds were complicit in the insurance scheme perpetrated by Steinberg and, as a result, likely reaped some financial benefit beyond receiving free insurance coverage under IUL policies. For example, Manuela Kitchen (the owner of Axsys Group, Inc.) and her husband, Lewis Kitchen, applied for and received IUL policies which were purportedly "sold" by Steinberg.  Premium checks for the Kitchens' policies were from Axsys Group, Inc.  Axsys Group, Inc. also funded the premium for at least two other IUL policies for which Steinberg was the producer, with the representation made during underwriting that the applicants were the owners of Axsys Group, Inc. when, in fact, that representation was false.

27.     Based on its investigation, on April 24, 2013 and May 17, 2013, respectively, Transamerica terminated Steinberg's and MS Wealth Inc.'s appointments on the grounds that, among other things, it determined that Steinberg committed fraudulent, negligent and/or dishonest practices while engaging in the business of insurance, injured Transamerica's standing or good name in the community, and violated the rules and regulations of Transamerica as well as the laws of California, all in direct violation of the Producer Agreement.

28.     At all relevant times, Transamerica's rules and regulations prohibited distributors, like Steinberg, from providing up-front cash or inducements to enter into the purchase of IUL policies or insurance transactions in which the applicant-insured assumes little or no financial risk for repayment of any type of loan for borrowed premium.  Transamerica's rules and regulations further prohibited distributors, like Steinberg, from rebating their commissions to applicant-

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

1    insureds.

2        29.    At all relevant times, Transamerica required and expected its distributors to act

3    ethically and in good faith with respect to the solicitation and sale of its life insurance products.

4    Transamerica further required and expected its distributors to sell life insurance policies for

5    legitimate purposes and only when suitable for, and desired by, the applicant. Transamerica does

6    not allow its distributors to pay the premium for life insurance they sell to third parties and, to the

7    extent premium is financed or paid by a person or entity other than the applicant or policy holder,

8    that arrangement must be disclosed to and approved by Transamerica.

9        30.    Steinberg and MS Wealth Inc. breached their Producer Agreements with

10    Transamerica by participating in the wrongful scheme as alleged herein. More specifically,

11    Steinberg and MS Wealth Inc. breached at least the following provisions of their Producer

12    Agreements: (1) Section 3.1 by failing to conform to the rules and regulations of Transamerica;

13    (2) Section 3.12 by selling IUL policies that were not suitable for the applicant-insureds; (3) Section

14    8.2(i) by violating Transamerica's rules/regulations; (4) Section 8.2(ii) by violating the

15    terms/conditions of Producer Agreement; (5) Section 8.3, by engaging in illegal, dishonest or

16    fraudulent acts in selling the IUL policies at issue; and (6) Section 8.2(viii) by conduct injuring

17    Transamerica's reputation in the marketplace.

18        31.    Further, MS Wealth Inc. further breached Section 2.2 of its Producer Agreement

19    with Transamerica by failing to supervise Steinberg and assure Steinberg (and any other

20    producers/solicitors involved in the scheme) complied with Transamerica's rules and regulations

21    and other applicable laws and regulations.

22        32.    If Steinberg and MS Wealth Inc. had complied with their Producer Agreements,

23    Transamerica would not have issued the IUL policies in question and would not have paid

24    commissions or incurred the significant costs associated with the underwriting, issuance and

25    administration of the IUL policies.

26        33.    Transamerica has performed all conditions, covenants, and promises required on its

27    part to be performed in accordance with the terms and conditions of the Producer Agreements.

28

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

-11-

ALLEGATIONS IN SUPPORT OF DEMAND FOR COMMERCIAL ARBITRATION

34.   As a direct and proximate result of the breaches of the Producer Agreements by Steinberg and MS Wealth Inc., Transamerica has incurred substantial financial harm, including the payment of unearned and ill-gotten commissions and bonuses and significant costs, its damages in a total amount to be proven at the arbitration, but believed to be in excess of $630,000.

## SECOND CLAIM FOR RELIEF

**(Breach of the Implied Covenant of Good Faith and Fair Dealing Against All Respondents)**

35.   Transamerica realleges and incorporates herein, each and every allegation contained in Paragraphs 1 through 34 above.

36.   Implied in the Producer Agreements was a covenant that Steinberg and MS Wealth Inc. would each act in good faith and deal fairly with Transamerica in connection with the solicitation and sale of life insurance, act for benefit of Transamerica in insurance matters covered by the Producer Agreements, and advise Transamerica on all matters which may come to its attention pertaining to the subject matter of the Producer Agreements.

37.   Steinberg and MS Wealth Inc. breached that covenant by failing to deal in good faith and honestly with Transamerica through Steinberg initiating, participating in and perpetuating the wrongful insurance scheme described herein.

38.   If Steinberg and MS Wealth Inc. had adhered to their duty of good faith and fair dealing by not participating in the wrongful scheme alleged herein and by complying with their obligations under the Producer Agreements, Transamerica would not have issued the IUL policies in question, would not have paid hundreds of thousands of dollars in commissions and bonuses in connection with the sale of these IUL policies and would not have incurred significant costs associated with the underwriting and issuance of these IUL policies.

39.   As a direct result of the breach of the implied covenant of good faith and fair dealing by Steinberg and MS Wealth Inc., Transamerica has suffered over $630,000 in damage, with the specific amount to be proven at the time of arbitration.

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

-12-

ALLEGATIONS IN SUPPORT OF DEMAND FOR COMMERCIAL ARBITRATION

147

## THIRD CLAIM FOR RELIEF

(Violations of Bus. & Prof Code §§ 17200, *et seq.* Against All Respondents)

40.    Transamerica realleges and incorporates herein, each and every allegation contained in Paragraphs 1 through 39 above.

41.    California Business and Professions Code Section 17200 prohibits unfair competition in the form of any unlawful, unfair or fraudulent business act or practice.  Business and Professions Code section 17203 allows for awards or judgments "as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition."

42.    Business and Professions Code section 17204 allows "any person who has suffered injury in fact and has lost money or property as a result of such unfair competition" to bring suit for unfair competition.

43.    Transamerica is informed and believes and on these bases alleges, that Steinberg and MS Wealth Inc. perpetrated the wrongful scheme described herein, which involved the provision of secret premium payments, unearned discounts, and/or the advancement of premium payments and/or other financial incentives to applicants in exchange for their life insurance applications to be submitted to Transamerica, for the sole purpose of wrongfully obtaining commissions and/or bonuses from Transamerica.

44.    In furtherance of the scheme, Steinberg submitted applications that misrepresented material information and/or included forged signatures, the practice of which constitutes unlawful, unfair and/or fraudulent business acts and practices in violation of Business and Professions Code section 17200.

45.    Steinberg and MS Wealth Inc. profited substantially from Steinberg's undisclosed wrongful scheme alleged herein, and received ill-gotten commissions paid by Transamerica in connection with the sale of the IUL policies submitted pursuant to the wrongful scheme, in addition to other financial benefits.

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

-13-

ALLEGATIONS IN SUPPORT OF DEMAND FOR COMMERCIAL ARBITRATION

148

46.    To date, as a direct and proximate result of this wrongful scheme, Steinberg has collected (at a minimum) hundreds of thousands of dollars in ill-gotten commissions from Transamerica on the IUL policies at issue.  As a further result of the wrongful scheme, Transamerica incurred significant underwriting and administrative costs related to the IUL policies at issue.

47.    Transamerica is entitled to recover all amounts by which Steinberg and MS Wealth Inc. have been unjustly enriched from Steinberg's unlawful, unfair, and fraudulent business acts and practices of unfair competition at Transamerica's expense in the form of restitution, in an amount to be proven at the arbitration.

48.    An order requiring Steinberg and MS Wealth Inc. to disgorge all of their ill-gotten commissions, and all of the profits and gains they reaped and restore such amounts to Transamerica which were unlawfully taken by Steinberg and MS Wealth Inc. though the wrongful scheme, should be granted.

## FOURTH CLAIM FOR RELIEF

### (Breach of Fiduciary Duty Against All Respondents)

49.    Transamerica realleges and incorporates herein, each and every allegation contained in Paragraphs 1 through 48 above.

50.    The manner in which Transamerica sells its insurance products to the consumer is through a network of distributors. Transamerica is dependent on, and places its trust and confidence in, these distributors as the primary means by which it sells its products.

51.    Steinberg and MS Wealth Inc. were trusted independent producers for Transamerica, pursuant to the Producer Agreements between them and Transamerica.  As a result of the Producer Agreements, and their appointment to solicit and sell life insurance on behalf of Transamerica, they were placed in fiduciary position of trust and confidence with respect to the solicitation and sale of Transamerica insurance policies. As Transamerica's fiduciary, they owed Transamerica the highest duties of care in carrying out the tasks they were authorized to perform under the Producer

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

-14-

ALLEGATIONS IN SUPPORT OF DEMAND FOR COMMERCIAL ARBITRATION

149

1    Agreements and by virtue of their appointment.

2         52.    As Transamerica's fiduciary, Steinberg and MS Wealth Inc. were duty-bound,

3    among other things, to act in good faith and in the best interest of Transamerica with respect to the

4    sale of life insurance, and to refrain from acting in a manner designed to enrich themselves at the

5    expense of, and to the detriment of, Transamerica.

6         53.    Steinberg and MS Wealth Inc. acted knowingly and with the specific intent to

7    financially harm Transamerica as alleged herein.  By placing their own financial interests above

8    their fiduciary duties owed to Transamerica, they failed to act in good faith and in the best interests

9    of Transamerica.  They thus breached their fiduciary duties owed to Transamerica.

10        54.    As a direct and proximate result of the breach of fiduciary duties owed to

11   Transamerica, it has suffered injury, harm, damages and losses of over $630,000.

12

13                          **FIFTH CLAIM FOR RELIEF**

14                      **(Negligence Against All Respondents)**

15        55.    Transamerica realleges and incorporates herein, each and every allegation contained

16   in Paragraphs 1 through 54 above.

17        56.    Steinberg and MS Wealth Inc. owed a duty of care to Transamerica to act as

18   reasonable producers in the life insurance industry and to not act in a manner contrary to

19   Transamerica's business interests.

20        57.    Steinberg and MS Wealth Inc. negligently breached this duty of care by participating

21   in the wrongful scheme alleged herein, so as to directly and legally cause the damages described

22   below.

23        58.    MS Wealth Inc. further negligently breached its duty of care owed to Transamerica

24   by failing to properly supervise Steinberg.

25        59.    Steinberg and MS Wealth Inc. engaged in negligent or wrongful conduct and

26   encouraged others to participate, despite the harm or risk of harm for Transamerica thereby created

27   by the wrongful scheme.

28

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

-15-

ALLEGATIONS IN SUPPORT OF DEMAND FOR COMMERCIAL ARBITRATION

1       60.     As a direct, proximate and legal result of the negligence of Steinberg and MS Wealth

2  Inc., Transamerica has been damaged in the amount of $630,000, which includes the commissions

3  wrongfully obtained by Steinberg and MS Wealth Inc. as well as significant underwriting and other

4  costs related to the issuance of the IUL policies in question.  Transamerica is entitled to recover

5  these losses from Steinberg and MS Wealth Inc.

6

7                      **SIXTH CLAIM FOR RELIEF**

8               **(Fraud-Deceit Against All Respondents)**

9       61.     Transamerica realleges and incorporates herein, each and every allegation contained

10  in Paragraphs 1 through 60 above.

11       62.     At the time that Steinberg sold the seventeen (17) Transamerica IUL policies

12  currently known to be at issue, Steinberg and MS Wealth Inc. knew and failed to reveal and, in fact,

13  concealed and suppressed the material facts of the wrongful scheme as alleged herein.  Steinberg

14  specifically signed and submitted, otherwise delivered, supervised the delivery and/or facilitated the

15  delivery of all of the IUL policy applications presented to Transamerica in connection with the

16  wrongful schemes and the issuance of the IUL policies in question.  Transamerica is informed and

17  believes and upon that basis alleges that Steinberg submitted fraudulent applications to

18  Transamerica, knowing that such applications contained fraudulent information as more specifically

19  set forth above.

20       63.     By signing and submitting or otherwise delivering the fraudulent applications to

21  Transamerica, Steinberg certified to Transamerica, the completeness of the applications, including

22  all of the material circumstances surrounding the submission of such applications.  Accordingly,

23  Steinberg had a duty to disclose and was otherwise bound to not suppress or conceal facts within

24  her knowledge, which materially qualify this certification and other facts she had represented to

25  Transamerica.

26       64.     Transamerica is further informed and believes and on that basis alleges that the

27  commissions Steinberg earned on the IUL policies issued were used to fund the first year premiums

28

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

-16-

ALLEGATIONS IN SUPPORT OF DEMAND FOR COMMERCIAL ARBITRATION

1  due by applicants-insureds and/or to repay loans or financing obtained to pay the initial premium,

2  which was expressly prohibited by her Producer Agreement with Transamerica. Steinberg

3  concealed this wrongful scheme from Transamerica to induce it to issue IUL policies.

4        65.    Transamerica is further informed and believes, and on that basis alleges, that

5  Steinberg concealed from Transamerica that applicants for the IUL policies she sold were not

6  paying premium out of their own funds but, rather, she had paid or arranged for the payment of

7  premium on behalf of the applicants.

8        66.    Transamerica is further informed and believes, and on that basis alleges, that

9  Steinberg concealed from Transamerica that the IUL polices she sold were not sold for a legitimate

10  purpose, but were sold solely so she could benefit financially at the expense of Transamerica.

11        67.    Transamerica is further informed and believes, and on that basis alleges, that

12  Steinberg concealed from Transamerica that the IUL policies she sold were, in all likelihood, going

13  to lapse for the non-payment of premium after one year because the policies had not been sold for a

14  legitimate purpose, the policy owner had not paid the premium from his or her own funds, and the

15  policy owner either did not intend to or did not have the ability to make future premium payments.

16        68.    Transamerica is further informed and believes, and on that basis alleges, that

17  MS Wealth Inc. was at all relevant times the alter ego of Steinberg and was a mere instrumentality,

18  agent, or conduit for Steinberg, who controls and dominates the actions of MS Wealth Inc.

19  Transamerica is informed and believes, and on that basis alleges, that Steinberg engaged in the

20  conduct herein through and with the assistance of and/or as an agent, employee, representative, or

21  co-conspirator of MS Wealth Inc.

22        69.    Steinberg's and MS Wealth Inc.'s fraudulent conduct, their failure to disclose and

23  their suppression of the wrongful scheme was likely to mislead Transamerica and did in fact

24  mislead Transamerica, with the sole purpose being to wrongfully induce Transamerica into issuing

25  the IUL policies in question, to pay the undeserved, ill-gotten commissions and to cause

26  Transamerica to incur underwriting and other costs in reliance thereon.

27

28

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

-17-

ALLEGATIONS IN SUPPORT OF DEMAND FOR COMMERCIAL ARBITRATION

70.    If Transamerica had been aware of the existence of the wrongful scheme, it would not have issued the IUL policies in question, paid commissions on such policies and incurred significant underwriting and other costs associated with the issuance of such policies.

71.    As a proximate result of the fraudulent conduct of Steinberg and MS Wealth Inc. as alleged herein, Transamerica was fraudulently induced into issuing the IUL policies in question, paying the commissions, and incurring significant underwriting and other costs.  The damage to Transamerica will be proven at the arbitration, but it presently is anticipated to exceed $630,000.

## SEVENTH CLAIM FOR RELIEF

### (Unjust Enrichment Against All Respondents)

72.    Transamerica realleges and incorporates herein, each and every allegation contained in Paragraphs 1 through 71 above.

73.    Steinberg was paid commissions by Transamerica for the IUL policies at issue as a result of the wrongful scheme she perpetrated.

74.    The payment of such commissions by Transamerica as a result of the wrongful conduct of Steinberg led to her and MS Wealth Inc.'s unjust enrichment. Transamerica is informed, believes and on that basis alleges that Steinberg and MS Wealth Inc. may have profited in other yet to be fully discovered manners as a result of Steinberg's wrongful conduct in connection with the sale of Transamerica IUL policies.

75.    Transamerica is informed, believes and on that basis alleges that as a result of Steinberg's and MS Wealth Inc.'s wrongful and unlawful conduct and their unjust enrichment thereby at Transamerica's expense, Steinberg and MS Wealth Inc. owes restitution and the disgorgement of her ill-gotten gains, in a total amount to be proven at arbitration.

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

-18-

ALLEGATIONS IN SUPPORT OF DEMAND FOR COMMERCIAL ARBITRATION

153

WHEREFORE, Transamerica prays as follows:

<u>As to the First Claim for Relief</u>

1.    For contract damages according to proof, including general, special, and/or consequential damages according to proof.

2.    For interest on all damages at the legal rate.

<u>As to the Second Claim for Relief</u>

1.    For contract damages according to proof, including general, special, and/or consequential damages according to proof.

2.    For interest on all damages at the legal rate.

<u>As to the Third Claim for Relief</u>

1.    For an award against Steinberg and MS Wealth, Inc. directing each to disgorge any and all of the ill-gotten commissions, profits and gains they reaped by way of their unlawful, unfair, and fraudulent business acts as described herein and restore such amounts to Transamerica.

<u>As to the Fourth Claim for Relief</u>

1.    For general, special, and/or consequential damages according to proof.

2.    For interest on all damages at the legal rate.

<u>As to the Fifth Claim for Relief</u>

1.    For general, special, and/or consequential damages according to proof.

2.    For interest on all damages at the legal rate.

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

-19-

ALLEGATIONS IN SUPPORT OF DEMAND FOR COMMERCIAL ARBITRATION

154

As to the Sixth Claim for Relief

1.  For general, special, and/or consequential damages according to proof.

2.  For interest on all damages at the legal rate.


As to the Seventh Claim for Relief

1.  For general, special, and/or consequential damages according to proof.

2.  For interest on all damages at the legal rate.


As to All Claims for Relief

1.  For costs according to proof.

2.  For attorneys' fees as permitted by law or contract.

3.  For such other relief as the Arbitrator deems just and proper.


Dated: September 19, 2013

BARGER & WOLEN LLP

By: _____

ANDREW S. WILLIAMS
SANDRA I. WEISHART
VIVIAN I. ORLANDO
Attorneys for Claimant
Transamerica Life Insurance Company

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800

-20-

ALLEGATIONS IN SUPPORT OF DEMAND FOR COMMERCIAL ARBITRATION

EXHIBIT A



**TRANSAMERICA**
INSURANCE & INVESTMENT GROUP

Transamerica Life Insurance Company
Home Office:
Cedar Rapids IA 52499

Administrative Office:
4333 Edgewood Rd NE
Cedar Rapids, IA 52499

November 08, 2011

MONICA N STEINBERG
31302 VIA LAS PALMAS
SAN JUAN CAPISTRANO CA 92675-5516

I am taking this opportunity to thank you for your recent application to represent the Transamerica Life Insurance Company.   I am pleased to inform you that your application has been approved.

We have enclosed the following:

| CONTRACT TYPE | COMPANY NAME | CONTRACT FORM NUMBER |
|---|---|---|
| INDEPENDENT PRODUCER | TLIC | CNT 550 ED 2-10 |

As noted in the contract appointment application form, detailed information concerning commissions is set forth in the Company's General Commissions, Modifications and Provisions which are on file with your supervising agency office.  The enclosed contract indicates its' effective date. Please make sure your state licenses and appointments are in good order before you begin soliciting business for the Company. Should you require additional information, please contact the agency manager of your supervising office.

We appreciate this opportunity to earn your business.

Sincerely,

James M. Flewellen
Senior Vice President

| | |
|---|---|
| Supervising Office Code | 14212 |
| Supervising Office Name | DUNHILL MARKETING INS SERVICES INC |
| Producer ID | 1170810 |
| Profile ID | 001 |

TOLWELTR

**157**

## INDEPENDENT PRODUCER CONTRACT

This is an agreement, effective on the Date of Contract set forth below, between Transamerica Life Insurance Company (referred to as "we", "us" or "the Company") and the Independent Producer named below (referred to as "you"). This agreement pertains to those appointed as Independent Producer through the Company's distribution unit currently known as Transamerica Insurance and Investment Group, sometimes referred to as "TIIG". The terms of this agreement are as follows:

**1.    APPOINTMENT**

You are appointed for the purpose of soliciting applications for insurance and otherwise transacting the business of this agreement.

Your activities under this agreement will be subject to the supervision of the office or agency through which you represent us from time to time. This office or agency will be referred to in this agreement as your Supervising Office.

You agree to comply with all applicable laws and regulations, and to diligently devote yourself to the business of this appointment.

**1.1   TERRITORY; NON-EXCLUSIVITY**

Subject to the approval of your Supervising Office, unless otherwise specified by us, you are authorized to solicit applications in any jurisdiction in which we are licensed to transact insurance and in which you are licensed and authorized to represent us. We reserve the right to limit your territory at any time.

You are not obligated to represent us exclusively, and you do not have an exclusive right to solicit or negotiate policies for us in any area.

We are not licensed to transact insurance in the State of New York. You agree that you will not solicit or accept applications within the State of New York. In states other than New York, you agree that you will not solicit or accept any application for a policy to insure the life of a person who is a resident of the State of New York or which is to be owned by a resident of the State of New York or an entity located in the State of New York unless all solicitation and sales activities take place outside of the State of New York and comply with our rules and procedures regarding New York residents.

**1.2   INDEPENDENT CONTRACTOR**

. You are an independent contractor. Nothing contained in this agreement is to be construed to create the relation of employer and employee between the Company and you. You may exercise your own judgment as to the time and manner in which you may perform the services required to be performed by you under this agreement. We may, from time to time, prescribe rules and regulations concerning the conduct of the business covered by this agreement which do not interfere with such freedom of action.

**2.    SOLICITATION OF APPLICATIONS**

We will inform you, from time to time, of the products for which you are authorized to solicit applications. Solicitation of applications for insurance authorized under this agreement will be performed by you or by your solicitors in accordance with the terms set forth below.

A solicitor is a properly licensed individual or firm authorized by us to solicit applications for insurance in your name.

CNT 550 ED 2-10
TOLCONTI

-1-

You agree not to allow any solicitor to engage in the services authorized under this agreement, except in accordance with this Section.

At our option, we may refuse to authorize any proposed solicitor and may terminate any authorization of a solicitor. You will be solely responsible for the payment of any compensation to solicitors, and you agree to hold us harmless from all claims for commissions or other compensation by any solicitor.

## 2.1 LICENSING

Neither you nor any solicitor may engage in any activities under this agreement unless and until you or they are properly licensed to perform such services in the particular State or jurisdiction involved in accordance with all applicable laws and regulations, including, but not limited to, any certification or continuing education requirements.

You agree to undertake and pay for all actions necessary to acquire and maintain any necessary licenses for yourself and/or the solicitors. We will take the necessary actions, including the payment of applicable fees, to appoint you and the solicitors to represent us in the states in which you and they reside. We will appoint you and the solicitors to represent us in additional states at your expense.

## 2.2 SUPERVISION

In connection with this agreement, you are responsible for the performance of your employees and solicitors as they relate to their contracts with the Company or their appointments by the Company. You agree to take all necessary steps to communicate the Company's rules and regulations to such persons, and to assure that they comply with such rules and regulations, as well as all other applicable laws and regulations.

## 3. RESPONSIBILITIES OF THE INDEPENDENT PRODUCER

You agree to abide by the following in the conduct of your activities under this agreement:

## 3.1 COMPANY REGULATIONS

To the extent they do not conflict with the terms of this agreement, you will conform to the rules and regulations of the Company now or hereafter in force. Such rules and regulations will constitute a part of this agreement. This provision shall not be construed to alter the relationship of the parties as provided in Section 1.2 above.

## 3.2 LIMITATION OF AUTHORITY

You have no authority to alter, modify, waive or change any of the terms, rates or conditions of our contracts or policies whether or not covered by this agreement. You have no authority to obligate us in any manner whatsoever nor to receive monies due to us, except as otherwise provided in this agreement or as may be authorized in writing by us.

## 3.3 COMPANY RECORDS

All documents, records, software and other data and information, in whatever form they may be, which pertain to the Company's policyholders or any other business of the Company, are and will remain the property of the Company. Any such property in your possession shall be at any time and all times open to audit and inspection by the Company or its authorized representative, and upon termination of this agreement you will promptly turn all such property over to the Company or its authorized representatives.

CNT 550 ED 2-10
TOLCONTI